# Ephraim Savitt

| | |
|---|---|
| **From:** | BASLAN BEBARS (80637053) |
| **Sent Date:** | Tuesday, May 27, 2014 8:20 PM |
| **To:** | Ephraim@savittesq.com |
| **Subject:** | Letter [Confidential] Part One |

Mr. Savitt, this is a draft of the letter I am going to send to the judge

Your Honor

1- I am writing you today, to address the trial schedule. I would like the opportunity the share the defense timeline from my prospective. To prove that we did not get a fair chance to prepare. And to go to trial unprepared would be a violation of the my Sixth Amendment Rights:

   A- I barely had access to a computer, allowing me even to go over whatever discovery was given to us.
   B- I am told that I will be prevented from viewing any additional Rule 16 Materials.
   C- The massive amount of information on the seized hard drives.
   D- I will not have time to obtain and prepare the Experts Witnesses.

2- I was arrested during March of 2013. Shortly after Mr. Cariddi was retained by my parents, he met with the prosecutor. Mr. Cariddi informed me (which I believe is supported by phone recordings in MDC) that he told the prosecutor that we were willing to go along with the delay of 6 to 7 months that he requested to complete the investigation, we agreed because it would yield nothing.

3- Then as the court knows, I had difficulties with Mr. Carriddi, and I sought to retain Mr. Savitt, which did not happen until about mid September 2013. Mr. Savitt was paid $40,000 which at $600/hour, would have yielded about 70 hours. Those hours were quickly used up as Mr. Savitt had to familiarize himself with the facts of the case, the discovery, and meet the potential witnesses, etc. The remaining time block was consumed through our attempt to negotiate with the government after a proffer session they held under false pretenses. This process wasted many hours of preparing before and after the proffer session, as I presented the government with a multitude of information that my research yielded, in hope to prove to them that I was truly conducting an investigation, this process also halted our progress with the case to await their response, which took over a month additional month.

4- I distinctly remember asking Mr. Savitt during that process if the government may have had ulterior motive, and Mr. Savitt assured me about the honor system. In hind sight, the only good faith in the process was the one we entered with, it is clear that the government's only intention for the meeting, was to re-elicit the facts of the case directly from us, in order to overcome any outcome to our eminent filing of Massiah violation once we discovered the depth of Celani's efforts, and extent of the recordings and his intrusion to our defense strategy. I had no choice but to go along with the meeting, as Celani had already been privy to my defense strategy. During the meeting I was questioned in detail by the agents; after receiving the recordings it was obvious that the line of questioning almost completely paralleled the recordings. Not only Celani's actions left us no option but to attend the proffer session, the information he wrongfully obtained and provided provided, gave the government an unfair advantage during the meeting.

5- I went over everything explaining in painful detail, how the downloads were not for viewing purposes, the nature of the downloads and the process of downloading, the time frame of the downloads and how I can prove it, which is very important to my defense, because it disproves their theory, and supports mine. We demonstrated how the download pattern I exhibited did not match the known habits of 'file collection' as those of pedophiles.

6- We explained them the real nature of the investigation we conducted, and shared with them how people now go around the monitoring done by the FBI. Some of the information I related to the government - although was not taken seriously by the agents and presented as "you do not know what you are talking about"- during the meeting, was couple of months later corroborated by main stream media in multiple expose'(s), few months after, the FBI in a major arrest, completely validated the existence of what I presented during the meeting.

# Ephraim Savitt

7- This further enforces that they did hold the meeting under ulterior motives. Had their goal been to seek justice, they would have put me in touch with someone that is able to put what I offered to use, instead they said we only can use names (in other words people who are ready to be arrested with a short investigation similar to mine), unfortunately since neither my co-defendant nor I, engaged or intended to engage in such conduct, and the only persons we knew that did was Jack, we were not able to provide any additional names.

8- As a result, whatever they did not completely comprehend from my conversation with Celani, they asked, and detailed answers they got. I remember many times during the meeting, I kept asking Mr. Savitt, "should I continue?", the answer was, "well they already know everything, through Celani, what choice do we have?". The only thing the proffer session served, is that government now is very prepared to counter my defense, if we were to have the trial by July 14th, they would have had about 7 to 8 months of solid and focused preparation. The information they got from me would substantially narrow the time they needed to prepare. The government now knows what did it, and what information it obtained, we can only guess.

9- This brings us now to when the government released Celani's recordings. $11000 in legal fee at this point almost yielded nothing. My parents and I ran out of the resources to continue. We applied for CJA fund, which your Honor granted after three months.

10- The Messiah violation, and the government's intrusion to our case, form that point was and still at the present the main focus of my defense team. While they had ample time to prepare, we are still fighting against the Massiah violation, which is exceptional considering that Mr. Savitt just had to go through a major trial that consumed over a month of his time, plus whatever additional time prior to prepare.

11- After the CJA funds been granted I started meeting with Gerry Gardner, the private PI assigned to my case, the meetings only further confirmed the inherent technological complexity associated with my defense. The government in the last status conference, gave us an overview of evidence and experts they intend to present. It is clear we will at least need two expert witnesses counter the government experts. Plus, the team and I identified the need for two additional expert witnesses to present our side.

