702

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 13-CR-00220(RJD)
                               :
                               :
                               :
       -against-               : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
BEBARS BASLAN,                 : Thursday, July 24, 2014
                               : 9:30 a.m.
       Defendant.              :
                               :
                               :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
BEFORE THE HONORABLE RAYMOND J. DEARIE
SENIOR UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201
               BY:  TYLER J. SMITH, ESQ.
                    TIANA A. DEMAS, ESQ.
                    Assistant United States Attorneys

For the Defendant:  LAW OFFICE OF EPHRAIM SAVITT
                    260 Madison Avenue, 22nd Floor
                    New York, New York 11201
               BY:  EPHRAIM SAVITT, ESQ.


Court Reporter:     SHERRY J. BRYANT, RMR, CRR
                    225 Cadman Plaza East
                    Brooklyn, New York 11201
                    sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

PROCEEDINGS                                                703

1          (In open court outside the presence of the jury.)

2          (Defendant enters the courtroom.)

3          THE COURT:  Counsel -- oh, I think Mike is showing

4    it to you.  I may add a phrase in the conspiracy instruction.

5    Given the prominence of the individual Jack, I wanted to make

6    it absolutely clear that Jack could not be considered a

7    co-conspirator.  All right.  Are we ready?

8          MR. SAVITT:  Yes.

9          THE COURT:  All right, Ellie.

10         COURTROOM DEPUTY:  Okay.

11         MR. SMITH:  Judge, Mr. Savitt indicated that he was

12    going to seek an additional instruction on punishment.

13         THE COURT:  You did?

14         MR. SAVITT:  I did.

15         THE COURT:  And that is?

16         MR. SAVITT:  And that is to -- I don't know if it's

17    too late to do it right now, but --

18         THE COURT:  Well, the jury's on their way in, so I

19    suggest you better do it.

20         MR. SAVITT:  Better hurry up.  So as to Count One,

21    we ask for an instruction to the jury about the mandatory

22    minimum, 30 years.  And the reason for that is because the

23    Court of Appeals specifically left it open in the case where

24    they reversed Judge Weinstein.  I put it all in an e-mail to

25    Mike.  I'll put it in a more formal letter on ECF.

SHERRY BRYANT, RMR CRR

PROCEEDINGS                704

1     I think I'm obviously arguing against the weight of

2  authority right now, but the reason that I'm asking for it is

3  because, in the circumstances of this case where the defendant

4  was lured across state lines and he's facing a mandatory

5  minimum of 30 years, I believe that this would be an

6  exceptional case where the jury should be so instructed.

7     I'm putting it on the record in order to preserve my

8  client's appellate rights.  I know I didn't do this earlier

9  and I apologize for that.

10     THE COURT:  Yes, this is kind of issue by ambush.

11     MR. SAVITT:  I didn't mean to do that ambush part,

12  but it's my fault.  I'm not seeking to make any excuses for

13  that.

14     THE COURT:  Well, there's not a lot I can say on the

15  subject, but given where we are in the proceedings, I'm simply

16  going to deny the request.  Bring in the jury, Ellie.

17     MR. SAVITT:  Okay, Your Honor.

18     THE COURT:  I'm no fan of mandatory minimums.  I

19  think everybody knows that.

20     MR. SAVITT:  Yes, Your Honor.

21     THE COURT:  I'm going to do what Judge Weinstein

22  did, refuse to give the instruction.

23     MR. SAVITT:  I understand that too, Your Honor.

24     THE COURT:  Okay.

25     (Jury enters courtroom.)

1          THE COURT:  Good morning, folks.  Please be seated.

2    Ordinarily, at this point, I would be giving you my

3    instructions.  Given the status of my voice, I think it best

4    that you hear from someone who speaks with a clearer voice

5    than mine, so I've asked my law clerk, with counsel's

6    permission, to read the charge to you.

7          Please listen carefully.  Don't be confused by his

8    references to the first person, because I had intended to give

9    it to you myself.  And after you've retired to the jury room,

10   you'll be given copies of the charge, but I invite your very

11   careful attention now.  Okay.

12         THE LAW CLERK:  Thank you, Judge.

13         Members of the jury, now that the evidence has been

14   presented and the attorneys have concluded their closing

15   arguments, it is my responsibility to instruct you on the law

16   that governs this case.  Shortly after you retire for your

17   deliberations, I will provide you with several copies of these

18   instructions.

19         Let me remind you that in accordance with your oath

20   as jurors, it is your duty to follow the law as I state it.

21   You have the important responsibility to judge the facts.  And

22   you alone are the judges of the facts, not counsel, not I.

23         I express no view whether the defendant is guilty or

24   not guilty.  You should not draw any inference or conclusion

25   as to whether he is guilty or not guilty from anything I may

PROCEEDINGS                                    706

1   have said or done.  You will decide the case solely on the

2   evidence and the law.

3           The prosecution is brought in the name of the United

4   States, but that does not entitle the government to any

5   greater consideration than the defendant.  The parties -- the

6   government and the defendant -- are equal before this Court.

7   They are entitled to equal consideration.

8           The evidence comes in several forms:  Sworn

9   testimony of witnesses, both on direct and cross-examination;

10  exhibits that have been received by the Court in evidence; and

11  facts to which the lawyers have agreed or stipulated.

12          The following things are not evidence and are to be

13  disregarded by you in deciding what the facts are:

14          Arguments or statements by lawyers are not evidence.

15          Questions put to the witnesses, standing alone, are

16  not evidence.

17          Objections to the questions or to offered exhibits

18  are not evidence.  In this regard, attorneys have a duty to

19  their clients to object when they believe evidence should not

20  be received.  You should not be influenced by the objection or

21  by the Court's ruling on it.  If the objection was sustained,

22  ignore the question and any answer that may have followed.  If

23  the objection was overruled, treat the answer like any other

24  answer.

25          Testimony that has been excluded, stricken, or that

1   you have been instructed to disregard is not evidence and must

2   be disregarded.

3          You must not be influenced by sympathy, prejudice or

4   public opinion.  I remind you that each of you has undertaken

5   a solemn obligation, a sworn obligation to decide this case

6   solely on the evidence.  You must carefully and impartially

7   consider the evidence, follow the law as I state it, and reach

8   a just verdict, regardless of the consequences.

9          An indictment is merely an accusation in writing.

10  It is not evidence of guilt.  It is entitled to no weight in

11  your determination of the facts.  The defendant has pleaded

12  not guilty, thereby placing in issue each allegation in the

13  indictment.

14         The government has the burden of proving guilt

15  beyond a reasonable doubt.  This burden never shifts to the

16  defendant.  The defendant does not have to prove his

17  innocence.  He need not have submitted any evidence at all.

18  The law presumes the defendant innocent of the charges against

19  him.  I instruct you that the defendant is to be presumed by

20  you to be innocent throughout your deliberations until such

21  time, if ever, you as a jury are satisfied that the government

22  has proven the defendant guilty beyond a reasonable doubt with

23  respect to the offense you are considering.

24         I have said that the government must prove the

25  defendant guilty beyond a reasonable doubt.  The question,

PROCEEDINGS                          708

1  naturally, is what is a reasonable doubt?  The words almost
2  define themselves.  It is a doubt based upon reason and common
3  sense.  It is a doubt that a reasonable person has after
4  carefully weighing all of the evidence.  It is a doubt that
5  would cause a reasonable person to hesitate to act in a matter
6  of importance in his or her personal life.  Proof beyond a
7  reasonable doubt must, therefore, be proof of such a
8  convincing character that a reasonable person would not
9  hesitate to rely and act upon it in the most important of his
10  or her own affairs.
11         A reasonable doubt is not a caprice or whim; it is
12  not speculation or suspicion.  It is not an excuse to avoid
13  the performance of an unpleasant duty.  And it is not
14  sympathy.
15         In a criminal case, the burden is at all times upon
16  the government to prove guilt beyond a reasonable doubt.  The
17  law does not require that the government prove guilt beyond
18  all possible doubt.  Proof beyond a reasonable doubt is
19  sufficient to convict.  This burden never shifts to the
20  defendant, which means that it is always the government's
21  burden to prove each of the elements of the crimes charged
22  beyond a reasonable doubt.
23         There are, generally speaking, two types of evidence
24  from which you may find the truth as to the facts.  One is
25  direct evidence, such as the testimony of an eyewitness or

PROCEEDINGS                                709

1  participant, or physical evidence.  The other is indirect or

2  circumstantial evidence, evidence of facts and circumstances

3  from which it is reasonable to infer or deduce connected facts

4  that reasonably follow in the common experience.

5          There is a simple example of circumstantial evidence

6  that is often used in this courthouse.  Assume that when you

7  came into the courthouse this morning the sun was shining and

8  it was a nice day.  The courtroom has no windows and you could

9  not look outside.  As you were sitting here, someone walked in

10  with an umbrella that was dripping wet.  Somebody else then

11  walked in with a raincoat that also was dripping wet.

12          Now, you cannot look outside of the courtroom to see

13  whether or not it is raining, so you have no direct evidence

14  of that fact.  But, on the combination of facts that I have

15  asked you to assume, it would be reasonable and logical for

16  you to conclude that it had been raining.

