United States v. Cooper 397 F.Supp. 277 (1975, 8th District)
"That [the] mere intrusion by the informer into the defense camp will not require relief absent a showing of prejudice, but the prejudice will be presumed if the informer transmits info on defendant strategy to the government"

Weatherford v. Bursey 51LED2D 30, 429 US 545 (1977, Supreme Court)* Lead / Root Case into the subject (Spy in Defense Camp)
No evidence obtained from invading the defense camp can be used directly or indirectly in any way to the detriment of the defendant.

@[429 US 552]
If anything is to be inferred from these two cases with respect to right to counsel, it is that when conversation with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversation have produced, directly or indirectly, any of the evidence offered at trial.

@[429 US 554]
Had Weatherford testified at Bursey's trial as to the conversation between Bursey and Wise; Had any of the State's evidence originated in these conversations; had those overheard conversation been used in any other way to the substantial detriment of Bursey; or even had the prosecution learned from Weatherford, an undercover agent, the details of the Bursey-Wise conversations about trial preparations, Bursey would have a much stronger case.

@[429 US 558]
Unless Weatherford communicated the substance of the Bursey-Wise conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State, there can be no Sixth Amendment violation.

United States v. Levy 577 F.2d 200 (1978 3rd Circuit Appeals)

@[577 F.2d 208]
The district court concluded that Verna had not been prejudiced by the transmittal of information since the government had learned only that the defense intended to dispute the credibility of the government's key witnesses. But the court failed to mention the equally significant point that the enforcement thereby necessarily became privy to the fact that his was the only likely defense strategy that the persecution had to anticipate.
...
Where there is a knowing invasion of the attorney-client relationship and where confidential information is disclosed to the government, we think that there are overwhelming considerations militating against a standard which tests the sixth amendment violation by weighing how prejudicial to the defense the disclosure is
...
Consequently, the court was able to consider the problem in a pretrial hearing. But it is highly unlikely that a court can, in such a hearing, arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process o pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself.
...
In such cases the Sixth Amendment violations might be disclosed, if at all, late in the trial or after the trial had been completed. At that point a trial court applying an actual prejudice test would face the virtually impossible task of reexamining the entire proceeding to determine whether the disclosed information influenced the government' investigation or presentation of it's case or harmed the defense in any other way.

@[577 F.2d 209]
Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful. The purpose of the attorney-client privilege is inextricably linked to the very integrity and accuracy of the fact finding process itself. Even guilty individuals are entitled to be advised of strategies for their defense. In order for adversary system to function properly, any advice received as a result of a defendant's disclosure to counsel must be insulated from the government.

...
We think that the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.

@[577 F.2d 210]
In our judgment, the only appropriate remedy is the dismissal of the indictment. As a result of the district court's decision that no sixth amendment violation occurred, the same strike force group which originally handled the case was allowed to proceed with the trial. The disclosed information is now in the public domain. Any effort to cure the violation by some elaborate scheme, such as by bringing in new case agents and attorneys from distant places, would involve the court in the same sort of speculative enterprise which we have already rejected. Even if new case agent and attorneys were substituted, we would still have to speculate about the effects of the old case agents' discussion with key government witnesses. More importantly, public confidence in the integrity of the attorney-client relationship would be ill-served by devices to isolate new government agents from information which is now in the public domain.

United States v. Strulle 1979 U.S. Dist. Lexi 12805 (1979, 2nd District)
Followed Weatherford in no information obtained can be used in any way to the defendant's detriment.

Bishop v. Rose, 701 F.2d 1150 (1983, 6th Circuit)
@[701 F.2d 1157]
The court found it necessary to consider whether mere disclosure would have been sufficient to establish prejudice because the court found that the confidential information was used for the "benefit of the prosecution and to the detriment" of the defendant.

Briggs v. Goodwin 698 f.2d 486 (1983, DC Appeals)
Follows Weatherford, and discussed / defined prejudice.

