UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
UNITED STATES OF AMERICA,

           - against -                                                  **MEMORANDUM AND ORDER**

                                                                            13 CR 220 (RJD)

BEBARS BASLAN,

                         Defendant.
----------------------------------------------------------- x

DEARIE, District Judge.

On July 24, 2014, defendant Bebars Baslan was convicted by a jury of four counts of sexual offenses against children: (1) travel with intent to commit aggravated sexual abuse of a minor less than twelve years of age; (2) conspiracy to sexually exploit a child; (3) attempted sexual exploitation of a child; and (4) attempted coercion and enticement of a minor to engage in illegal sexual activity. Jury Verdict, ECF No. 135. These charges stem from a plan to produce child pornography featuring the sexual abuse of two young children, which was thwarted by the Federal Bureau of Investigation, through the use of a confidential informant.

Additionally, immediately prior to his trial, Baslan plead guilty to a fifth count—possession of child pornography, in violation of Title 18 of the United States Code, Sections 2252(a)(4)(B), 2252(b)(2) and 3551, *et seq.* ECF No. 128. This charge stems from Baslan's possession, on his personal computers, of multiple zip drives filled with images and videos of child pornography.

Two victims of some of the child pornography that Baslan possessed, operating under the pseudonyms "Jenny" and "Angela," have written to this Court requesting restitution for the ongoing trauma inflicted by the production, distribution, and consumption of images of their

childhood sexual abuse. For the reasons that follow, the Court hereby orders defendant Baslan to pay restitution in the amount of $25,000.00 to Jenny and $16,000.00 to Angela.

## BACKGROUND

1. Jenny

   a. *Jenny's Story*

Jenny is one of the victims who received notice that her images were part of defendant Baslan's prosecution. Jenny Restitution Request, Letter, ECF No. 190-1. Her attorneys filed a letter requesting that the government keep them informed of all proceedings and use its best efforts to obtain full restitution for Jenny. Id.

Jenny was sexually abused over a six or seven year period by her biological father, who aggravated an already heinous crime by circulating images of the assaults over the internet. Id. at 3. To Jenny, the continuing downloading of these images victimizes her over and over again. Id. at 4. This has caused Jenny to develop agoraphobia, fearing that, should she leave her home, she might be recognized and attacked by her numerous, unknown, online abusers. Id.

   b. *Apportioned Costs of Jenny's Future Treatment, Legal Fees, and Out-of-Pocket Expenses*

As of August of 2014, Jenny's attorneys wrote that, "[n]o orders of restitution have been entered to date for Jenny as she has only recently obtained documentation of her losses." Id. at 2.[1] Additionally, her counsel observe that a relatively small number of child pornography restitution orders actually result in payment to the victims (less than 7%). Id.

---

[1] The Court believes that at least one restitution order has been entered for Jenny subsequent to the submission of her restitution request. See U.S. v. Campbell-Zorn, No. 14 CR 41 (BLG) (SPW), 2014 WL 7215214, at *7-9 (D. Mont. Dec. 17, 2014). That order was for $2,932.27, $203.84 in general restitution, and $1,500.00 in attorneys' fees. Id. at 10. The district court in that case reached the $2,932.27 amount by dividing the midpoint of Jenny's estimated losses by 97, the number of cases involving child pornography images of Jenny at the time of a National

2

Jenny's submission includes a psychological evaluation conducted by Dr. Randall Green, a clinical psychologist, in whose professional opinion Jenny requires "extensive and intensive therapy" for her trauma. Jenny Restitution Request, Exhibit 2, ECF No. 190-1 at 31. Estimating merely the total cost for (1) psychiatric evaluation and ongoing psychiatric care with a trauma-informed prescriber, (2) psychotherapy sessions with a trauma-informed therapist, and (3) conjoint therapy with Jenny's partner, Dr. Green predicts costs in the range of $265,710 to $303,150. Id. at 32-33. Based on legislation passed by the Senate and referred to the House, which would require a minimum restitution of $25,000 per defendant possessor of child pornography, Jenny's attorneys suggest that this amount would be an appropriate apportionment of Jenny's treatment costs for defendant Baslan.[2]

Jenny's attorneys do not provide their full legal fees but state that an "apportioned amount" of attorneys' fees for defendant Baslan's case would equal $1,500.00.[3] Jenny Restitution Request, Letter at 2. Additionally, they claim that Jenny has incurred out-of-pocket costs and expenses of $819.73 relative to restitution documentation. Id.

   c. *Total Restitution Requested*

Adding all of the above, Jenny's attorneys request an order of restitution against defendant Baslan in the amount of $27,319.73. Id.

