ORIGINAL

AO 243 (Rev. 01/15)                                                                                                    Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Eastern District of New York |
|---|---|
| Name (under which you were convicted): Bebars Baslan | Docket or Case No.: 13 CR 220 |
| Place of Confinement: USP-TUSCON | Prisoner No.: 80637-053 |
| UNITED STATES OF AMERICA V. | Movant (include name under which convicted) Bebars Baslan |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:
    US District Court for the Eastern District of New York

    (b) Criminal docket or case number (if you know): 13 CR 220 (RJD)

2.  (a) Date of the judgment of conviction (if you know): March 11, 2015

    (b) Date of sentencing: February 27, 2015

3.  Length of sentence: 36 Years

4.  Nature of crime (all counts):
    18 USC §2241(c) Crossing state line with intent to molest child under 12
    18 USC §2251(a) Conspiracy to sexually exploit children
    18 USC §2251(a) Attempting to sexually exploit children
    18 USC §2242(b) attempting to coerce & entice minors to engage in illegal sexual activity
    18 USC §2252(b)(2) Possession of child pornography

5.  (a) What was your plea? (Check one)
    (1) Not guilty [X]        (2) Guilty [X]        (3) Nolo contendere (no contest) [ ]

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?
    Not Guilty: 18 USC §2241(c); 18 USC §2251(a); 18 USC §2251(a); 18 USC §2242(b)
    Guilty: 2251(b)(2)

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury [X]    Judge only [ ]

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes [X]    No [ ]

8.  Did you appeal from the judgment of conviction?    Yes [X]    No [ ]

ORIGINAL

AO 243 (Rev. 01/15)                                                                                        Page 3

9.  If you did appeal, answer the following:

    (a)  Name of court:  Second Circuit Court of Appeals

    (b)  Docket or case number (if you know):  15-512

    (c)  Result:  Summary dismissed for government

    (d)  Date of result (if you know):

    (e)  Citation to the case (if you know):  None

    (f)  Grounds raised:




    (g)  Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☒

        If "Yes," answer the following:

        (1)  Docket or case number (if you know):

        (2)  Result:


        (3)  Date of result (if you know):

        (4)  Citation to the case (if you know):

        (5)  Grounds raised:




10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐    No ☒

11.  If your answer to Question 10 was "Yes," give the following information:

    (a)  (1)  Name of court:

        (2)  Docket or case number (if you know):

        (3)  Date of filing (if you know):

    (4)  Nature of the proceeding:

    (5)  Grounds raised:

AO 243 (Rev. 01/15)

 

 

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

  (1) Name of court: _____

  (2) Docket of case number (if you know): _____

  (3) Date of filing (if you know): _____

  (4) Nature of the proceeding: _____

  (5) Grounds raised:

 

 

 

 

 

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

  (1) First petition:    Yes ☐    No ☐

  (2) Second petition:  Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

 

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

AO 243 (Rev. 01/15)                                                                                                    Page 5

**GROUND ONE:**  Counsel was ineffective for failing to move to dismiss Count One of
the Indictment

      (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    See Addendum A

    (b)  **Direct Appeal of Ground One:**

      (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☒ .

      (2)  If you did not raise this issue in your direct appeal, explain why:

      This is an Ineffective assistance claim best raised on a §2255 Motion

(c)  **Post-Conviction Proceedings:**

      (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☒

      (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

      (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐      No ☐

      (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐      No ☐

      (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐      No ☐

AO 243 (Rev. 01/15)                                                                                      Page 6

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

_____

**GROUND TWO:** Counsel was ineffective for admitting to false evidence with regard to the objection to the inclusion of guideline calculation for Count 2B & Count 3B based on John Doe (a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See Addendum B

(b) **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes [   ]    No [X]

(2)   If you did not raise this issue in your direct appeal, explain why:

This is an Ineffective assistance claim best raised on a §2255 Motion

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes [   ]    No [X]

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes [ ]     No [ ]

(4) Did you appeal from the denial of your motion, petition, or application?