12- This is a complex case, one example of that complexity is highlighted with the procedure to view my discovery, the requirement to provide hard drives to government to duplicate the information (which is not yet done), plus the time it would take to duplicate, then to coordinate with the witnesses to view the discovery and communicate their findings. If I were to dedicate 2 weeks to each witness to work on my case- which 2 weeks is is a fanciful underestimate at best, for the time needed to yield any meaningful result - I would still not have enough time to prepare for trial.

13- Speaking of discovery, AUSA Smith recently declared that he will not have me near my discovery, he offered my defense team to view my discovery without my presence. I want to be present, I have to be involved in my defense. AS of today, I have not seen my discovery, seen what was seized. I am not disputing some downloads, this investigation had many issues, for example: after Jack Massre the government main informant started recording us, he came to the house and asked me to unlock my computer to use it to view his email, and send some documents. What is he put some additional file which I was not aware of. And since I am the only one familiar with my computer, and the what was downloaded and where, without me present, justice would be circumvented, not my lawyer nor any experts can investigate this.

14- AUSA Smith himself described my system as being very sophisticated, the amount of data seized is more than any data ever seized by this FBI office in any crime. That was however before we added what Drobo can hold, which although not full can house up to additional 16 tera bytes of data. The government presents me as an expert in such a light and manner that puts my own resume to shame, yet it wants to prevent me from assisting in my own defense, even if simply to help my expert witnesses and investigator navigate the maze of technology.

15- Much of this discovery may not be related to the government case theory, but it most definitely relates to my defense, what AUSA Smith is trying to do should not be allowed. Just because the of the type of allegation, justice should not be suspended. Defendants with this type of allegations even if they are innocent face miniscule odds, and much harder defense just because of the accusation, the government should not be allowed to take advantage of that. It is not justice if the nature of the allegation should influence the process, to ensure an unfavorable outcome to the defendant. This may sound silly, but it bares an eerie resemblance to medieval witch hunts, where the it only too the accusation for the accused to be submerged in water for a short while, if they died then they were innocent, and if they survived, then surly they are in league with the devil and thus guilty.

# Ephraim Savitt

16- In many other countries (also witnessed in recent NY state cases) with this type of case, the defendant's name is not released, it is true that the records are public, but the name of the defendant is not directly publicized, but here the FBI went ahead and purposely released a press statement with our names. They claim that they redact the CI name to protect the victim, but by releasing the names, they surly as good as put the victims' names and photos on TV. Now the whole community and especially the victims themselves know that they were the bait in a sex-crime sting operation. Which begs the question, the government could have used factious victims, why didn't they?

17- There is no reason for the government to rush for trial. There are no actual victims nor overt acts on the indictment, the government does not have to offer closure to anyone. Neither I or my co-defendant raised any complained about our detention or speedy trial issues, nor that we ever objected to any delay the government asked for. I personally have no problem remaining in detention in order to properly prepare for trial. Being detained in itself prejudices my case, because any book, research or resource I try to obtain will be known to the government, limited CJA funds simply wont allow me to explore all that I can explore had I not been under house arrest for example. I do not have the use of Google, and very limited discovery and law library access, an hour a week is simply as is awarded by MDC not enough. AUSA Smith has or had other defendants that spent much more time waiting for trial, and certainly even more time just waiting to get sentenced. Thus it is clear that the government certainly is not prejudiced by a delay in trail.

18- Additionally considering that Jack Massre the principle CI on the case (Whom is cooperating in hope to reduce his ultimate sentence) is NOT suffering any prejudice, as he is not currently in detention, in fact I am sure he welcomes the time to set his affairs in order, since he, is more than likely going to be facing significant jail time, due to the fact that there are 'actual victims' in his past, we presented some evidence to this fact during our proffer session with he government, evidence that will implicate Jack with the similar charges to ones in this case. However in Jack's case there are 'Actual' rather than 'Conspiratorial' conduct.

19- The government's rush for the trial, maybe because of the pressure that they are probably under to to provide Jack's victims (which are not related to this case) with closure. Additionally the risk -arising from the decision to not to place him in detention (It would seem logical to infer that detention under similar charged would impugn whatever dismal credibility Jack had in the first place) and to keep him out with complete access to his prior victims / potential victims / own kids-, albeit a serious risk, surly must have been contemplated and assessed by the government, as it is not new to the case and been the status quo for over a year now. These factors can not be used to rush my trial and violate my sixth amendment rights.

# Ephraim Savitt

| | |
|---|---|
| **From:** | BASLAN BEBARS (80637053) |
| **Sent Date:** | Wednesday, May 28, 2014 5:36 PM |
| **To:** | Ephraim@savittesq.com |
| **Subject:** | Letter [Confidential] Part Two |

20- That all being said and considered, I implore the court to give me a fair chance to present a viable defense, I believe your Honor himself highlighted during a recent sentencing session that the United States takes matters of due process very seriously, and that is they why court provides lawyers for defendants. You Honor, allowing the government to delay these proceedings as they want, then rush them when it only serves their purpose, and for no reason other than to prejudice my case, will make a mockery of your declarations. All am I asking for is a fair chance, the time to properly prepare, or all this time spent, and resources expended would have been all a waste. Such a rush will also render the idea of me going to trial suicidal.

21- You Honor also stated during a recent status conference, that you were not familiar with the case, please give the opportunity to present you with the facts.

Thank you for taking the time to read my letter your Honor. I implore you to consider my arguments, and to grant my pleas.

CC: Mr. Savitt
CC: File