17          That is all there is to circumstantial evidence.  On

18  the basis of reason, experience and common sense, you infer

19  from an established fact or facts the existence or the

20  nonexistence of some other fact.

21          There is no distinction between the weight to be

22  given to direct evidence and the weight to be given to

23  circumstantial evidence.  No greater degree of certainty is

24  required of circumstantial evidence than of direct evidence.

25          When the attorneys on both sides stipulate, that is,

1    agree, to the existence of a fact, you the jury must accept

2    the stipulation and consider the fact as proven.

3           When the attorneys on both sides stipulate that a

4    witness, if called, would have given certain testimony, the

5    jury must accept as true the fact that the witness would have

6    given that testimony.  However, it is for you to determine the

7    effect or weight given to that testimony.

8           The indictment charges "on or about" and "between"

9    certain dates.  The proof need not establish with certainty

10   the exact dates of the alleged offenses.  It is sufficient if

11   the evidence establishes beyond a reasonable doubt that an

12   offense was committed on a date reasonably near to the dates

13   alleged.

14          You should weigh all the evidence in the case.

15   After considering the evidence or the lack of evidence, if you

16   are not convinced of the guilt of the defendant beyond a

17   reasonable doubt with respect to any charge, then you must

18   find him not guilty of that charge.  On the other hand, if you

19   are convinced beyond a reasonable doubt that the defendant is

20   guilty of an offense charged in the indictment, then you

21   should find him guilty of that charge.

22          I will now turn my attention to the specific charges

23   in the indictment.  The indictment contains four counts for

24   your consideration.  I will first instruct you on Count One,

25   which charges the defendant with interstate Travel With Intent

PROCEEDINGS                              711

1  to Commit Aggravated Sexual Abuse of a Minor Under Twelve.

2  Count Three charges the defendant with Attempted Sexual

3  Exploitation of a Child.  Count Four charges the defendant

4  with Attempted Coercion and Enticement of a Minor to Engage in

5  Illegal Sexual Activity.  And finally, Count Two charges the

6  defendant with Conspiracy to Sexually Exploit a Child.

7          Count One reads as follows:  "On or about March 19,

8  2013, within the Eastern District of New York, the District of

9  New Jersey and elsewhere, the defendant Bebars Baslan crossed

10  a state line with intent to engage in a sexual act, to wit:

11  contact between the mouth and the vulva, contact between the

12  mouth and the penis and the intentional touching, not through

13  the clothing, of the genitalia of another person who had not

14  attained the age of 12 years with an intent to abuse,

15  humiliate, harass, degrade or arouse or gratify the sexual

16  desire of any person, with another person who had not attained

17  the age of 12 years, to wit: John Doe I and Jane Doe I,

18  individuals whose identities are known to the Grand Jury."

19          Count One charges the defendant with violating

20  Section 2241(c) of Title 18 of the United States Code.  That

21  section provides, in relevant part:  "Whoever crosses a state

22  line with intent to engage in a sexual act with a person who

23  has not attained the age of 12 years shall be punished in

24  accordance with law."

25          In order to prove the defendant guilty of Travel

SHERRY BRYANT, RMR CRR

PROCEEDINGS                         712

1   With Intent to Commit Aggravated Sexual Abuse of a Minor Under

2   Twelve, the government must prove each of the following two

3   elements beyond a reasonable doubt:  First, that the defendant

4   crossed a state line; and second, that the defendant did so

5   with the intent to commit a sexual act with a person under the

6   age of 12, specifically, Daniel, who is identified in the

7   indictment as John Doe I, or Leah, who is identified in the

8   indictment as Jane Doe I.

9          The first element of Count One that the government

10  must prove beyond a reasonable doubt is that the defendant

11  crossed a state line.  I instruct you that to travel from the

12  State of New York to the State of New Jersey, one must cross a

13  state line.

14         The second element of Count One that the government

15  must prove beyond a reasonable doubt is that the defendant

16  crossed a state line with the intent to commit a sexual act

17  with a person under the age of 12.  The term "sexual act"

18  means:  Contact between the mouth and the penis; contact

19  between the mouth and the vulva; or the intentional touching,

20  not through the clothing, of the genitalia of another person

21  who has not attained the age of 12 years with an intent to

22  abuse, humiliate, harass, degrade, or arouse or gratify the

23  sexual desire of any person.  With regard to these types of

24  sexual acts, only "intentional touching, not through the

25  clothing, of the genitalia of another person who has not

PROCEEDINGS                          713

1   attained the age of 12 years old" requires the intent that I

2   just described to you.  With respect to contact between the

3   mouth and penis and contact between the mouth and vulva, no

4   specific intent is necessary.

5           To establish that the defendant crossed a state line

6   with the intent to commit a sexual act with a person under the

7   age of 12, it is not necessary for the government to prove

8   that the illegal sexual activity was the sole purpose for

9   crossing the state line.  A person may have several different

10  purposes or motives for such travel, and each may prompt in

11  varying degrees the act of making the journey.  The government

12  must prove beyond a reasonable doubt, however, that a

13  significant or motivating purpose of the travel across a state

14  line was to engage in a sexual act with a child under 12 years

15  old.  In other words, the illegal sexual activity must not

16  have been merely incidental to the trip.

17          Finally, to establish this second element, the

18  government is not required to prove that the defendant

19  actually engaged in any sexual act, as I have defined that

20  term for you, after he crossed a state line.

21          The defendant is also charged with Travel With

22  Intent to Commit Aggravated Sexual Abuse of a Minor Under

23  Twelve on an aiding and abetting theory.  Therefore, you may

24  find that the defendant is guilty of Count One if you find

25  that he aided and abetted another person to commit this crime.

PROCEEDINGS                          714

1    The aiding and abetting statute, Section 2 of Title 18 of the

2    United States Code, provides that:  "Whoever commits an

3    offense against the United States or aids, abets, counsels,

4    commands, induces or procures its commission, is punishable as

5    a principal; whoever willfully causes an act to be done, which

6    if directly performed by him or another would be an offense

7    against the United States, is punishable as a principal."

8    This means that if you find that the defendant knowingly and

9    willfully aided and abetted another person in the commission

10   of a crime, he is as guilty as if he personally committed it.

11            Before you can convict the defendant on the ground

12   that he aided and abetted a commission of the crimes charged,

13   you must first find beyond a reasonable doubt that another

14   person committed that crime.  No one can be convicted of

15   aiding and abetting the criminal acts of another if no crime

16   was committed by the other person in the first place.  But if

17   you do find that a crime was committed, then you must

18   determine whether the defendant aided or abetted the

19   commission of that crime.

20            In order for the defendant to be guilty of aiding

21   and abetting, it is necessary that there be more than mere

22   knowledge that a crime is being committed and acquiescence in

23   the crime itself.  The defendant must have willfully

24   associated himself in some way with the criminal venture; he

25   must have willfully participated in it as something he wanted

PROCEEDINGS                          715

1   to bring about.  That is, the defendant must willfully seek by

2   some act to make the criminal venture succeed.  Mere presence

3   or relationship to the person who actually committed the

4   crime, even coupled with knowledge that a crime was committed,

5   is not enough.

6            If you find that the government has proven each of

7   the elements of the crime alleged in Count One beyond a

8   reasonable doubt, you should find the defendant guilty on

9   Count One.  If the government fails to prove any one element,

10  you must find the defendant not guilty as to Count One.

11           The allegations in the indictment require that in

12  order to sustain its burden of proof, the government must

13  prove that the defendant acted knowingly, intentionally or

14  willfully.  An act is done knowingly if done voluntarily or

15  intentionally but not because of mistake, accident or other

16  innocent reason.  An act is done intentionally if done

17  voluntarily and with the specific intent to do something the

18  law forbids.  In order to prove that the defendant acted

19  willfully, the government must prove that he acted knowingly

20  and purposefully and that he intended to commit an act which

21  the law forbids.

22           The person need not be aware of the specific law or

23  rule that his conduct may be violating, but he must act with

24  the specific intent to do whatever it is the law forbids.  The

25  defendant's knowledge is a matter of inference from facts

1    proved.  These issues of knowledge and intent require you to

2    make a determination about the defendant's state of mind,

3    something that rarely can be proven directly.  A wise and

4    careful consideration of all the circumstances of the case

5    may, however, permit you to make such a determination as to

6    the state of mind of the defendant.  Indeed, in your everyday

7    affairs, you frequently are called upon to determine a

8    person's state of mind from his or her words and actions in a

9    given circumstance.  You are asked to do the same here.

10           The third count of the indictment charges defendant

11   with Attempted Sexual Exploitation of a Child.  Count Three

12   reads as follows:  "On or about and between February 1, 2013

13   and March 19, 2013, both dates being approximate and

14   inclusive, within the Eastern District of New York and

15   elsewhere, the defendant Bebars Baslan did knowingly and

16   intentionally attempt to employ, use, persuade, induce, entice

17   and coerce a minor, to wit: John Doe I, John Doe II and Jane

18   Doe I, to engage in sexually explicit conduct for the purpose

19   of producing one or more visual depictions of such conduct

20   knowing and having reason to know that such visual depictions

21   would be transported using any means and facility of

22   interstate and foreign commerce, and in and affecting

23   interstate and foreign commerce, and which visual depictions

24   were to be produced using materials that had been mailed,

25   shipped and transported in and affecting interstate and

SHERRY BRYANT, RMR CRR

1  foreign commerce, by any means, to wit: one or more digital

2  cameras."