@[689 F.2d 494]
The threat of significant harm required by Weatherford does not, however have to amount to "prejudice" in the sense of altering the actual outcome of the trial. Although the Sixth Amendment is concerned primarily with fairness at trial, it is not limited to that function. The right to counsel protects the whole range of the accused's interests implicated by a criminal prosecution. These interests may extend beyond the wish for exoneration to include, for example, the possibilities of a lesser charge, a lighter sentence, or the alleviation of "the practical burdens of a trial."
...
Moreover, the appellants need not prove that the prosecution actually used the information obtained. The prosecution makes a host of discretionary and judgmental decisions in preparing piece of information in the possession of the prosecution by was consciously or subconsciously factored into each of those decision. Mere possession by the prosecution of otherwise confidential knowledge about the defense strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is "inherently detrimental,... unfairly advantages the prosecution, and threatens to subvert the adversary system of criminal justice." Further, once the investigatory arm of the government has obtained information, that information may reasonable be assumed to have been passed on to other governmental organs responsible for prosecution. Such a presumption merely reflects the normal high level of formal and informal cooperation which exists between the two arms of the executive.
...
FBI documents show that Poe informed the FBI of the appellants' effort to contact a potential witness; the financial difficulties of the defense team, particularly regarding the adverse financial impact of a particular venue motion.

United States v. Steele 727 F.3d 580 (1983, 6th Circuit Appeals)
Prejudice presumed when government obtains confidential defense strategy.

United States v. Mastroianni 749 F.2d 900 (1984, 1st Circuit Appeals) * Lead / Root Case in Intrusion into Client - Privilege
Defendant must show prejudice, the case follows Weatherford, Levy, Godwin, and offers an analysis of circuits.

United States v. Ginsberg 758 F.2d 823 (1985 2nd Circuit Appeals)
Draft: No evidence can be used directly or indirectly, no prejudice when taint team was employed

United States v. Luttrell 889 F.2d 806 (1989, 9th Circuit)
Government interference into a defendant's attorney-client relationship may also constitute outrageous government conduct an violate a criminal defendant's due process right.
Also Citing:
Hampton v. United States 425 U.S. 484, 489, 96 S. Ct. 1646, 48 L Ed. 2d 113 (1976) and Unites States v. Russell 411 U.S.

United States v. Schwimmer 924 F.2d 443 (1991, 2nd Circuit Appeals)

@[924 F.2d 444]
because no use or derivative used of privileged information was made by the government.
...
We directed the court to determine whether the government's case was in any respect derived from a violation of the attorney-client privilege and, if so determine what use was made of the derivative information and whether that use affected substantial right of the appellant. Schwimmer I, 892 F.2d at 243-45

@[924 F.2d 446]
The district court also found that the work papers had not been used by the prosecution either to prepare for cross-examination of witnesses or to gain an understanding of the strength and weaknesses of its case so that evidence could be presented in the light most favorable to the government.
...
The government must demonstrate that the evidence it uses to prosecute an individual was derived from legitimate independent sources. Kastigar v. Unites States, 406 U.S. 441, 461-62, 32 L. Ed. 2D 212, 92 S. St. 1653(1972).

United States v. Aulicino 44 F.3d 1102 (1995, 2nd Circuit Appeals)
Follows United States v. Ginsberg

Shillinger v. Haworth 70 F.3d 1132 (1995, 10th Circuit Appeals)
Prejudice is presumed only "when the state becomes privy to confidential communications because of it's purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so."

United States v. Viogt 89 F.3d 1050 (1996, 3rd Circuit Appeals)
Courts's use of an acquitted co-d's attorney as an informant did not constitute "outrageous government conduct" because he failed to prove than an attorney-client relationship existed.