---

Center for Missing and Exploited Children report in November of 2007. Jenny Restitution Request, Exhibit 2 at 19. This Court is sadly confident that many more cases have arisen since late 2007 and therefore finds no help in that number.

[2] $25,000 is roughly 1/11 and 1/12 of the low and high end of Jenny's future treatment costs, respectively.

[3] In her affidavit, Jenny's counsel swore that her hourly rate is $350.00, which assumes that she spent five hours on Jenny's case. Jenny Restitution Request, Exhibit 7 at ¶ 10. In light of the documentation provided, this number seems reasonable.

3

2. <u>Angela</u>

    a. *Angela's Story*

Angela is another of the victims who received notice that her images were part of defendant Baslan's prosecution. <u>Angela Restitution Request, Letter</u>, ECF No. 190-2. Her attorneys filed a letter with this Court requesting partial restitution for Angela and asking that the sentencing order expressly include Angela as a victim of defendant Baslan's crimes, to ensure her right to notification of his whereabouts. <u>Id.</u> at 1.

Angela was abused as a young child, and images of that abuse are still cruelly circulated on the internet. <u>Id.</u> at 2. Angela continues to suffer from psychological injuries including post-traumatic stress, major depressive disorder, and unspecified attention deficit disorder. <u>Angela Restitution Request, Psychological Evaluation Summary</u>, ECF No. 190-2 at 5.

    b. *Apportioned Costs of Angela's Future Treatment and Legal Fees*

Dr. Alexandria Doyle, a clinical psychiatrist, estimated that Angela's treatment needs over the next twenty years will cost her between $183,000 and $293,000. <u>Id.</u> at 6-7. Angela's attorneys note that Angela, still a young girl, will likely need much more than twenty years of therapy and will also likely incur many future costs due to her trauma (such as lost earnings, increased home security, changes to her personal appearance, etc.). They therefore suggest that the Court multiply Dr. Doyle's estimated range by two, to $366,000 to $587,000.[4] <u>Angela Restitution Request, Affidavit of Attorney Marc C. Lenahan</u>, ECF No. 190-2 at 4. From that range, Angela's attorneys suggest that the Court charge defendant Baslan with one-fiftieth of Angela's damages, for a range of total losses from $7,320 to $11,740.[5] <u>Id.</u> The one-fiftieth

---

[4] Double of $293,000 would be $586,000.
[5] If the Court instead took 1/50 of $586,000, it would equal $11,720.

4

number is derived from the attorneys' "current best estimate of how many of the perpetrators who are Ordered to pay Restitution for Angela will make noteworthy progress in doing so." Id.

Angela's attorneys detail their legal fees for this matter at $4,780.20. Id. at pages 2-4.

  c. *Total Restitution Requested*

Combining these two items, Angela's attorneys request an order of restitution against defendant Baslan in the amount of $11,980.20 to $16,400.20. Id. at page 5. As stated earlier, they also ask that the sentencing order expressly include Angela as a victim of Baslan's crimes.

The defendant has not responded to the victims' submissions.

## THE RIGHT TO RESTITUTION

Three factors guide the Court in determining the proper amount to require from child pornography defendants: (1) the current mandatory restitution statute for child pornography, 18 U.S.C. § 2259; (2) the recent Supreme Court case *Paroline v. United States*, 134 S.Ct. 1710 (2014); and (3) a proposed mandatory restitution statute for child pornography, the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 (the "Amy and Vicky CPVRIA"), which seeks to rectify the perceived harshness of *Paroline* toward child pornography victims, and which passed the Senate in early February, S. 295, 114th Cong. (as passed by Senate, Feb. 11, 2015), and was referred to the House, 161 Cong. Rec. D140-01 (Feb. 12, 2015).

  1. 18 U.S.C. § 2259

Under 18 U.S.C. § 2259(b)(1), the Court is required to direct defendants in child pornography cases, including crimes of possession, "to pay the victim . . . the full amount of the victim's losses as determined by the court." See also United States v. DiLeo, -- F. Supp. 3d --, 2014 WL 5841083, at *2 (E.D.N.Y. 2014) (noting that section 2259 "obligates the sentencing

5

court to order restitution on behalf of an identified victim," and directs the defendant to pay the full amount of the victim's losses).