Yes [ ]     No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [ ]     No [ ]

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:



**GROUND THREE:** _____ Counsel was ineffective for failing to object to the restitution being based on the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 10±5 and not presenting to the court that Baslan may have not viewed

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

images of Jenny & Angela

See Addendum C

(b)  **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2)  If you did not raise this issue in your direct appeal, explain why:

    This is an Ineffective Assistance claim best raised on a §2255 Motion

(c)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   Counsel was ineffective for failing to present entrapment defense.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See Addendum D

(b) **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

This is an Ineffective assistance claim best raised on a §2255 Motion

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☒

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 243 (Rev. 01/15)                                                                            Page 10

(3)  Did you receive a hearing on your motion, petition, or application?

Yes [ ]        No [ ]

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes [ ]        No [ ]

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [ ]        No [ ]

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

13.  Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

```
All grounds are based on Ineffective Assistance of counsel and can not be raised
on Appeal
```

14.  Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?        Yes [ ]        No [X]

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 243 (Rev. 01/15)                                                                                      Page 11

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a)  At the preliminary hearing:

Ephraim Savitt 165 West End Ave. Apt. 8D New York, NY 10023

(b)  At the arraignment and plea:

_____

(c)  At the trial:

_____

(d)  At sentencing:

_____

(e)  On appeal:

_____

(f)  In any post-conviction proceeding:

_____

(g)  On appeal from any ruling against you in a post-conviction proceeding:

_____


16.   Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?        Yes [X]        No [ ]

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes [ ]        No [X]

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b)  Give the date the other sentence was imposed: _____

(c)  Give the length of the other sentence: _____

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes [ ]        No [ ]


18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is filed before September, 2019 per government consent (see Exhibit 4)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)

Therefore, movant asks that the Court grant the following relief:

Vacate the Conviction, Re-Sentence, or Conclude an Evidentiary Hearing, or Issue a Certificate of Appealability.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on ___8/7/2019___

(month, date, year)

Executed (signed) on ___8/7/2019_____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

1

ADDENDUM A

GROUND ONE:

Counsel was ineffective for failing to move to dismiss Count One of the Indictment.

SUPPORTING FACTS:

1.)  On April 17, 2013 Bebars Baslan and his co-defendant Kristen Henry was federally indicted in the Eastern District of New York. (Doc-12)

2.)  Count One of the indictment charged that on or about March 19, 2013, within the Eastern District of New York, the district of New Jersey and elsewhere, Baslan and Kristen Henry crossed a state line with intent to engage in a sexual act with a minor less than twelve years of age in violation of 18 USC §2241(c).

3.)  During pretrial meetings between Baslan and Attorney Ephraim Savitt, Savitt told Baslan that the government requested he plead to the highest count and they would dismiss the lessor counts. (Aff. ¶1, Doc-166 pg 1-2).

4.)  Baslan requested that Savitt move to dismiss Count One of the indictment as the Eastern District of New York was the wrong venue and he would then plead to the highest count for dismissal of the lessor counts. (Aff. ¶2).

5.)  Baslan told Savitt that he would be willing to plead guilty to all counts if Count one was dismissed for lack of venue. (Aff. ¶3).

6.)  Savitt documented that Baslan was willing to take a plea disposition to a charge that carried less than a 30-year

mandatory minimum sentence. (Doc-166, pg 1).

7.)  Savitt told Baslan that he would look in to the argument but never moved to dismiss Count One. (Aff. ¶4).

8.)  In July of 2014 Baslan went to trial and was found guilty on Count One of the indictment, inter alia.

9.)  The PSR gave Baslan an offense level of 40 points (PSR ¶79) for the conviction of Count One, with a total offense level of 46 points (PSR ¶115).

10.)  In February, 2015 this Court sentenced Baslan to serve 36 years imprisonment for Count One.

11.)  On March 18, 2015 Baslan's co-defendant Kristen Henry's Attorney Ying Stafford moved to dismiss Count One against her "on the ground that the government will not be able to prove venue in the Eastern District of New York". (Exhibit-1).

12.)  On March 19, 2015 the government submitted a letter in response to Henry's motion, seeking dismissal of Count One of the Indictment. (Exhibit-2).