3          Count Three of the indictment charges the defendant

4  with violating Section 2251(e) of Title 18 of the United

5  States Code.  That section provides, in relevant part:  "Any

6  individual who attempts to violate 18 U.S.C. Section 2251(a),

7  which makes it a crime to sexually exploit a minor, shall be

8  punished in accordance with law."

9          In order to prove that the defendant attempted to

10  sexually exploit a minor, the government must prove beyond a

11  reasonable doubt:  First, that the defendant intended to

12  commit the crime of sexual exploitation of a minor; and

13  second, that the defendant willfully took some action that was

14  a substantial step in an effort to bring about or accomplish

15  the crime.

16          To determine whether the government has proven

17  beyond a reasonable doubt that the defendant attempted to

18  sexually exploit a minor, I will first explain to you the law

19  of attempt.

20          Mere intention to commit a specific crime does not

21  amount to an attempt.  In order to convict the defendant of an

22  attempt, you must find beyond a reasonable doubt that the

23  defendant intended to commit the crime charged, and that he

24  took some action which was a substantial step toward the

25  commission of the crime.

1              In determining whether the defendant's actions

2      amounted to a substantial step toward the commission of the

3      crime, it is necessary to distinguish between mere

4      preparation, on the one hand, and the actual doing of the

5      criminal deed on the other.  Mere preparation, which may

6      consist of planning the offense, or of devising, obtaining or

7      arranging a means for its commission, is not an attempt,

8      although some preparations may amount to an attempt.  The acts

9      of a person who intends to commit a crime will constitute an

10     attempt where the acts themselves clearly indicate an intent

11     to willfully commit the crime, and where the acts are a

12     substantial step in a course of conduct planned to culminate

13     in the commission of the crime.

14             In determining whether the defendant took "a

15     substantial step" towards the commission of a crime, you

16     should consider all of the evidence admitted in the case

17     concerning the defendant and the alleged commission of the

18     crime.

19             Factual or legal impossibility is not a defense to a

20     charge of attempting to commit a crime if the crime could have

21     been committed had the relevant factual or legal circumstances

22     been as the defendant believed them to be.  In other words, a

23     person is guilty of an attempt to commit a crime if, acting

24     with the kind of culpability otherwise required for the

25     commission of the crime, he intentionally engages in conduct

PROCEEDINGS                                          719

1    which would constitute the crime if the relevant factual and

2    legal circumstances were as he believed them to be.

3         I will now explain to you the crime of sexual

4    exploitation of a minor, which is the crime that the defendant

5    is charged with attempting to commit.  There are three

6    elements to this crime:

7         First, that Daniel, who is identified in the

8    indictment as John Doe I, Ellie, who is identified in the

9    indictment as John Doe II, or Leah, who is identified in the

10   indictment as Jane Doe I, was under the age of 18.

11        Second, that the defendant used or employed or

12   persuaded or induced or enticed or coerced Daniel, Ellie or

13   Leah to take part in sexually explicit conduct for the purpose

14   of producing or transmitting a visual depiction of that

15   conduct.

16        And third, that the visual depiction was mailed or

17   actually transported or transmitted in or affecting interstate

18   or foreign commerce or using a facility in interstate and

19   foreign commerce or produced using materials that had been

20   mailed, shipped, or transported in and affecting interstate

21   and foreign commerce.

22        As to the first element of sexual exploitation of a

23   minor, the government must prove beyond a reasonable doubt

24   that at least one of the intended victims, Daniel, Ellie or

25   Leah, was less than 18 years old at the time of the acts

PROCEEDINGS                              720

1   alleged in the indictment.  The government does not need to

2   prove that the defendant knew that Daniel, Ellie or Leah was

3   less than 18 years old.

4        As to the second element of sexual exploitation of a

5   minor, the government must prove beyond a reasonable doubt

6   that the defendant used or employed or persuaded or induced or

7   enticed or coerced Daniel, Ellie or Leah to take part in

8   sexually explicit conduct for the purpose of producing or

9   transmitting a visual depiction of that conduct.

10       The words "used," "employed," "persuaded,"

11  "induced," "enticed" and "coerced" are words of common usage,

12  and I instruct you to interpret these words by using your own

13  common sense.  The words "persuade," "induce" and "entice"

14  are, in effect, synonyms that convey the idea of leading or

15  moving another person by persuasion or influence as to some

16  action, state of mind, et cetera, or to bring about, produce

17  or cause.  The word "coerce" means to compel by force and

18  intimidation or authority, without regard for individual

19  desire or volition.

20       A "visual depiction" includes a digitally recorded

21  photograph or video.

22       "Sexually explicit conduct" means actual or

23  simulated sexual intercourse, including genital-genital,

24  oral-genital, anal-genital or oral-anal, whether between

25  persons of the same or opposite sex; bestiality; masturbation;

1    sadistic or masochistic abuse or lascivious exhibition of the

2    genitals or pubic area of any person.

3            The term "lascivious exhibition" means a depiction

4    that displays to bring to view or attract others to the

5    genitals or pubic area of minors in order to excite

6    lustfulness or sexual stimulation in the viewer.  Not every

7    exposure of the genitals or pubic area constitutes lascivious

8    exhibition.  In deciding whether a particular visual depiction

9    constitutes a lascivious exhibition, you should consider the

10   following questions:  Whether the focal point of the visual

11   depiction is of the minor's genitals or pubic area or whether

12   there is some other focal area; whether the setting of the

13   visual depictions makes it appear to be sexually suggestive,

14   for example, in a place or pose generally associated with

15   sexual activity; whether the minor is displayed in an

16   unnatural pose or in inappropriate attire, considering the age

17   of the minor; whether the minor is fully or partially clothed

18   or nude, although nudity is not in and of itself lascivious;

19   whether the visual depiction suggests sexual coyness or a

20   willingness to engage in sexual activity; whether the visual

21   depiction was intended or designed to elicit a sexual response

22   from the viewer.

23           It is not required that a particular visual

24   depiction involve all of the factors that I have just listed

25   for you.  The importance you give to any one factor is up to

PROCEEDINGS                                        722

1   you to decide.  While the government must prove that the

2   defendant acted with the purpose of producing a visual

3   depiction of sexually explicit conduct, the government does

4   not need to prove that the visual depiction of that conduct

5   was actually produced.

6           The third element of sexual exploitation of a minor

7   that the government must prove beyond a reasonable doubt is

8   that the depiction was transported or transmitted in or

9   affecting interstate or foreign commerce or using a facility

10  of interstate or foreign commerce or produced using materials

11  that had been mailed, shipped and transported in and affecting

12  interstate or foreign commerce.  If a visual depiction of

13  sexually explicit conduct, as I have defined that term, is

14  stored on a digital camera or other type of recording device

15  and the camera or recording device crosses from one state to

16  another, then that is sufficient to satisfy the interstate

17  commerce element.

18          Furthermore, it is sufficient to satisfy the

19  interstate or foreign commerce element if the visual depiction

20  of sexually explicit conduct is recorded or stored on a device

21  that was made either outside of the state of New York or in a

22  foreign country.  I instruct you that the parties have

23  stipulated that the camera seized from the defendant on March

24  19, 2013 was manufactured outside the United States.

25          Whether or not a minor consented to engage in

PROCEEDINGS                          723

1   sexually explicit conduct is irrelevant, as the consent or

2   voluntary participation of a minor is not a defense to the

3   charge.

4            To prove that the defendant attempted to sexually

5   exploit a minor, the government does not need to prove that a

6   visual depiction of sexually explicit conduct, as I have

7   already defined these terms, was actually produced or

8   transmitted.  Nor does the government need to prove that the

9   visual depiction was actually transmitted in or affecting

10  interstate commerce.  The government need not prove that the

11  defendant actually committed the substantive crime of sexual

12  exploitation of a minor.  The government must prove beyond a

13  reasonable doubt:  That the defendant intended to commit the

14  crime of sexual exploitation of a minor; and that the

15  defendant willfully took some action that was a substantial

16  step in an effort to bring about or accomplish the crime.

17           If you find that the government has proven each of

18  the two elements of the crime alleged in Count Three beyond a

19  reasonable doubt, you should find the defendant guilty on

20  Count Three.  If the government fails to prove any one

21  element, you must find the defendant not guilty as to Count

22  Three.

23           The fourth count of the indictment charges the

24  defendant with attempted coercion and enticement of a minor to

25  engage in illegal sexual activity.  Count Four reads as

SHERRY BRYANT, RMR CRR

Case 1:13-cr-00220-RJD   Document 132   Filed 07/25/14   Page 23 of 61 PageID #: 851

1    follows:  "On or about and between February 1, 2013 and March

2    19, 2013, both dates being approximate and inclusive, within

3    the Eastern District of New York and elsewhere, the defendant

4    Bebars Baslan, using facilities and means of interstate and

5    foreign commerce, to wit: a telephone, did knowingly and

6    intentionally attempt to persuade, induce, entice and coerce

7    one or more individuals who had not attained the age of 18

8    years, to wit: John Doe 1, John Doe 2 and Jane Doe 1 to engage

9    in sexual activity for which a person can be charged with a

10   criminal offense, to wit: criminal sex act in the first

11   degree, in violation of Section 130.50 of the New York Penal

12   Law and sexual assault, in violation of Section 2C:14-2(b) of

13   the New Jersey Code of Criminal Justice."