United States v. Miller 116 F.3d 641 (1997, 2nd Circuit Appeals)
Follows Aulicino, and Ginsberg

United States v. Stringer 535 F.3d 929, 941 (9th Circuit) L. Ed. 2d 616 (2008)
Due process is violated where a defendant suffers actual and substantial prejudice as a result of the government's deliberate intrusion into a defendant's attorney-client relationship. Then citing United States v. Haynes 216 F.3d 789, 797 (2000, 9th Circuit)(Claim of outrageous government conduct premised upon deliberate intrusion into attorney-client relationship cognizable where defendant can point to actual an substantial prejudice) 531 U.S. 1078, 121 S. Ct. 778, 148 L. Ed. 2d 674(2001)

United States v. Danielson 325 F.3d 1054 (2003, 9th Circuit Appeal)* Intrusion in client privilege

@[325 F.3d 1067]
Any Statements so gathered must be excluded from the government case-in-chief, although "they are admissible to impeach conflicting testimony by the defendant, "provided the statements were voluntary. Michigan v. Harvey, 494 U.S. 344 (1990). See also, e.g., Ortega, 203 F.3d at 681. The problem in this case, however, is not that the government obtained incriminating statements or other specific evidence, but rather that it obtained information about Danielson's trial strategy.

The centerpiece of our analysis must be Weatherford v. Bursey....

The case is materially different from Weatherford v. Bursey. First, unlike in Weatherford, Save "purposefully intru[ded]" himself into the attorney-client relationship. In Weatherford, Bursey and his counsel initiated the meetings and invited Weatherford to attend, and Weatherford would have jeopardized his undercover status by not attending. Further, there was no evidence that Weatherford had initiated conversation on privileged topics. By contrast, Save initiated conversations with Danielson on privileged matters, and would have jeopardized nothing by not asking the questions that elicited the privileged information.

@[325 F.3d 1069]
Rather the problem in this case is that Sava obtained, and communicated to the prosecution team, privileged trial strategy information.

Most Sixth Amendment interference-with-counsel involve particular pieces of evidence obtained by the prosecution team as a result of the unconstitutional interference. The evidence is often an incriminating statement made to a government informant.....

In cases where wrongful intrusion results in the prosecution obtaining the defendant's trial strategy, the question of prejudice is more subtle. In such cases, it will often be unclear whether, and how, the prosecution improperly obtained information about the defendant's trial strategy may have been used, and whether there was prejudice. More important, in such cases the government and the defendant will have unequal access to knowledge. The prosecution team knows what it did. The defendant can only guess.
...
Case Quotes Briggs v. Goodwin
...

- Definition / Root Cases

Massiah v. us 12 LEd 2d 246, 377 US 201 (Sup)
us v. Anderson 523 F.2d 1192 (1975 5th cir appls)
us v. Henry 65 LEd 2d 115 (1980)

- Massiah Exception Cases

us v. Moschiano 695 F,2d 236 (7th Appls 1983)
Maine v. Moulton 565 f. supp 901 (1983 2nd cir)
Kulman v, Wilson 91 Led 2d 364 (1986)

- Expanding Massiah beyond Statements

us v. David 565 F. supp 901 (1983 2nd cir)

- Note Worthy

us v. Stevens 83 F.3d 60 (1996 2nd cir Appls) *Good Dictum "gov long warned against jail house informants"
us v. Pannel 510 f, supp. 2d 185 (2007 2nd cir)
us v. Jacques 684 f.3d 324 (2012 2nd appls)

- Birbal (Additional Exception / Justification for the Violation)  (Entrepreneurial Inmate)

- us v. Birbal 113 F.3d 342 (1997 2nd Appls)
- us v. York 933 f.2d 1343 (1990 7th Appls) (Definition of roving agent)

- - Anti Birbal (Already Cited in Birbal)

us v. Watson 894 F.2d 1345 (1990 DC Appls)
us v. Sampol 636 F.2d 621 (1980 DC Appls)
Federal Pants Inc v. stocking 762 F.2d 561 (1985 7th Appls)
American Broad Casting Companies v. Climate Control 524 F. Supp, 1014 (1981 ND 11)