The statute defines the "full amount of the victim's losses" to include "any costs incurred by the victim for—

    (A) medical services relating to physical, psychiatric, or psychological care;
    (B) physical and occupational therapy or rehabilitation;
    (C) necessary transportation, temporary housing, and child care expenses;
    (D) lost income;
    (E) attorneys' fees, as well as other costs incurred; and
    (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

Although the statute signals the great breadth of the remedy, it "do[es] not obviate a showing of causality." DiLeo, 2014 WL 5841083, at *2. Therefore, the *Paroline* court was forced to "consider[] the extent to which § 2259 requires a causal link between a defendant's criminal conduct and the victim's actual losses." Id.

2. Paroline v. United States

The *Paroline* court addressed the threshold question of whether the restitution made by a defendant who had plead guilty merely to possession of child pornography would be limited to the losses to the victim that were proximately caused by this possession. 134 S.Ct. 1710, 1719 ("The threshold question the Court faces is whether § 2259 limits restitution to those losses proximately caused by the defendant's offense conduct."). The Supreme Court concluded that:

> [i]n this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, *a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role* in the causal process that underlies the victim's general losses.

Id. at 1727 (emphasis added).

6

Recognizing that "[t]here remains the question of how district courts should go about determining the proper amount of restitution," the *Paroline* court noted that, "[a]t a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," and that such an assessment "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." Id. at 1727-1728. To assist the district court in this assessment, the *Paroline* court then provided the following factors "as rough guideposts for determining an amount that fits the offense":

> [1] the number of past criminal defendants found to have contributed to the victim's general losses; [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images of the victim; [6] how many images of the victim the defendant possessed; and [finally] any other facts relevant to the defendant's relative causal role.

Id. at 1728.

The Supreme Court cautioned that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." Id. However, they also cautioned that "holding each possessor of [child pornography] images liable for the conduct of thousands of other independently acting possessors and distributors, with no legal or practical avenue for seeking contribution" (i.e., for the full amount of the victim's losses) would be an approach "so severe it might raise questions under the Excessive Fines Clause of the Eighth Amendment." Id. at 1725-1726.

District courts have proven quite frustrated by the restitution assessment instructions laid out in *Paroline*. See, e.g., DiLeo, 2014 WL 5841083, at *5 (comparing the *Paroline* restitution

7

assessment to "piloting a small craft to safe harbor in a Nor'easter," and noting that "it is a struggle to conceive of a system that will not exceed loss and perhaps trigger creation of a judicial clearinghouse, where the courts become unseemly paymasters smoothing out restitution contributions among pornographers"); Campbell-Zorn, 2014 WL 7215214, at *3 ("These tools provided by *Paroline*, while seemingly useful in a theoretical sense, have proven to have very difficult, and very limited, practical application.").

In particular, Judge Vitaliano bemoaned in DiLeo that the assessment becomes especially complicated where application of the factors to a particular defendant does not yield meaningful results. 2014 WL 5841083, at *8 ("[H]ere, there is, plainly, a failure of proof as to almost all of [the *Paroline*] factors, except that it is obvious that the number of offenders (subsequently caught or not) who should share in the restitution burden will increase (decreasing the proportional share) and that continuing therapy for [the victim] might exceed forecasts and cause the loss amount to increase (increasing the proportional shares)."); see also United States v. Crisostomi, 31 F. Supp. 3d 361, 364 (D.R.I. 2014) (explaining that "while some of the *Paroline* factors are determinable with some precision, a number of other factors are virtually unknown and unknowable, regardless of the detail available in the record").

However, a general pattern has emerged of district courts adopting "a simple division sort of an approach to computing restitution," whereby the victim's total losses are divided by the known or estimated number of offenders. DiLeo, 2014 WL 5841083, at *9; see also Campbell-Zorn, 2014 WL 7215214, at *6 (awarding $23,825 in general restitution to the very same Angela as in this case, which amount was reached by dividing the midrange of Angela's estimate by the 20 previous cases involving Angela at that time); United States v. Daniel, No. 07 CR 142, 2014

8

WL 5314834, at *2 (N.D. Tex. Oct. 17, 2014) (dividing victim's total losses by the number of evidence reviews submitted by law enforcement for the victim's images).