13.)  In the March 19, 2015 letter the government consented to Henry's request and asked the Court enter an order dismissing Count One. (Id.).

14.)  On August 15, 2015 Attorney Stafford provided a declaration which declared that during his representation of Ms. Henry she attended several co-defendant meetings and during those meetings several legal arguments were discussed regarding pre-trial motions including a motion to dismiss due to lack of venue. (Exhibit-3).

15.)  Counsel Savitt's performance fell below an objective standard of reasonableness when he failed to move for the dismissal of Count One of Baslan's Indictment. His performance was substandard because this count alleged that Baslan had crossed state lines with the intent to engage in a sexual act with a minor. The indictment, Count One avers that the crime was committed in the District of New Jersey and the Eastern District of New York. The crime in Count One was not committed until the crossing of the state line to New Jersey. Therefore the proper venue was in New Jersey. Additionally after Baslan's co-defendant raised this same argument in a motion to dismiss the government conceded and dismissed Count Ones as to her. Thus had Savitt moved to dismiss Count One as to Baslan there is a more than reasonable probability that the government would have conceded to the dismissal.

16.)  There is a reasonable probability that the outcome of the proceedings would have been different because Baslan would have plead guilty once Count One was dismissed. Once Count One was dismissed and Baslan plead to all other counts his recommended sentencing guideline range would have been different.

With plea of guilty Baslan would not have received the enhancement for obstruction of justice. (See PSR ¶¶ 78, 86, 93, 100, 110). This would have lowered the Adjusted Offense Levels (PSR ¶¶ 79, 87, 94, 101, 111) for each group by two points. The Greater of the Adjusted Offense levels then becomes 40 instead of 42 (PSR ¶ 113). Adding the Increase in Offense level of 4 points (PSR ¶ 114) creates a Combined Adjusted Offense Level of 44 (PSR ¶ 115). But because Baslan

4

would have plead guilty he would have received a 3 point reduction for Acceptance of Responsibility. This makes his Combined Adjusted Offense Level 41 with a guideline range of 324-405 months.

The Judge sentenced Baslan to 410 months or 36 years. However with the reduced Combined Adjusted Offense Level of 41 this sentence is above the high end at the guideline range. Therefore there is a reasonable probability that the outcome of the proceeding would have been different, that is Baslan would have spent less time in prison.

ADDENDUM B

GROUND TWO:

Counsel was ineffective for admitting to false evidence with regard to the objection to the inclusion of guideline calculations for Count 2B and Count 3B based on John Doe 2.

SUPPORTING FACTS:

1.) In Baslan's indictment there was multiple victims alleged in Counts Two, Three, and Four.

2.) Counts Two, Three, and Four identify the victims as Jane Doe 1, John Doe 1, and John Doe 2.

3.) In the PSR the Probation Officer created a separate group for John Doe 2 based on Counts 2B and 3B which had an adjusted offense level of 40. (PSR ¶¶95-101).

4.) The Defendants often used the names of John Doe 1 and John Doe 2 interchangeably and the government stated as such throughout the case.

5.) Throughout the case it has been consistent that Ms. Henry, Baslan's co-defendant, was to produce one photograph of her posing next to one John Doe without any physical contact but implying a sexual pose (simulating oral sex) not two separate John Does.

6.) The facts of the case show that this was a one security picture and all other interactions focused on Jane Doe.

7.) Savitt objected to the inclusion of John Doe 2 as a separate count of conviction (PSR ¶80) configured as a separate group in the PSR.

8.) In this objection Savitt argues that "no factual findings

6

were made by the jury as to whether the attempt involved - Jack's 18-month-old-son, two victims - either son, or three victims - all 3 children. Savitt then admits that the "recorded conversations offers snippets of evidence that can fit any one of these 3 possibilities. (Doc-163, pg 11).

9.)  The evidence does not support all of the three possibilities.

10.)  The government response to the objection supports that John Doe 2 was not part of Counts 2 and 3 and should not have had a group calculated in the PSR.

11.)  In the Government's response to the objections they state "during these recorded telephone calls and meetings, the defendant describes a detailed plan to have Henry take sexually explicit photographs with Jack's eighteen month-old child. Eventually, the defendant asked jack to instead provide his own two or three-month-old son for Henry to sexually abuse while the defendant took pictures. (Doc-175, pg 2).