14        Count Four charges the defendant with violating

15   Section 2422(b) of Title 18 of the United States Code.  That

16   section provides, in relevant part:  "Whoever, using the mail

17   or any facility or means of interstate or foreign commerce,

18   knowingly persuades, induces, entices, or coerces any

19   individual who has not attained the age of 18 years, to engage

20   in any sexual activity for which any person can be charged

21   with a criminal offense, or attempts to do so shall be

22   punished in accordance with law."

23        In order to prove the defendant guilty of Attempted

24   Coercion and Enticement of a Minor to Engage in Illegal Sexual

25   Activity, the government must prove each of the following

PROCEEDINGS                          725

1    elements beyond a reasonable doubt:  First, that the defendant

2    intended to commit the crime of Coercion and Enticement of a

3    Minor to Engage in Illegal Sexual Activity; and second, that

4    the defendant did some act that was a substantial step in an

5    effort to bring about or accomplish the crime.

6            I have already instructed you on the law of attempt,

7    and you should apply those instructions here.  I will now

8    define for you the elements of the crime of Coercion and

9    Enticement of a Minor to Engage in Illegal Sexual Activity.

10           First, that on or about the dates set forth in the

11   indictment, the defendant used a facility or means of

12   interstate or foreign commerce, that is, a telephone; second,

13   that the defendant used the telephone to unlawfully, willfully

14   and knowingly attempt to persuade or induce or entice or

15   coerce a person whom the defendant believed to be under 18

16   years of age to engage in any sexual activity, specifically,

17   Daniel, Ellie or Leah; and third, that if the sexual activity

18   had occurred, the defendant could have been charged with a

19   criminal offense under either New York State or New Jersey

20   State law.

21           The first element that the government must prove

22   beyond a reasonable doubt is that the defendant used a

23   facility or means of interstate or foreign commerce,

24   specifically, a telephone.  Transmissions of communications by

25   means of a telephone constitute the use of a facility of

1   interstate commerce, regardless of whether the communication

2   actually crossed a state line.  However, you must find beyond

3   a reasonable doubt that the specific communication or

4   communications was actually transmitted by a telephone.

5          The second element that the government must prove

6   beyond a reasonable doubt is that the defendant used a

7   telephone to unlawfully, willfully and knowingly persuade,

8   induce, coerce or entice a person whom the defendant believed

9   to be under the age of 18 years to engage in any sexual

10  activity.  I have already instructed you on the meanings of

11  the terms "willfully" and "knowingly."

12         I instruct you that the crime of using a facility of

13  interstate commerce to attempt to persuade, induce, entice or

14  coerce a minor to engage in a sexual act is completed when the

15  defendant uses a facility of interstate commerce to attempt to

16  persuade, induce, entice or coerce a person he believed to be

17  under 18 years of age to engage in any sexual activity.

18         The person with whom the defendant was communicating

19  does not need to be a minor in order for the defendant to be

20  guilty of the charge.  It is sufficient if the government

21  proves that the defendant was communicating with an adult

22  intermediary such as a parent or relative for the purpose of

23  leading the person he believed to be under the age of 18 to

24  participate in sexual activity.  Nor is it a defense to the

25  crime that the adult intermediary with whom the defendant was

PROCEEDINGS                    727

1    communicating never intended to allow a minor to be persuaded,

2    induced, enticed or coerced to engage in any sexual activity.

3    The government has met its burden of proof so long as it

4    proves beyond a reasonable doubt that the defendant was

5    communicating with an adult intermediary whom the defendant

6    believed would cause, lead or facilitate the minor to engage

7    in sexual activity.

8            In addition, the sexual act does not need to have

9    been completed in order to find the defendant guilty of the

10   charge.  It is not a defense to the charge that, as a result

11   of circumstances unknown to the defendant, he was unable to

12   complete the intended sexual act or acts.

13           The third element that the government must prove

14   beyond a reasonable doubt is that if the sexual activity had

15   occurred, the defendant could have been charged with a

16   criminal offense under New York State law or New Jersey State

17   law.

18           It is a crime under New York State law for a person

19   to engage in oral sexual conduct or anal sexual conduct with

20   another person who is less than 11 years old.

21           Under New York State law, the following definitions

22   apply:  "Oral sexual conduct" means conduct between persons

23   consisting of contact between the mouth and the penis, the

24   mouth and the anus, or the mouth and the vulva or vagina.

25   "Anal sexual conduct" means conduct between persons consisting

PROCEEDINGS                      728

1   of contact between the penis and anus.

2          Under Section 2C:14-2(b) of the New Jersey Code of

3   Criminal Justice, an actor is guilty of sexual assault if he

4   commits an act of sexual contact with a victim who is less

5   than 13 years old and the actor is at least four years older

6   than the victim.

7          Under New Jersey law, the following definition

8   applies:  "Sexual contact" means an intentional touching by

9   the victim or actor, either directly or through clothing, of

10  the victim's or actor's intimate parts for the purpose of

11  degrading or humiliating the victim or sexually arousing or

12  sexually gratifying the actor.  Sexual contact of the actor

13  with himself must be in view of the victim whom the actor

14  knows to be present.

15         With regard to the third element of the offense --

16  that if the sexual activity had occurred, the defendant could

17  have been charged with a criminal offense under New York State

18  law or New Jersey State law -- you need only find that the

19  activity would have violated any one of the aforementioned

20  laws.

21         If you find that the government has proven each of

22  the elements of the crime alleged in Count Four beyond a

23  reasonable doubt, you should find the defendant guilty on

24  Count Four.  If the government fails to prove any one element,

25  you must find the defendant not guilty as to Count Four.

PROCEEDINGS                    729

1          Count Two of the indictment charges the defendant

2    with Conspiracy to Sexually Exploit a Child.  Count Two reads

3    as follows:  "On or about and between February 1, 2013 and

4    March 19, 2013, both dates being approximate and inclusive,

5    within the Eastern District of New York and elsewhere, the

6    defendant Bebars Baslan, together with others, did knowingly

7    and intentionally conspire to employ, use, persuade, induce,

8    entice and coerce a minor, to wit: John Doe 1, Jane Doe 1 and

9    John Doe 2, individuals whose identities are known to the

10   Grand Jury, to engage in sexually explicit conduct for the

11   purpose of producing one or more visual depictions of such

12   conduct, knowing and having reason to know that such visual

13   depictions would be transported using any means and facility

14   of interstate and foreign commerce, and in and affecting

15   interstate and foreign commerce, and which visual depictions

16   were to be produced using materials that had been mailed,

17   shipped and transported in and affecting interstate and

18   foreign commerce, by any means, to wit: one or more digital

19   cameras, contrary to Title 18, United States Code, Section

20   2251(a)."

21          Count Two of the indictment charges the defendant

22   with violating Section 2251(e) of Title 18 of the United

23   States Code.  That section provides, in relevant part:  "Any

24   individual who conspires to violate 18 U.S.C. 2251(a), which

25   makes it a crime to sexually exploit a minor, shall be

1    punished in accordance with law."

2            In my instruction as to Count Three, I have already

3    instructed you on all the elements of the substantive offense

4    of sexual exploitation of a minor.  I will now instruct you on

5    what the government must prove to show that the defendant

6    conspired to sexually exploit a minor, in violation of 18

7    United States Code, Section 2251(e).

8            The essence of the charge of conspiracy is an

9    understanding or agreement between or among two or more

10   persons that they will act together to accomplish a common

11   objective that they know is unlawful.  You should understand

12   that a conspiracy is an offense separate from the commission

13   of any offense that may have been committed pursuant to the

14   conspiracy.  That is because the formation of a conspiracy, of

15   a partnership for criminal purposes, is in and of itself a

16   crime.  Thus, if a conspiracy exists, even if it should fail

17   in achieving its purpose, it is still punishable as a crime.

18           In order to prove the defendant guilty of Conspiracy

19   to Sexually Exploit a Child, the government must prove each of

20   the following three elements beyond a reasonable doubt:

21   First, that two or more persons, other than the person

22   referred to as Jack, conspired or agreed; second, that they

23   knowingly and willfully conspired or agreed and that the

24   defendant knowingly and willfully was or became a member of

25   the conspiracy; third, that they conspired or agreed to commit

PROCEEDINGS                    731

1   the unlawful act charged in the indictment -- in this case,

2   the sexual exploitation of a minor -- or, in other words, that

3   the objective of the conspiracy was to commit that unlawful

4   act.

5            Let me start with the first and second elements that

6   the government must prove beyond a reasonable doubt.  The

7   conspiracy is a combination or agreement of two or more

8   persons to accomplish an unlawful purpose.  While conspiracy

9   involves an agreement to violate the law, the government need

10  not prove that the defendant entered into an express or formal

11  agreement, or that he stated, orally or in writing, what the

12  scheme was or how it was to be accomplished.  It is sufficient

13  to show that he came to a mutual understanding with another or

14  others to bring about an unlawful act.  You may infer such an

15  agreement -- or conspiracy -- from the circumstances and

16  conduct of the parties, since ordinarily a conspiracy is

17  secret.