3. The Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015

Shortly after *Paroline*, Congress responded with concerns that the Supreme Court's decision "put[] the burden on victims forever to chase defendants only to recover next to nothing." 160 Cong. Rec. S2797-01 (2014) (statement of Sen. Orrin Hatch).

The Senate passed the Amy and Vicky CPVRIA, named after two prominent victims of child pornography, in February of 2015, S. 295, 114th Cong. (as passed by Senate, Feb. 11, 2015), and the bill is currently pending before the House, 161 Cong. Rec. D140-01 (Feb. 12, 2015). This bill would amend section 2259 of Title 18 to provide that where a victim of child pornography is harmed by more than one defendant, the court shall order restitution for either "(A) the full amount of the victim's losses; or (B) an amount that is not more than [the full amount of the victim's losses] and not less than . . . (iii) $25,000 for any" offense of possession of child pornography. S. 295, 114th Cong., § 3(3) (as passed by Senate, Feb. 11, 2015).

## DISCUSSION

In consideration of 18 U.S.C. § 2259(b), the *Paroline* factors, the relevant pleadings, applicable law, and the stipulations and arguments of the victims' attorneys, this Court makes the following findings:

1. In connection with his guilty plea to possession of child pornography, defendant Baslan possessed the images of Jenny and Angela.

2. There is no evidence that defendant Baslan had any connection to the initial production of the images of the abuse of Jenny or Angela, or that he later reproduced or distributed those images.

9

3. Jenny has approximately $284,430[6] in losses caused by the continued trafficking of those images, as well as $1,500 in apportioned legal fees and out-of-pocket costs and expenses of $819.73. Angela has approximately $476,500[7] in losses caused by the continued trafficking of those images, as well as $4,780.20 in legal fees.

4. "[I]t is impossible to trace a particular amount" of Jenny and Angela's losses to defendant Baslan "by recourse to a more traditional causal inquiry." Paroline, 134 S.Ct. at 1727.

5. Neither Jenny nor Angela's attorneys have provided a number of past criminal defendants ordered to pay restitution for these victim's losses, nor is it possible to reasonably predict the number of future offenders. Any number used as a dividing factor, such as the fraction of one-fiftieth proposed by Angela's attorneys, would be arbitrary.[8] Furthermore, even if some of the offenders were or will in the future be prosecuted and ordered to provide the victims with restitution, this Court gravely doubts that many, indeed most, of those orders will result in meaningful payments, if any, to the victims.

6. Given all of the above, and given that the requests of both victims are at or around the bare minimum restitution which may be required if the Amy and Vicky CPVRIA is

---

[6] This number was reached by taking the midpoint of the range $265,710 to $303,150.

[7] This number was reached by taking the midpoint of the range $366,000 to $587,000.

[8] Additionally, it is this Court's view that requiring courts to conduct straight division of a victim's estimated losses by an ever increasing and speculative number of defendants is an overly strict interpretation of *Paroline*, resulting in the application of the very "rigid formula" proscribed in that case. 134 S.Ct. at 1728.

passed, the Court finds that restitution to Jenny in the amount $25,000.00[9] and restitution to Angela in the amount of $16,000.00[10] is reasonable.

7. Restitution in the amount of $25,000.00 to Jenny and $16,000.00 to Angela is neither "severe" nor a "token or nominal amount" and comports to defendant Baslan's "relative role in the causal process that underlies" Jenny and Angela's general losses. See id.

## CONCLUSION

For the foregoing reasons, the Court, pursuant to 18 U.S.C. § 2259, orders that defendant Baslan pay restitution to Jenny in the amount of $25,000.00 and to Angela in the amount of $16,000.00.

The Clerk of Court shall enter that award in the Criminal Judgment entered in this case.

SO ORDERED.

Dated: Brooklyn, New York  
March 17, 2015

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE  
United States District Judge

---

[9] The $25,000.00 restitution to Jenny consists of $22,680.27 in apportioned future treatment costs (equaling roughly 1/13 of Jenny's estimated losses), $819.73 in out of pocket expenses, and $1,500.00 in attorneys' fees.

[10] The $16,000.00 restitution to Angela consists of $11,219.80 in apportioned future treatment costs (equaling roughly 1/42 of Angela's estimated losses) and $4,780.20 in attorneys' fees.