12.)  By the government's own admission the photographs were to be taken not of the 18 month old but "instead" the 2 or 3 month old.

13.)  Also in response to the objection the government offered part of the conversation which supports that it was one or the other John Does to be photographed not both. The conversation was :

Baslan:  Like I said, just park your car, we'll go, I'll bring him inside and just take two pictures and send her, send him out, and then you're good to go.

Jack:    Ellie or Daniel?

Baslan:  Daniel I mean, Daniel.

Jack:          The two-month-old.                                                    7

Baslan:        Yeah, the younger one, I keep mixing up, the, the younger

one.

Jack:          Daniel is the two month old, Ellie is the sixteen month.

Baslan:        For the picture, for the picture it doesn't make a

difference, with the younger one.

Jack:          It doesn't matter if he's a year and a half or two months,

that's what you're saying?

Baslan:        Yeah, yeah exactly.

(March 18, 2013 recording.) (see Doc-175, pg 11).

14.) The PSR should have contained one group for a John Doe for Counts 2 and

3, John Doe 1 or John Doe 2 not Both.

15.) Counsel Savitt's performance fell below an objective standard of

reasonableness when he admitted false evidence with regard to the objection

to the guideline calculations for Count 2B and Count 3B. His performance was

substandard because the facts of the case only supports one John Doe victim

but the PSR held Baslan responsible for two. Even thought Savitt objected

to the inclusion of John Doe two he admitted that recorded conversations

other snippets of evidence that can justify, that the offense involved

Jack's 18-month-old-son, two victims--either sons, or three victims-- =all

3 children. However the full conversations and the record clearly reflected

that the offense was to involve Jack's 18-month-old-son but later changed

to involve both sons. Thus had Savitt properly argued is objection and not

admitted falsely that the evidence supports the involvement of both sons

there is a reasonable probability that the Court would have sustained the

objection and removed the guideline calculations for Counts 2B and 3B (John

Doe 2).

16.) There is a reasonable probability that the outcome of the proceedings

would have been different because the Court Considered relevant conduct in

determining the appropriate sentence. It is prejudicial to have the Court          8

consider to involve 3 victims when it only involved two. While the Combined

Adjusted Offense Level is not directly affected Baslan was still prejudiced

by the inclusion of John Doe 2 when he was not a victim, therefor there is

a reasonable probability that outcome of the proceeding would have been

different , that is Baslan would have spent less time in prison if John Doe

was determined to not be a victim.

ADDENDUM C

GROUND THREE:

Counsel was ineffective for failing to object to the restitution being based on the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 and Not presenting to the Court that Baslan may have not view imaged of Jenny and Angela.

SUPPORTING FACT:

1.) The Court based its starting point for Jenny's restitution at $25,000 because her attorneys suggest that this amount would be an appropriate apportionment of Jenny's treatment costs for defendant Baslan. (Doc-201, pg 3).

2.) Jenny's images were involved in 97 different cases according to a National Center for Missing and Exploited Children report in November of 2007. (Doc-201, pg 2, n. 1).

3.) The Court, finding that it was confident that many more than 97 cases involved the Jenny images, since 2007, appropriated 1/13 of Jenny's estimated losses to Baslan. (Doc-201, pg 2 & 3, n. 1 & 2, pg 11, n. 10).

4.) The Court based its starting point for Angela's restitution at $11,980.20, 1/50 of $586,000 because her attorneys suggest that the current best estimate of how many perpetrators who are ordered to pay restitution will make noteworthy progress in doing so was 50 individuals, then found that 1/42 of Angela's estimated losses should be attributed to Baslan. (Doc-201, pg 4, n. 5, pg 5, 11, n. 11).

5.) The Court considered three factors to guide its

determination on the proper amount of restitution: (a) the current mandatory restitution statute, 18 USC §2259, (b) the recent Supreme Court case Paroline v. United States, and (3) a proposed mandatory restitution statute, the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 which never passed the House and has never become law. (Doc-201, pg 5).