18           The second element of conspiracy that the government

19  must prove beyond a reasonable doubt is that the defendant was

20  or became a member.  That is, if you find that a conspiracy

21  existed, you must determine whether he participated in the

22  conspiracy willfully and with knowledge of its unlawful

23  purpose and in furtherance of its unlawful purpose.  A

24  person's knowledge is a matter of inference from the facts

25  proved.  In that connection, I instruct you that to become a

PROCEEDINGS                          732

1    member of the conspiracy, the defendant need not have known

2    the identities of every member, nor need he have been apprised

3    of all of their activities.  Moreover, the defendant need not

4    have been fully informed as to all of the details, or the

5    scope, of the conspiracy in order to justify an inference of

6    knowledge on his part.

7              The extent or duration of the defendant's

8    participation has no bearing on the issue of the defendant's

9    guilt.  An equal role is not what the law requires.  If you

10   find that the conspiracy existed and if you further find that

11   the defendant participated in it knowingly and willfully, the

12   extent or degree of his participation is not material.

13   Moreover, it is not required that a person be a member of the

14   conspiracy from its very start.

15             I want to caution you, however, that the defendant's

16   mere presence at the scene does not, by itself, make him a

17   member of the conspiracy.  Similarly, mere association with

18   one or more members of the conspiracy does not automatically

19   make the defendant a member.  A person may know or be friendly

20   with a criminal without being a criminal himself.  Mere

21   similarity of conduct or the fact that individuals may have

22   assembled together and discussed common aims and interests

23   does not necessarily establish proof of the existence of a

24   conspiracy.

25             I further want to caution you that mere knowledge or

SHERRY BRYANT, RMR CRR

1    acquiescence, without participation, in the unlawful plan is

2    not sufficient to make the defendant a member of a conspiracy.

3    The fact that the acts of the defendant merely happen to

4    further the purposes or objectives of the conspiracy, without

5    his knowledge, does not make the defendant a member.  More is

6    required under the law.  What is necessary is that the

7    defendant must have participated with knowledge of at least

8    some of the purposes or objectives of the conspiracy and with

9    the intention of aiding in the accomplishment of those

10   unlawful ends.

11          In sum, the defendant, with an understanding of the

12   unlawful character of the conspiracy, must have intentionally

13   engaged, advised or assisted in it for the purpose of

14   furthering the illegal undertaking.  He thereby becomes a

15   knowing and willing participant in the unlawful agreement --

16   that is to say, a conspirator.

17          The third element that the government must prove

18   beyond a reasonable doubt is that the conspiracy was to commit

19   an unlawful act, in this case, the sexual exploitation of a

20   minor.  The government need not prove that the defendant

21   actually committed sexual exploitation of a minor.  Rather,

22   what the government must prove beyond a reasonable doubt is

23   that the purpose of the conspiracy was to commit sexual

24   exploitation of a minor.

25          If you find that the government has proven each of

1    the elements of the crime alleged in Count Two beyond a

2    reasonable doubt, you should find the defendant guilty on

3    Count Two.  If the government fails to prove any one element,

4    you must find the defendant not guilty as to Count Two.

5              I will now instruct you on some general principles

6    you will use in your deliberations.

7              In deciding whether or not the government has proven

8    beyond a reasonable doubt the crimes I have described to you,

9    you must weigh the evidence before you.  You are the sole

10   judges of the credibility of the witnesses and the weight

11   their testimony deserves.  The assumption that a witness will

12   speak the truth may be dispelled by the appearance and conduct

13   of the witness, by the manner in which the witness testifies,

14   by the character of the testimony given, or by evidence

15   contrary to the testimony given.

16             You should carefully scrutinize all the testimony

17   given, the circumstances under which each witness testified,

18   and other matters in evidence which tend to indicate whether a

19   witness is worthy of belief.  Your determination of the issue

20   of credibility very largely must depend upon the impression

21   that a witness makes upon you as to whether or not he or she

22   is telling the truth or giving you an accurate version of what

23   occurred.

24             Consider each witness's motive and state of mind,

25   possible partisanship in the case, and demeanor and manner

1   while on the stand.  Consider particularly the relationship

2   each witness bears to either side of the case, the nature of

3   that relationship, the manner in which each witness might be

4   affected by the verdict, and the extent to which, if at all,

5   each witness is either supported or contradicted by other

6   evidence in the case.

7           The question really is, how did the witness impress

8   you?  Did the witness's version appear straightforward and

9   candid or did the witness try to hide some of the facts?  Is

10  there a motive of any kind to testify falsely or truthfully or

11  to shade the testimony offered?  In other words, what you try

12  to do, in plain English, is to size the person up, just as you

13  would do in any important matter when you are undertaking to

14  determine whether or not a person is being truthful, candid,

15  straightforward, or otherwise reliable.

16          If you believe that a witness has made an earlier

17  statement that conflicts with his or her trial testimony, you

18  should consider whether the witness purposely made a false

19  statement or whether it was an innocent mistake; whether the

20  inconsistency concerns an important fact or whether it had to

21  do with a small detail; and whether the witness had an

22  explanation for the inconsistency that appealed to your common

23  sense.

24          You have heard the testimony of law enforcement

25  officials.  The fact that a witness may be employed as a law

1   enforcement official does not mean that his or her testimony

2   is necessarily deserving of more or less consideration or

3   greater or lesser weight than that of an ordinary witness.

4   You should evaluate such testimony in the same manner as you

5   would the testimony of any other witness.

6           Keep in mind that the law does not require the

7   government to call as witnesses all persons who may have been

8   present at any time or place involved in the case, or who may

9   appear to have some knowledge of the matters in issue at this

10  trial.  Nor does the law require the government to produce as

11  exhibits all papers and other items mentioned during the

12  course of the trial.

13          In a criminal case, the defendant has no duty to

14  testify or come forward with any other evidence.  He may, of

15  course, choose to take the witness stand on his own behalf.

16  In this case, the defendant, Bebars Baslan, has chosen to

17  testify.  As with any other witness, you may take his interest

18  into account in evaluating his credibility as a witness.  You

19  should evaluate and examine his testimony as you would the

20  testimony of any witness with an interest in the outcome of

21  the case.  However, the government always has the burden of

22  proving the charges against the defendant beyond a reasonable

23  doubt.  The fact that the defendant has chosen to take the

24  stand and testify on his own behalf does not, in any manner,

25  shift the burden of proof from the government to him.

PROCEEDINGS                    737

1          You have heard reputation and opinion evidence from

2    Maryana Kowal, the other witness for the defense, about the

3    defendant's good character and character trait for

4    truthfulness.  You should consider character evidence together

5    with and in the same way as all the other evidence in the

6    case.

7          You have heard testimony that the defendant Bebars

8    Baslan made statements following his arrest on March 19, 2013

9    to FBI Special Agent Aaron Spivack and at a proffer session in

10   October 2013 to, among others, FBI Special Agent John

11   Robertson.

12         You must decide whether the defendant actually made

13   the statements as described in the agent's testimony and, if

14   so, how much weight to give to the statements.  In making

15   these decisions, you should consider all of the evidence,

16   including the defendant's personal characteristics and

17   circumstances under which the statement may have been made, as

18   well as the defendant's testimony about those circumstances.

19         During the trial, typed transcripts were made

20   available to you.  These documents contained an interpretation

21   of what was said on the recordings.  These documents were

22   given to you as an aid to assist you in listening to the

23   tapes.  They are not evidence.  When the tapes were played, I

24   advised you to listen very carefully to the tapes themselves.

25   You alone should interpret the recordings based on what you

1    heard.  If you think you heard something different from what

2    appeared on a transcript, then what you heard is controlling.

3    If you cannot determine from the tape that particular words

4    were spoken, you must disregard the transcripts insofar as

5    those words are concerned.

6              The statements, comments, arguments, demeanor and

7    tone of voice of the attorneys do not constitute evidence.

8    Nor does anything I have said or done.

9              Your recollection governs.  Nobody else's.  Not the

10   Court's -- if I have made reference to the testimony -- and

11   not counsel's recollection.  It is your recollection that must

12   govern during your deliberations.  If necessary during those

13   deliberations, you may request a reading from the trial

14   transcript that may refresh your recollection.

15             Please, as best you can, try to be as specific as

16   possible in your request for read-backs; in other words, if

17   you are interested only in a particular part of a witness's

18   testimony, please indicate that to us.  It may take some time

19   for us to locate the testimony in the transcripts, so please

20   be patient.  And, as a general matter, if there is ever a

21   delay in responding to a jury note, please understand there is

22   a reason for it.  None of us goes anywhere.  As soon as a jury

23   note is delivered to the Court by the Marshal, we turn our

24   attention to it immediately.  If you have any questions about

25   the applicable law and you want a further explanation from me,

PROCEEDINGS                                739

1  or if you want to see any or all of the exhibits, send me a

2  note.