6.) §2259(b)(1)(F) requires defendant to pay the full amount of the victim's losses which were suffered "as a proximate result of the offense." (Doc-201, pg 6).

7.) Savitt knew that the harm caused to these victims may not have been the proximate result of Baslan because he may not have viewed any images or videos involving the two girl that received restitution.

8.) Savitt, during objections to the PSR stated that Baslan accepted responsibility for the massive child pornography "zipped" files which he did not "unzip" and open more than a portion of the files, which he only did at the behest of Jack's and the urging of FBI agents (one of the major themes in the recorded phone calls leading to the video-recorded viewing, was Jack's persistent requests for Baslan to download and give him child pornography).

9.) The government did not present any evidence that Baslan actually viewed any of the Jenny or Angela images.

10.) The Court ordered Baslan to pay Jenny $25,000 and Angela $16,000.

11.) Savitt never lodged any objections to the order for restitution.

12.) Counsel Savitt's performance fell below an objective standard of reasonableness when he failed to object to Baslan's restitution being based on the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 and failing to present that Baslan may have not viewed images of Jenny and Angela. Savitt presented during objections that Baslan's child pornography was contained "Zipped" files which he did not "unzip" and open more than a portion of the files. Savitt never held the government to its burden to prove by a preponderance that Baslan had actually viewed images of Amy and/or Angela, simply stating that Amy and Angela's images were contained in the "zipped" files does not satisfy harm caused by the proximate result of Baslan. Additionally if Baslan did view images of Amy and/or Angela it was oat the behest of the FBI's Confidential Informant, Jack and only at the FBI's urging Jack to have Baslan download Child Pornography for him, Finally Savitt did not object to the Restitution being based on an Act that was not law. The Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 was based at least in part on an erronious consideration of an Act that was not Law. Had Savitt argued that Baslan never viewed images of Amy and/or Angela and that the Act was not law there is a reasonable probability that the court would not have assigned restitution in this case.

13.) There is a reasonable probability that the outcome of the proceeding would have been different becuase if the court did not order restitution Baslan would not have a $41,000 bill he is responsible for, or a request to defer the payment post release. Currently he is making payments through the inamte Financial Responsibility Program and this will affect his ability to pay for College programs he wishes to take. Without Restitution or a lower amount of Restitution Baslan would be able to participate in better himself ( and be able to help others) through avaliable outside sources.

11

ADDENDUM D

GROUND FOUR:

Counsel was ineffective for failing to present an entrapment defense.

SUPPORTING FACTS:

1.) Baslan was charged in a five count indictment, charging four violations relating to traveling with intent to commit sexual abuse, attempted coercion and enticement of a minor to engage in illegal sexual activity and attempted productions of child pornography relating to the travel and attempted coercion, and fifth violation of possessing of child pornography.

2.) Baslan plead guilty to the possession charge.

3.) Baslan proceeded to trial on the remaining four counts.

4.) Prior to trial on several occasions Baslan asserted to Savitt that he wished to present an entrapment defense to the four counts that he proceeded to trial on.

5.) Savitt told Baslan that he needed to investigate other viable defenses before they could discuss entrapment because once they talked about entrapment it harder to go back to other defenses.

6.) Baslan told Savitt that the scope of the crime had always been the same (the crime was to involve children that were in the same neighborhood as Baslan) it was the Jack (the CI) that suggested, at the behest of the FBI, at the last minute to take the children to a hotel outside the state.

7.) Baslan insisted to Savitt that he was entrapped by Jack

to travel across state lines.

8.)  Baslan told Savitt that Jack either provided cocaine, or pushed to buy cocaine jointly (one of the times was during the night of the video recording).

9.)  Often Jack stopped at Baslan's house without recording the conversations for the government.

10.)  Baslan told Savitt that he did increasingly struggle with an unhealthy sexual life style, whether it was obsessively watching porn, or deviant and risk-taking sexual behavior, and increasing drug use (at the time of the arrest it was daily).