3           The attorneys in summing up have asked you to draw

4  certain inferences from the evidence in this case.  Any

5  inference you draw must be reasonably based on the evidence,

6  and you may infer only such facts that your reason and common

7  sense lead you to believe follow from the evidence.  You are

8  not to engage in speculation based on matters that are not in

9  evidence.

10          You are entitled to your own opinions but you should

11 exchange views with your fellow jurors and listen carefully to

12 each other.  Do not hesitate to change your opinion if you are

13 convinced that another opinion is correct.  But each of you

14 must make your own decision.

15          In a few minutes, I will supply you with several

16 copies of my instructions.  If you refer to these

17 instructions, keep in mind that you should consider them as a

18 whole.  Each part of these instructions is important in your

19 deliberations.  And, most importantly, do not let my giving

20 you my instructions discourage you from requesting further

21 instructions or clarification from the Court.

22          Any verdict you reach must be unanimous.  That is,

23 with respect to each count, you must all agree as to whether

24 your verdict is guilty or not guilty.

25          When you retire to the jury room, you will also be

PROCEEDINGS                          740

1  given a verdict form which may well be self-explanatory.

2  Needless to say, if you have any questions about the verdict

3  form, do not hesitate to ask the Court for further

4  instructions.  When you are ready to report your verdict,

5  check the verdict sheet carefully so that it accurately

6  reflects the jury's verdict, and bring it to the courtroom

7  when summoned by the Court.

8          If you wish during your deliberations to communicate

9  with the Court, for any reason, send me a note through the

10  Marshal.  No member of the jury should ever attempt to

11  communicate with the Court by any means other than a signed

12  writing; and the Court will never communicate with any member

13  of the jury on any subject touching the merits of the case,

14  other than in writing, or, more likely than not, orally here

15  in open court.

16          You will not discuss this case with anyone outside

17  the jury room.  And that includes your fellow jurors.  You

18  will only discuss the case when all 12 deliberating jurors are

19  together, in the jury room, with no one else present, behind

20  the closed door.  At no time is there to be any discussion

21  about the merits of the case, period.

22          In order that your deliberations may proceed in an

23  orderly fashion, you should have a foreperson.  Traditionally,

24  juror number one acts as foreperson.  If juror number one

25  prefers not to serve in that role, you can choose a foreperson

PROCEEDINGS                                741

1    however you deem appropriate, such as by asking for a

2    volunteer.  The foreperson's vote is entitled to no greater

3    weight than that of any other juror.

4           Bear in mind also that you are not to reveal to any

5    person -- not even to the Court -- how the jury stands

6    numerically on the question of whether the defendant is guilty

7    or not guilty until after you have reached a unanimous verdict

8    on all counts for the defendant.  At that time, you should

9    simply send me a note saying, "We have reached our verdict."

10   You will be summoned to the courtroom and the Clerk of the

11   Court will take the verdict.

12          Your oath sums up your duty -- and that is, without

13   fear or favor to any person, you will well and truly try the

14   issues before these parties according to the evidence given to

15   you in court and the laws of the United States.

16          THE COURT:  Thank you, Mike.  Do either counsel wish

17   to address the Court at sidebar?

18          MR. SMITH:  Yes, Your Honor.

19          (Continued on the following page.)

20

21

22

23

24

25

SIDEBAR CONFERENCE                    742

1          (Sidebar conference.)

2          THE COURT:  Yes, sir.

3          MR. SMITH:  Mr. VanRiper certainly did an excellent

4   job.  He missed one word in the "No Discussion," which is on

5   page 31.  He said:  "At no time is there to be any discussion

6   about the merits of the case."  He intended to say:  "At no

7   other time."

8          THE COURT:  I'll have him repeat it, repeat the

9   whole thing.  Okay?  Anything else?  Mr. Savitt?

10          MR. SAVITT:  No.  Thank you, Your Honor.

11          MR. SMITH:  Thank you, Judge.

12          (End of sidebar conference.)

13          (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                743

1      THE COURT:  It was brought to my attention that Mike

2  just dropped a word, so we're going to repeat a very limited

3  instruction to you.  Go ahead, Mike.

4      THE LAW CLERK:  You will not discuss this case with

5  anyone outside the jury room.  And that includes your fellow

6  jurors.  You will only discuss the case when all 12

7  deliberating jurors are together, in the jury room, with no

8  one else present, behind the closed door.  At no other time is

9  there to be any discussion about the merits of the case.

10     THE COURT:  All right.  Thank you, Mike.  Swear the

11 marshal.

12     COURTROOM DEPUTY:  Can I ask the marshal please to

13 come forward.

14     (Marshal sworn.)

15     THE COURT:  Ladies and gentlemen, this is the court

16 security officer and Deputy United States Marshal who will be

17 stationed outside the jury room during your deliberations,

18 either he or one of his colleagues.  If you have any reason to

19 communicate with the Court, simply open the door, hand him a

20 note.  He will bring it straight away to the Court, who will

21 address it immediately with counsel and respond as quickly as

22 we possibly can.

23     We have five alternate jurors in the back row who

24 have been working attentively.  Do you have personal

25 belongings in the jury room?  I ask you now to go with

PROCEEDINGS                    744

1   Ms. Mulqueen, retrieve those belongings and then come back to

2   the courtroom.  Do you have a verdict sheet?  Have both sides

3   seen it?

4            MR. SAVITT:  Yes, sir, we have.

5            MS. DEMAS:  Yes, Your Honor.

6            THE COURT:  It's approved by everyone.  All right,

7   hand it to the marshal, if you would.  Just take a moment

8   while we clear the jury room of their belongings, I suspect

9   only a moment.

10           (Pause.)

11           THE COURT:  All right.  If the alternate jurors

12  would be seated and remain with me ever so briefly.  Ladies

13  and gentlemen of the jury, you may now retire and consider

14  your verdict.

15           (The jury retired to deliberate at 10:28 a.m.)

16           THE COURT:  Please be seated, everyone.  Ladies, I

17  know it can be frustrating to be with us, sit and listen

18  attentively to the testimony and at the very last moment be

19  separated from your colleagues on the jury.

20           I hope you understand the need for us to impanel

21  alternate jurors.  Sometimes, because of emergencies

22  unforeseen, extended illnesses and so forth, we have to resort

23  to a number of alternate jurors.  Indeed, in this case, we did

24  almost at the outset of the trial.

25           So we thank you for your service.  I'm not going to

PROCEEDINGS                              745

1   formally excuse you at the moment, because the trial continues

2   with the jury's deliberations.  And for that reason, I'll ask

3   you to continue to abide by my instruction not to discuss the

4   case with anyone until this jury completes its work.  At that

5   point, you are free to discuss the case with anyone you choose

6   to, or not, as you decide.  Speaking on behalf of counsel, I'm

7   sure your wishes in that regard will be respected.

8           So we ask you to step downstairs to the second floor

9   so that an accurate record of your service to the court is

10  maintained by our clerk.  Other than that, you are free to

11  leave the building and you'll be notified if for any reason

12  your continued service is needed.  Thank you again for your

13  time.  Ellie will be here.  Mike, would you just escort them

14  out to the hall while we wait for Ellie's return.

15          Thank you again, ladies.

16          (Alternate jurors exit the courtroom.)

17          THE COURT:  All right.  Well, if you're going to

18  leave the room, make sure that Ellie knows exactly where and

19  how to reach you.  And as soon as we hear any word, obviously,

20  we'll be in touch with you.  Anything else?

21          MR. SMITH:  No, Your Honor.

22          MS. DEMAS:  No, Your Honor.

23          THE COURT:  All right.  To be continued then.  Thank

24  you.

25          (Recess.)

SHERRY BRYANT, RMR CRR

PROCEEDINGS                          746

1          (In open court outside the presence of the jury.)

2          (The defendant enters the courtroom.)

3          (Court Exhibits 1, 2 and 3 received in evidence.)

4          THE COURT:  I take it Court Exhibit 1 was the copy

5   of the charge?

6          COURTROOM DEPUTY:  Yes.  Court Exhibit 1 is the

7   charge; and Court Exhibit 2 is the jury note.

8          THE COURT:  Court Exhibit 2 is our first jury note.

9   I have some questions about it.  As to the summation of Mr.

10  Savitt, as eloquent as it was, they're not going to get it,

11  because it's not evidence in the case.

12         MR. SAVITT:  Understood.

13         THE COURT:  The binders, those are transcripts,

14  which technically are not evidence, but I have no objection to

15  them seeing them as long as I remind them that they are not

16  evidence and that the tapes themselves are, in fact,

17  available.

18         Testimony of the -- I assume they mean of the

19  defendant.  Is that in printed form that we can provide, in

20  clean copy, or do we have to hear it in court?

21         MS. DEMAS:  Your Honor, we have not yet received a

22  transcript from yesterday from the court reporter.  I believe

23  your deputy made an effort to obtain it.

24         THE COURT:  Any idea where that is?  While we're

25  looking into that, what are the five CDs?

PROCEEDINGS                          747

1        MR. SMITH:  I think that refers to Government

2   Exhibits 1 through 5, which were the CDs of the audio

3   recordings.

4        THE COURT:  I see.  Do we have the capability of

5   giving them that in the jury room or do they have to hear it

6   here?

7        MS. DEMAS:  Your Honor, if they have a device on

8   which to play it, we can give it to them in the jury room.