11.)  Baslan told Savitt that Jack, prior to becoming a CI for the government was at Baslan's and Henry's house when the subject of deviant sexual fantasies was brought up. Jack told them that he had sexual interactions with his niece , an unknown boy, and a sexual interaction between Jack and an ex-girlfriend, Rachel, while she performed oral sex on one of his baby sons.

12.)  Baslan told Savitt that between the first two phone calls Jack suggested that Baslan and Henry could engage in sexual acts with his niece, but he required them to take a security photo first.

13.)  Savitt know that Jack was the one who took the first steps that led to the criminal act Baslan took.

14.)  Since Jack had taken the first steps that led to Baslan's criminal act Savitt could have presented an entrapment defense and the burden would have shifted to the government to prove that Baslan was ready and willing to commit the crime before Jack's involvement.

15.) Counsel Savitt's performance fell below an objective standard of reasonablness when he failed to present an entrapment defense. Baslan told Savitt that the crime was always to involve children that were the in the same neighborhood as Baslan thus this would not have been a federal crime. But as Savitt knew Jack the FBI's Confidential Informant suggested at the behest of the FBI, at the last minute to take the children to a hotel outside the state. Additionally Savitt knew that it was Jack that introduced the idea that Baslan could engage in sexual acts with his niece, but required the security photo to be taken first. It was Jack the FBI's CI that took the first steps that led to the criminal act Baslan took. Thus it was FBI through their CI that created a federal crime, crossing state lines and taking the security photo of John Doe. Therefore there was a viable entrapment defense. Savitt instead presented the defense that Baslan was attempting to create a documentary, the so called Journalism defense (sentencing transcript pg.12, ln.9) which was categorized by the court as "cacamaine". Versus the more viable entrapment defense. Had Savitt presented the entrapment defense there is a reasonable probability that the outcome of the proceedings would have been different.

16.) There is a reasonable probability that the outcome of the trial would have been different because the evidence supported that the FBI CI, Jack entraped Baslan into committing a federal crime. Because there the evidence better supported this defense versus the Journalism defense there is a reasonable probability that the outcome of the proceedings would have been different. Therefore it is more than likely that had Savitt presented an entrapment defense the jury would have found Baslan not guilty.

ADDENDUM E

I Bebars Baslan swear that the following is true and correct and to the best of my knowledge:

1.) Savitt told me that the government requested he plead to the highest count and they would dismiss the lesser counts.

2.) I requested that Savitt move to dismiss Count One of the indictment.

3.) I told Savitt that I would plead to the rest of the lesser counts.

4.) Savitt told me that he would look into the argument but never moved to dismiss Count One.

5.) Before trial on multiple occasions I asserted to Savitt that I wish to present an entrapment defense, Savitt told me that he needed to investigate viable defenses other than entrapment defense first, because once we talked about Entrapment defense it would be harder to go back.

6.) I told Savitt that the scope of the crime had always been the same (the crime was to involve children in the same neighborhood as myself) it was Jack the CI that suggested, at the behest of the FBI, at the last minute to take the children to a hotel in NJ.

7.) I insisted to Savitt that I was entrapped by Jack to travel across state lines.

8.) I told Savitt that Jack either provided cocaine, or push to buy cocaine jointly.

9.) Jack often stopped at our apartment without recording the conversations for the government.

10.) I told Savitt that I increasingly struggled with an unhealthy sexual life-style, obsessively watching porn and deviant and risk-taking sexual behavior and increased drug use (at the time of the arrest it was daily.)

11.) I told Savitt that before Jack became a CI for the government, came to

16

my and Henry's apartment and when the subject of the deviant sexual
fantasies was brought up, Jack told us that he had sexual interactions with
his niece, an unknown boy, and a sexual interaction between Jack and an
ex-girlfriend, Rachel, while she performed oral sex on one of his baby boys.
12.) I told Savitt that between the first two phone calls Jack suggested
that myself and Henry could engage in sexual acts with his niece, but he
required us to take a security photo first.