9        THE COURT:  Is it safe?  They couldn't access any

10  other information?

11       MS. DEMAS:  One of the exhibits is a video slash --

12  includes child pornography, but they are entitled -- it's in

13  evidence.

14       THE COURT:  I understand that.  If we played all

15  those CDs here in the courtroom, how much time are we talking

16  about?

17       MR. SMITH:  We played approximately three hours'

18  worth of audio.

19       THE COURT:  So what can we do?  Is it possible to

20  provide it to them?

21       MS. DEMAS:  Yes.

22       THE COURT:  The testimony of the witness who

23  discussed the Lolita files, I forget the gentleman's name.

24       MR. SMITH:  That was Special Agent Phung.

25       THE COURT:  Do we have that in printed form?

```
                        PROCEEDINGS                    748
```

1            MR. SMITH:  We have that in printed form.  We're

2     pulling a copy of that.

3            MR. SAVITT:  She's no gentleman, Your Honor.  That's

4     a female agent.

5            THE COURT:  Right.  And any objection if we clean it

6     up and send it in?  I don't know that there's anything we have

7     to clean out of it.

8            MS. DEMAS:  No, Your Honor.  I've looked at it and I

9     did not see anything to clean out of that testimony.

10           THE COURT:  Mr. Savitt?

11           MR. SAVITT:  Your Honor, I frankly have not had a

12    chance to look at it.  I accept counsel's representation, but,

13    in the interest of caution, I'll take a quick look at it.

14           THE COURT:  Please do.

15           "Properties of the audited files," what does that

16    mean?

17           MR. SMITH:  That, we don't know.

18           THE COURT:  I'll ask them.  23A, B and C, we have

19    those?

20           MS. DEMAS:  Yes.  Those are phone records.

21           THE COURT:  And the list of charges they now have in

22    the instructions.

23           So, all right, let's see.

24           MS. DEMAS:  Your Honor, I'm sorry, I should be

25    clear.  I think it's theoretically possible to give the jury

PROCEEDINGS                          749

1   access to the CDs, but we would need to get a laptop from our

2   office that doesn't have anybody else's information on it, so

3   that could take some time.  I mean, I will make an effort to

4   go over there now and find out if they can give us a clean

5   laptop to play it on.

6              THE COURT:  All right.  Otherwise, we have three

7   hours of it here in the courtroom.

8              MR. SMITH:  I mean, they may only be interested in

9   certain portions, and we can certainly ask them if there are

10  things that they specifically want to listen to.  We could

11  likely identify things with some speed.

12             THE COURT:  Okay.  And testimony of -- we can

13  provide them with the testimony of the witness who discussed

14  the Lolita files.  Eventually, we'll get the defendant's

15  testimony.

16             Have we found out where the transcript stands,

17  Ellie?

18             COURTROOM DEPUTY:  She's going to bring it up.

19             THE COURT:  Oh, she's going to bring it up?

20             COURTROOM DEPUTY:  Yes.  She's printing it out.

21  She's going to bring it up.

22             THE COURT:  We're going to have that momentarily.

23  You can do the same thing there, read it, make sure it's

24  clean, as we say, and we can provide it to them.  I'll ask

25  about number 6.  Number 7, there's no dispute.

PROCEEDINGS                          750

1           And the second note I assume involves Exhibit 55,

2    was it?

3           MR. SMITH:  Yes.

4           THE COURT:  Which you have available?

5           MR. SMITH:  We have that.

6           THE COURT:  Okay.  So we have 55, 23A, B and C, the

7    transcripts.

8           MR. SAVITT:  Your Honor, I'll put it on the record

9    anyhow.  I just want to be sure, if my memory serves me

10   correctly, that the five CDs that we're talking about relate

11   exclusively to the Massre recordings and to nothing else.

12          MR. SMITH:  They're audio recordings that were

13   consensual recordings made by the government's informant.

14          THE COURT:  Okay.  Bring them in, Ellie.

15          COURTROOM DEPUTY:  Certainly.

16          MS. DEMAS:  I'm sorry, Your Honor, did you want us

17   to be able to provide the jury with more than one transcript

18   binder or will one suffice?  If we need to get them all, I'll

19   go back to the office.

20          THE COURT:  I'd get 12 of them.

21          MS. DEMAS:  Twelve?  Okay.

22          THE COURT:  Do you have one now?

23          MS. DEMAS:  I do have one now, and we're sending the

24   intern to get the rest.

25          THE COURT:  Well, give us the one you have and we'll

PROCEEDINGS                              751

1   send that in.

2              (Jury enters the courtroom at 11:25 a.m.)

3              THE COURT:  We have a couple of notes and I'd like

4   to review them with you.  Your first request involves eight

5   numbered items, and I'll tick them off one at a time and

6   respond accordingly.

7              The first, you asked for the summation for the

8   defense.  As I told you throughout the trial, the statements

9   of counsel are not evidence and it will not be provided to

10  you.

11             Transcript binders.  We have -- we will provide

12  those binders to you.  And first, we're going to provide you

13  with one.  We are retrieving 11 more and they will be sent in

14  to you.  Please do bear in mind the admonition I gave you at

15  the time we first addressed the subject of transcripts and,

16  indeed, I've repeated it in my final instructions.  The

17  transcripts themselves are not evidence.  The evidence is on

18  the tapes and they are available to you should you so request.

19  Indeed, it appears that you have in another request.

20             You asked for the testimony for the defendant.  That

21  will be -- logistically, we have to get it from the reporter,

22  okay, review it, make sure there's nothing extraneous in

23  there.  And as soon as we've done that, we will send it in to

24  you.

25             The five CDs you are entitled to.  They're in

SHERRY BRYANT, RMR CRR

PROCEEDINGS                          752

1  evidence.  You may recall playing them here in court involved

2  approximately three hours of playing time.  We are figuring

3  out logistically a way of providing them to you in the

4  confines of the jury room, okay?  If that's doable, all well

5  and good.  If not, we will begin playing them here in the

6  courtroom.

7          Now, at any time with respect to any of these items,

8  you are in control.  Okay?  Let me explain to you what I mean.

9  Juries will ordinarily ask for exhibits in sort of generic

10  form.  You may have something very specific in mind and you're

11  not quite sure where it is, so you ask for a large body of

12  information.  Perfectly understandable.  And sometimes there's

13  simply no other way of going about it.

14          But if at any time you hear something that you were

15  looking for, you can stop us at any time.  You're in full

16  control here.  The only thing I don't want you to do is while

17  you're here in the courtroom have any discussion about it.

18  Okay?  I'm going to ask you when you go back to talk over what

19  I've discussed, and if you have any further questions or

20  comments or requests, of course, you make them, but be very

21  vigilant.  Once that jury room door opens, okay, don't discuss

22  the case.  Absolutely critical.

23          Perfectly human.  You're in the middle of

24  deliberations.  You've got certain questions.  You hear

25  certain information.  Perfectly understandable that you should

PROCEEDINGS                                      753

1   react immediately.  Hold any reaction and exchange among

2   yourselves until you get into that jury room behind the closed

3   door.

4           So we'll do our best with the CDs and let you know

5   how we make out.

6           The testimony of the witness regarding the Lolita

7   files will be provided to you in short order.

8           We have a question about item 6.  It requests, and I

9   quote:  "Properties of the audited files."  We're not entirely

10  sure what you're requesting.  If you could try to be a little

11  more specific so we might make an informed judgment as to what

12  that is.  But as of now, we're not entirely certain what

13  you've requested.

14          Exhibits 23A, B and C are here and they will be

15  provided to you immediately.

16          A list of the charges you now have in my formal

17  instructions.  You now have all the charges.

18          And finally, your second note asks for the statement

19  created on the night of the arrest in the hotel.  That I

20  believe is a reference to Government Exhibit 55.  I have it.

21  It will be provided to you momentarily.

22          So, to review, summations of the defense will not be

23  provided.  Transcripts will.  Testimony of the defendant

24  eventually will be provided, as will the CDs once we figure

25  out logistically whether we can give it to you in the jury

SHERRY BRYANT, RMR CRR

1   room or we need to do it here in the courtroom.  Testimony of

2   the witness regarding the Lolita files will be provided.

3   You'll consider whether you can be more specific about the

4   request for properties of the audited files.  Exhibits 23A, B

5   and C will be provided.  You have a list of the charges.  And

6   Exhibit 55 will be provided.

7            And, with that, we'll return you to the jury room.

8   Feel free to communicate with us and as soon as we have this

9   testimony in order, we will have it to you immediately.

10           (Jury exits courtroom at 11:31 a.m.)

11           THE COURT:  Mr. Savitt, you've been through this

12  pile of documents?

13           MR. SAVITT:  Yes, Your Honor, there are some

14  deletions that I believe are appropriate from the transcript.

15           Just for the record -- I don't think we'll have too

16  much of an argument about this -- there's a sidebar at page

17  499.  The record itself of Agent Phung starts at 479 and it

18  ends at -- I'm sorry.

19           THE COURT:  I'm sorry.  Let's -- I don't think we're

20  on the same page.  You're talking about the agent's testimony

21  regarding the Lolita file?