Bebars Baslan

Date: 8/5/2019

# EXHIBIT 1

## YING STAFFORD
Attorney at Law
276 FIFTH AVENUE
SUITE 501
NEW YORK, NEW YORK 10001
Phone: (212) 689-3858
Facsimile: (212) 689-0669

March 18, 2015

BY ECF & EMAIL

The Honorable Raymond J. Dearie
District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Kristen Henry
13 Cr. 220 (RJD)

Dear Judge Dearie:

I write to respectfully to supplement the defendant Kristen Henry's motion to dismiss.

Ms. Henry hereby moves to dismiss Count One on the ground that the government will not be able to prove venue in the Eastern District of New York.

Count One of the indictment — the charge that carries a mandatory minimum of 30 years. 18 U.S.C. 2241(c), states that the offense is committed by one who

"crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years . . . ,"

In a case dealing with venue under 2241(c) the Ninth Circuit sustained venue as a "continuing offense", but only on the basis that the conduct asserted to create venue in the District of Oregon had been committed after the defendant had crossed state lines with the requisite intent. United States v. Lukashov, 694 F.3d 1107 (9th Cir. 2012) (venue proper in Oregon only because defendant crossed state lines prior to the conduct asserted as grounds for venue of Oregon).

It is, of course, the government's burden to establish proper venue by a preponderance of the evidence. See United States v. Chi Tong Kuok, 671 F.3d 931, 937 (9th Cir. 2012). However, "[t]he sufficiency of the evidence to justify a finding on venue . . . is a question of law for the court." United States v. Lukashov, 694 F.3d 1107, 1120 (9th Cir. 2012), United States v. McVicker, 979 F. Supp. 2d 1154, 1177, 2013 U.S. Dist. LEXIS 152189, 38, 2013 WL 5743650 (D. Or. 2013).

There is precedent to dismiss a case prior to trial when the government will be unable to prove an essential element. See United States v. Mennuti, 487 F.Supp. 559 (E.D.N.Y.1980), aff'd, 639 F.2d 107 (2d Cir. 1981) (court dismissed the indictment for lack of jurisdiction holding that the government would not be able to prove that the destroyed property was in commerce).

The Court should adopt this procedure and dismiss count one prior to trial.

Based on the criminal complaint and the discovery to date, none of the alleged conduct occurred after the crossing of state lines (as in Lukashov).

The crime in count One was not committed until the crossing of the state line to New Jersey. Indeed, in the Indictment, Count One avers that the crime was committed in the District of New Jersey *and* the Eastern district of New York.

However, all alleged conduct in the Eastern District of New York occurred before any offense of section 2241(c) had even begun. This court should therefore dismiss count one pursuant to *Mennuti.*

Respectfully submitted,

_/S/_____
Ying Stafford
*Attorney for Kristen Henry*

3

# EXHIBIT 2



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SLT:TJS/TAD
F.#2013R00381

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 19, 2015

<u>By Hand and ECF</u>

The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>United States v. Kristen Henry, 13-CR-220 (RJD)</u>

Dear Judge Dearie:

The government submits this letter in response to the defendant's motion, dated March 18, 2015 (Docket No. 204), seeking dismissal of Count One of the Indictment, which charges the defendant with traveling to engage in sexual conduct with a minor less than twelve years of age in violation of 18 U.S.C. § 2241(c). The government consents to the defendant's request and asks that the Court enter an order dismissing Count One of the above-captioned indictment without prejudice, with leave for the government to re-file an Indictment on that charge in another district if it chooses.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:    ___/s/_____
Tyler J. Smith
Tiana Demas
Assistant U.S. Attorneys
(718) 254-6186/6116

cc:   Ying Stafford, Esq. (by ECF)

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                                DECLARATION
                                                  13 CR (RJD)

KRISTEN HENRY,

          Defendant.
-----------------------------------------------------x

       I, Ying Stafford, declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that

foregoing is true and correct:

1. I am an attorney admitted to practice in New York. I represent Kristen Henry in the above captioned case.

2. During my representation of Ms. Henry I attended several co-defendant meetings.

3. During those co-defendant meetings several legal arguments were discussed regarding pre-trial motions including a motion to dismiss due to lack of venue.


Dated: Brooklyn, New York
       August 15, 2015

                                      Respectfully submitted,

                                      _____
                                      Ying Stafford
                                      *Attorney for Kristen Henry*