22           MR. SAVITT:  Yes, Your Honor.

23           THE COURT:  I'm not there yet.

24           MR. SAVITT:  Oh, I'm so sorry.

25           THE COURT:  I'm talking about the documents we've

PROCEEDINGS                        755

1   already assembled in response to their note.

2          MR. SAVITT:  Oh, that's fine, Your Honor.  I

3   apologize.

4          THE COURT:  As far as the rest are concerned, go

5   through the testimony, and if you have any -- work it out, and

6   if you can't, I'll come back.

7          MR. SAVITT:  Yes, Your Honor.

8          THE COURT:  Okay?  All right then.

9          MS. DEMAS:  Thank you.

10         THE COURT:  See you shortly.

11         At some point, we will order lunch for the jurors.

12  When their lunch arrives, I will let you know and you can

13  retire for your own.

14         (Recess.)

15         (Court Exhibits 4, 5 and 6 received in evidence.)

16         THE COURT:  I understand that there's agreement

17  reached with respect to the notes.  I have Mr. Baslan's

18  testimony ready for the jury.  I have Court Exhibits 37 -- is

19  it 37M, N, and Exhibit 37O?

20         MR. SMITH:  I believe it's 37M through 37Y.

21         THE COURT:  Okay.  Oh, 37Y.  Thank you.  And you've

22  agreed on that.

23         This is a copy of the March 7 meeting without the

24  video.  And the reason we don't give them the video is because

25  we don't have control over it being played in the confines of

PROCEEDINGS                          756

1    the jury room on someone's personal computer.

2              MR. SMITH:  It contains child pornography, so that's

3    exactly right, to prevent it from being copied.

4              THE COURT:  So I propose that we include the

5    following note:  Ladies and gentlemen, you will note that the

6    video portion on one of the CDs that you saw here in the

7    courtroom is not included in the CDs now provided.  You may,

8    of course, see the full CD, including the video portion, but

9    we would have to do that here in open court, which is easy

10   enough to arrange.

11             MR. SAVITT:  That's fine, Your Honor.  Thank you.

12             MR. SMITH:  I think that's fine.

13             THE COURT:  Who knows?  Maybe they're looking for

14   the video portion.  Better to get it than not have it, so we

15   at least let them know it's available.

16             Oh, what about this last note?

17             MR. SMITH:  We're in agreement as to the last note.

18   That was Exhibits 37M through Y.

19             THE COURT:  That's the screen shot of the Lolita

20   files?

21             MR. SMITH:  Yes.

22             MR. SAVITT:  Yes, Your Honor.

23             THE COURT:  Okay.  If that's the case, then you

24   don't need me.  Ellie, here we go.  This goes together with

25   that.  This goes with that.

```
                    PROCEEDINGS                    757
```

1           COURTROOM DEPUTY:  So we don't need to bring them

2     out?

3           THE COURT:  No.  Do we have anything outstanding?

4           MR. SMITH:  No, Your Honor.

5           MS. DEMAS:  No, Your Honor.

6           THE COURT:  So they received the other testimony as

7     well?

8           MS. DEMAS:  Yes.

9           MR. SMITH:  Yes.

10          THE COURT:  Has their lunch arrived?

11          COURTROOM DEPUTY:  No.  I anticipate it being here

12    at about 1:15.

13          THE COURT:  Okay.

14          COURTROOM DEPUTY:  In response to their note asking

15    for six more copies of the jury charge, I have six more copies

16    going in.

17          THE COURT:  Okay.  There you go.  I'll see you a

18    little later.

19          (Recess.)

20          (Court Exhibits 7, 8 and 8A and 9 received in

21    evidence.)

22          (In open court.)

23          (The defendant enters the courtroom.)

24          THE COURT:  We had a note, as you know, that merely

25    recites:  "We're ready."  I guess the entire courtroom is

PROCEEDINGS                          758

1   assuming they have a verdict.  Who knows, we might be

2   surprised.  I'll bring them in momentarily.

3           Just for the record, that note that we sent to the

4   jury regarding their question about New Jersey law has been

5   marked 8A as a Court Exhibit.  It was agreed upon, was it not,

6   gentleman?

7           MR. SMITH:  Yes, Your Honor.

8           THE COURT:  Mr. Savitt?

9           MR. SAVITT:  Yes.  I'm sorry, Your Honor.

10          THE COURT:  All right then, let's bring them in.

11          (The jury enters the courtroom at 4:25 p.m.)

12          THE COURT:  Sir and ladies, I have your note that

13  reads:  "We're ready."  Do I assume that means you've arrived

14  at a verdict?

15          THE FOREPERSON:  Yes.

16          THE COURT:  And is that verdict unanimous?

17          THE FOREPERSON:  Yes.

18          THE COURT:  Would you tender it to Ms. Mulqueen for

19  my inspection, please.  The Clerk of the Court will take the

20  verdict.

21          COURTROOM DEPUTY:  As to Count One, how do you find

22  the defendant, Bebars Baslan?

23          THE FOREPERSON:  Guilty.

24          COURTROOM DEPUTY:  As to Count Two, how do you find

25  the defendant?

```
                    PROCEEDINGS                    759
```

1          THE FOREPERSON:  Guilty.

2          COURTROOM DEPUTY:  As to Count Three, how do you

3   find the defendant?

4          THE FOREPERSON:  Guilty.

5          COURTROOM DEPUTY:  As to Count Four, how do you find

6   the defendant?

7          THE FOREPERSON:  Guilty.

8          THE COURT:  Please poll the jury.

9          COURTROOM DEPUTY:  Juror number 1, is that your

10  verdict?

11         JUROR NUMBER 1:  Yes.

12         COURTROOM DEPUTY:  Number 2?

13         JUROR NUMBER 2:  Yes.

14         COURTROOM DEPUTY:  Number 3?

15         JUROR NUMBER 3:  Yes.

16         COURTROOM DEPUTY:  Number 4?

17         JUROR NUMBER 4:  Yes.

18         COURTROOM DEPUTY:  Number 5?

19         JUROR NUMBER 5:  Yes.

20         COURTROOM DEPUTY:  Number 6?

21         JUROR NUMBER 6:  Yes.

22         COURTROOM DEPUTY:  Number 7?

23         JUROR NUMBER 7:  Yes.

24         COURTROOM DEPUTY:  Number 8?

25         JUROR NUMBER 8:  Yes.

PROCEEDINGS                                    760

1          COURTROOM DEPUTY:  Number 9?

2          JUROR NUMBER 9:  Yes.

3          COURTROOM DEPUTY:  Number 10?

4          JUROR NUMBER 10:  Yes.

5          COURTROOM DEPUTY:  Number 11?

6          JUROR NUMBER 11:  Yes.

7          COURTROOM DEPUTY:  Number 12?

8          JUROR NUMBER 12:  Yes.

9          THE COURT:  All right.  The Clerk of the Court will

10   record the verdict.

11          Ladies and gentlemen, your work is complete.

12   However, the record of these proceedings cannot be completed

13   until I acknowledge the extraordinary service that you've

14   rendered the Court in this matter, the obvious sensitivity and

15   diligence you brought to the exercise of the responsibility

16   that you willingly assumed, and we record that as a matter of

17   record on these proceedings.

18          I would ask you to stop in downstairs on the second

19   floor to our jury clerk's office so that an accurate record of

20   your service is maintained.  Beyond that, you are free to

21   leave, with the collective thanks of counsel and the Court.

22   If you'll step inside for just a moment, if there are any

23   questions you have about your experience, I'll be happy to

24   answer them.  Otherwise, you are excused with our thanks.

25          (Jury exits the courtroom.)

PROCEEDINGS                              761

1          THE COURT:  Is there anything else?

2          MR. SMITH:  No, Your Honor.

3          THE COURT:  Mr. Savitt?

4          MR. SAVITT:  Your Honor, just in connection with a

5    Rule 29(c) and a Rule 33, which we have to file within 14

6    days.  I want to make an application under those rules on the

7    record, with leave to supplement this application with legal

8    and factual arguments beyond the 14-day period.

9          THE COURT:  What's your application?

10          MR. SAVITT:  My application simply is to be able to

11    file a memorandum in support of the Rule 29(c) and the Rule

12    33.  If I can have till early September, Your Honor.

13          THE COURT:  Thirty days.

14          MR. SAVITT:  Thirty days.

15          THE COURT:  Thirty days.  Anything else?

16          MR. SAVITT:  I don't believe so, Your Honor.

17          THE COURT:  Thank you, folks.

18          MR. SAVITT:  Thank you.

19          MR. SMITH:  Thank you.

20          MS. DEMAS:  Thank you.

21          THE COURT:  Good day.

22          (Whereupon, the proceedings were concluded at 4:29

23    p.m.)

24

25

SHERRY BRYANT, RMR CRR

762

1                              I N D E X

2

3

4    EXHIBITS

5     Court Exhibits 1, 2 and 3                        746

6     Court Exhibits 4, 5 and 6                        755

7     Court Exhibits 7, 8 and 8A and 9                 757

8

9

10              I certify that the foregoing is a correct

11   transcript from the record of proceedings in the

12   above-entitled matter.

13

14                        /s/ Sherry Bryant_____
                           Sherry Bryant, RMR, CRR
15                         Official Court Reporter

16

17

18

19

20

21

22

23

24

25