

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WK:ADW
F. #2019V02366

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 20, 2019

<u>By ECF</u>

Honorable Raymond J. Dearie
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:  United States v. Bebars Baslan
         <u>Criminal Docket No. 13-CR-220 (RJD)</u>

Dear Judge Dearie:

    The government respectfully submits this memorandum in opposition to
defendant Bebars Baslan's <u>pro</u> <u>se</u> motion under 28 U.S.C. § 2255.  ECF Dkt. No. 265 ("2255
Motion").  The defendant was convicted, following a jury trial, of four criminal counts
arising from his scheme to sexually exploit minor children and to record his planned acts of
exploitation.[1]  By his motion, the defendant challenges his judgment of conviction and
certain aspects of his sentence.  For the reasons set forth below, the motion should be denied
in its entirety.

    A. <u>Factual Background</u>

    The defendant's convictions arose from a scheme by the defendant and his
girlfriend, Kristen Henry, to sexually abuse children.  (Pre-Sentence Investigation Report
("PSR") ¶ 4).  The defendant's scheme was uncovered through numerous recorded telephone
and in-person conversations made by a confidential informant (the "CI") for the Federal
Bureau of Investigation ("FBI").  (PSR ¶ 5).  Between February 13, 2013 and the defendant's
arrest on March 19, 2013, the CI made over 40 recorded telephone calls to the defendant and
recorded in-person meetings on four days.  (PSR ¶¶ 5-10).  During those recorded calls and
meetings, the defendant described a detailed plan to have Henry take sexually explicit
photographs with the CI's eighteen-month-old child ("John Doe 1").  (PSR ¶ 4).  Eventually,

---

    [1] Prior to the commencement of trial, the defendant pled guilty to a separate count of
the indictment, charging him with possession of child pornography.

the defendant asked the CI to instead provide the CI's two- or three-month-old son ("John Doe 2") for Henry to sexually abuse while the defendant took pictures. (PSR ¶ 9). The defendant also indicated that Henry was interested in sexually abusing the CI's seven-year-old niece ("Jane Doe 1"). (PSR ¶¶ 9-10). The defendant indicated that they could drug Jane Doe 1 with Dramamine so she would not be aware that she was being sexually abused. (PSR ¶ 5). After several calls, the defendant and the CI also agreed that the CI would bring John Doe 1, John Doe 2 and Jane Doe 1 to a meeting with the defendant and Henry at a New Jersey hotel in early March, so that the defendant and Henry could take pictures of them being sexually abused. (PSR ¶ 6). The defendant said that he intended to "go down" on Jane Doe 1, which is slang for performing oral sex. (PSR ¶ 9). The defendant also told the CI that sexually abusing the CI's niece was more of a "stepping stone" and that the defendant would "take a lot of pictures and videos." (PSR ¶ 10). He also said: "We'll have a good amount of pictures and videos of [Jane Doe 1] herself and then we can just use it as jerk-off material or whatever." Id.

On March 19, 2013, the defendant attempted to bring his plan to fruition. (PSR ¶ 11). That afternoon, the CI drove to the defendant's residence in Brooklyn. (PSR ¶ 12). The defendant then gave the CI a bottle of children's Benadryl, which Henry had purchased earlier that day at a nearby Walgreens pharmacy. The defendant also gave the CI a bottle of orange juice to mix the liquid Benadryl into to disguise the flavor. Id. The defendant instructed the CI to give Jane Doe 1 more than the recommended dose of Benadryl. Later that evening, the CI called the defendant and provided him an agreed-upon code word that indicated the CI had the children in his care and they were heading to the hotel, located in Jersey City, New Jersey. (PSR ¶ 13). The defendant and Henry arrived at the hotel approximately 90 minutes later and went to the room number provided by the CI. FBI agents then arrested the defendant and Henry. (PSR ¶¶ 11-13). When arrested, the defendant and Henry possessed two digital cameras, a computer and extra camera accessories suitable for downloading photographs from a digital camera to a computer. (PSR ¶ 13).

Following his arrest, the defendant was advised of his Miranda rights, which he agreed to waive. (PSR ¶ 14). The defendant then told the agents that he, the CI and Henry were going to have a "swing" party and use the children as "props," but the defendant got cold feet. Id. He also admitted to telling the CI that he intended to start a babysitting service as a cover to drug and abuse children. The defendant admitted to downloading child pornography on his home computer. (PSR ¶¶ 15-17). He signed a written statement indicating that he had suggested using Benadryl to drug the children and planned on "going down" on the CI's minor niece, Jane Doe 1. (PSR ¶ 19).

About the same time as the defendant and Henry's arrest, FBI agents executed a search of their shared residence pursuant to a warrant. (PSR ¶ 25). Agents found numerous pieces of computer equipment, including a fully encrypted external hard drive. Id. Agents were able to decrypt the hard drive and found over 76,000 files containing images and videos of child pornography. (PSR ¶¶ 27-28).

Separately, the FBI interviewed two young women from Buffalo, New York who reported that when they were teenagers, the defendant had raped them repeatedly and almost always recorded the incidents on camera. (PSR ¶¶ 41-57). The families of the victims had hired the defendant to take photographs of the victims in the hopes of advancing their modeling careers, thus giving the defendant access to the victims. One victim testified at trial that when she and a friend were both about 14 or 15 years-old, the defendant directed them to touch each other in a sexual manner while he took photos during a photo shoot. The same victim also stated that she had seen the defendant have sex with her underage friend. (PSR ¶ 43). The victim also testified that on more than one occasion, the defendant plied her with drugs and alcohol and then raped her. (PSR ¶¶ 44-45).

B. Procedural History

On April 17, 2013, a grand jury sitting in in this District returned an indictment charging the defendant and Kristen Henry with traveling with intent to commit aggravated sexual abuse of a minor under the age of 12, in violation of 18 U.S.C. § 2241(c) (Count One); conspiring to sexually exploit a child, in violation of 18 U.S.C. § 2251(e) (Count Two); attempting to sexually exploit a child, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Three); and attempting to coerce or entice a child to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b) (Count Four). Separately, the defendant was charged with possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count Five).

On July 15, 2014, the defendant pled guilty to Count Five of the indictment. On July 24, 2014, following a jury trial, the defendant was convicted on Counts One through Four of the indictment. On or about March 11, 2015, the Court sentenced the defendant to 36 years of imprisonment. See ECF Dkt. No. 192. This sentence reflected the following separate terms of imprisonment on the counts of conviction, with all terms to run concurrently: Count One (36 years); Count Two (30 years); Count Three (30 years); Count Four (36 years); and Count Five (20 years). The judgment also ordered the defendant to pay $41,000 in restitution to two victim-claimants ("Jenny" and "Angela," respectively) in connection with the defendant's child pornography conviction. On March 17, 2015, the Court issued a written memorandum explaining its reasoning for the $41,000 restitution order. ECF Dkt. No. 201 ("Restitution Memo").

On March 11, 2015, the defendant appealed from the Court's judgment. See ECF Dkt. No. 187. On March 28, 2017, the U.S. Court of Appeals for the Second Circuit affirmed the Court's judgment, and the Second Circuit issued its mandate on May 8, 2017. Due to a failure by the defendant's counsel to timely notify him of the Second Circuit's ruling, the government agreed to waive any argument that a motion by defendant pursuant to 28 U.S.C. § 2255 would be barred for failure to timely file, as long as the defendant filed any such motion by September 18, 2019. See Appellee's Opposition to Motion, United States v. Baslan, No. 15-512 (2d Cir. Dec.17, 2018)

On August 12, 2019, the defendant filed his 2255 Motion. In it, the defendant raises four ineffective assistance of counsel claims, all relating to the representation provided

by his trial counsel, Ephraim Savitt.[2]  First, the defendant argues that his trial counsel was ineffective because he did not move to dismiss Count One of the indictment.  Second, the defendant argues that his trial counsel was ineffective because he "admitted" to "false evidence" in the course of objecting to certain aspects of the PSR prepared by the U.S. Probation Department.  Third, the defendant argues that his trial counsel was ineffective because he did not object to restitution being based on the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 and for not presenting to the Court evidence that the defendant "may not have viewed images" of the two victim-claimants.  Finally, the defendant argues that his trial counsel was ineffective for failing to present an entrapment defense.  For the reasons discussed in detail below, none of these arguments has merit.

C.  Legal Standard

To "prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice."  United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The two-prong Strickland standard is "highly demanding."  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," Kimmelman, 577 U.S. at 381, "bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way," United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotation marks and brackets omitted).  A defendant is not entitled to a "modern-day Clarence Darrow"; mere competence will suffice.  United States v. Alessi, 638 F.2d 466, 477 (2d Cir. 1980).  In addition, because there "are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, the lack of success of a chosen strategy should not cause a court to second-guess an attorney's judgments, Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986).

To show prejudice, a defendant must show a reasonable probability that, but for counsel's defective performance, the result of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  Indeed, the "ultimate focus of inquiry" is whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process."  Id. at 670, 696.  An attorney's "failure to make a meritless argument does not

---

[2] On November 18, 2019, Mr. Savitt provided the government with an affirmation in response to the defendant's claims.  The affirmation is attached hereto as Exhibit A.

amount to ineffective assistance." United States v. Noble, 363 F. App'x 771, 773 (2d Cir. 2010) (internal quotation marks omitted).

In deciding an ineffective assistance of counsel claim, the court need not address both prongs of the Strickland inquiry if the defendant makes an insufficient showing on either one. See Strickland, 466 U.S. at 697; Swerbilov v. United States, No. 04-CV-3320, 2005 WL 1177938, at *3 (E.D.N.Y. May 18, 2005). In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

D. Discussion

1. A Motion to Dismiss Count One of the Indictment Would Have Been Meritless

The defendant claims that he "requested that Savitt move to dismiss Count One of the indictment as the Eastern District of New York was the wrong venue and he would then plead to the highest count for dismissal of the lessor counts." 2255 Motion, Addendum A at ¶ 4. The defendant faults his trial counsel's decision not to move to dismiss Count One on venue grounds. He argues that the crime in Count One "was not committed until the crossing of the state line to New Jersey," such that "the proper venue was in New Jersey." Id. at ¶ 15. To support his argument, the defendant points to the fact that in March 2015, his co-defendant's lawyer moved to dismiss Count One against her on venue grounds, the government responded by consenting to dismissal, and the Court then entered an order dismissing the charge. Id. at ¶¶ 11-13.

The defendant's argument is wrong on the law because venue existed in the Eastern District of New York. To decide whether venue is proper in a district, a court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). With respect to the location of the commission of a criminal act, the controlling statute is 18 U.S.C. § 3237(a), which permits "any offense . . . begun in one district and completed in another . . . [to] be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." The Second Circuit has held that venue "may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location." United States v. Thompson, 896 F.3d 155, 171 (2d Cir. 2018) (citations omitted).

Count One charged the defendant with traveling with intent to commit aggravated sexual abuse of a minor under the age of 12, in violation of 18 U.S.C. § 2241(c). That statute states, in relevant part, as follows: "Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, . . . or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life." 18 U.S.C. § 2241(c). The elements of this offense are (1) crossing a state line, (2) with intent

5

to engage in a sexual act with a person under the age of 12 and (3) attempting to engage in a sexual act with a person under the age of 12. Therefore, venue existed in the Eastern District of New York under Section 3237(a) as long as the defendant performed at least some act constituting an element of the offense in this District prior to the completion of the offense, and the nature of the crime implicated this District.

Here, the defendant's commission of the crime charged in Count One plainly began in the Eastern District of New York. The voluminous recordings of the defendant speaking with the CI to discuss his plan to sexually abuse John Doe 1, John Doe 2 and Jane Doe 1 proved his intent to engage in a sexual act with a person under the age of 12. And on March 19, 2013, at his home in Brooklyn, and prior to traveling to New Jersey, the defendant gave Benadryl to the CI – a substantial step in his plan to drug and sexually abuse Jane Doe 1. Therefore, at a minimum, the defendant performed an act in the Eastern District of New York and before the offense was completed. The fact that the offense was not completed until the defendant crossed state lines has no bearing on whether venue was proper in the Eastern District of New York.

The defendant's reliance on the proceedings involving his co-defendant is misplaced. Kristen Henry submitted a short letter to the Court on March 18, 2015, requesting dismissal of Count One on venue grounds. See 2255 Motion, Exh. 1. But the only argument raised by Henry was that the crime "was not committed until the crossing of the state line to New Jersey" and "all alleged conduct in the Eastern District of New York occurred before any offense of section 2241(c) had even begun." Id. This argument was both irrelevant and incorrect. First, as stated earlier, even though the offense was not completed until the defendant and Henry crossed a state line, venue is proper in any district where "acts constituting the crime and the nature of the crime charged implicate" that district. Thompson, 896 F.3d at 171. Second, the conduct in the Eastern District of New York did not occur "before any offense of section 2241(c) had even begun." Rather, that conduct was where the offense began in the first place, even if not where the offense terminated. That is all that is required for venue to be proper under Section 3237(a).

Nor did the government or the Court accept Henry's venue argument. Instead, the government's motion to dismiss Count One against Henry reflected its view that Henry was significantly less culpable than defendant. On March 19, 2015, the government responded by filing a one-paragraph letter "seeking dismissal of Count One." 2255 Motion, Exh. 2. The Court granted the government's application on the same day. See ECF Dkt. No. 208. Also on the same day, Henry pled guilty to Count Four of the indictment pursuant to a plea agreement. See ECF Dkt. No. 209. Counts Two and Three against Henry were later dismissed on the motion of the government. See ECF Dkt. No. 230. In sum, the government's motion to dismiss Count One does not support defendant's venue argument, but instead merely reflects the government's view that Henry was less culpable. See also Exh. A at ¶ 3 ("As [Ephraim Savitt] was advised, the government always considered Ms. Henry to have been manipulated by Mr. Baslan into joining his scheme, and ultimately agreed to consent to the dismissal of the 30-year count against her as part of her plea

6

disposition because the prosecutor agreed that her culpability was far less than Mr. Baslan's. The government's consent was not premised on any legal flaw in that charge.").

Because a motion to dismiss Count One against the defendant would have been meritless, the decision by the defendant's trial counsel not to make such a motion "does not amount to ineffective assistance." Noble, 363 F. App'x at 773 (2d Cir. 2010).

    2.  The Defendant Mischaracterizes Trial Counsel's Objection to the Victim Grouping Analysis in the PSR

Next, the defendant claims that his trial counsel was ineffective in the course of his objections to the PSR. The PSR employed the instructions in United States Sentencing Guidelines ("U.S.S.G.") Chapter Three, Part D, which explains how to "group" multiple counts of conviction, calculate an Adjusted Offense Level for each group, and then ultimately arrive at a Total Adjusted Offense Level. The PSR calculated five distinct groups. For the sake of clarity, the following table represents how the PSR calculated the various groups:

| Counts # | Adjusted Offense Level | Units |
|----------|------------------------|-------|
| 1 & 4 | 40 | 1.0 |
| 2 & 3 | 42 | 1.0 |
| 2A & 3A | 40 | 1.0 |
| 2B & 3B | 40 | 1.0 |
| 5 | 38 | 1.0 |

The PSR grouped Counts Two and Three (with Jane Doe as the main victim) together for purposes of calculating his Offense Level under the U.S.S.G.[3] This group was assigned an Adjusted Offense Level of 42. In addition to calculating Counts Two and Three as a group, the PSR also created separate groups for John Doe 1 (Counts 2A and 3A) and John Doe 2 (Counts 2B and 3B) as victims, pursuant to U.S.S.G. § 2G2.1(d)(1).[4] Each of those separate sub-groups was calculated as having an Adjusted Offense Level of 40. PSR ¶¶ 81-101.

Each of the five groups was equal to one "Unit" under U.S.S.G. § 3D1.4. Because the highest Adjusted Offense Level was 42 (for the Count Two and Count Three

---

[3] U.S.S.G. § 3D1.2(b) states that "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . . When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."

[4] U.S.S.G. § 2G2.1(d)(1) states that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction."

group), four levels were added for the four other Units.  Thus, the defendant's Total Adjusted Offense Level in the PSR was 46.[5]  Id. ¶¶ 112-18.

The defendant argues that based on the trial evidence, the photographs that he planned to take of Kristen Henry sexually exploiting a child would only have involved one victim – i.e., John Doe 1 or John Doe 2, but not both.  2255 Motion, Addendum B at ¶¶ 10-14.  Thus, in the defendant's view, the PSR should not have contained two additional groups for the two John Doe victims, but only one.

The defendant concedes that his trial counsel "objected to the inclusion of John Doe 2 as a separate count of conviction . . . configured as a separate group in the PSR" as to Counts Two and Three.  Id. at ¶ 7.  He also admits that his trial counsel argued that "no factual findings were made by the jury as to whether the attempt involved one victim . . . two victims . . . or three victims."  Id. at ¶ 8.  Nevertheless, the defendant takes issue with a single phrase in trial counsel's objections, namely that "[t]he recorded conversations offer snippets of evidence that can fit any one of these 3 possibilities."  ECF Dkt. No. 163 at 11.  This, the defendant argues, signifies that his trial counsel "admitted [to] false evidence with regard to the objection to the guideline calculations for Count 2B and Count 3B."  2255 Motion, Addendum B at ¶ 15.

This argument wholly mischaracterizes trial counsel's objections.  Trial counsel argued "strenuously against a finding that the sentencing formula [for Counts Two and Three] should be based on more than one victim, and [his] 'snippets' comment was in response to the government's argument that the record supported the existence of 2 child victims."  Exh. A at ¶ 6.  The only reasonable reading of trial counsel's objections is that this statement "was not a concession at all, but an [argument] that the record was insufficient to support the government's" theory that Counts Two and Three involved multiple victims.  Id.; see also ECF Dkt. No. 163 at 11 (arguing that to support a multiple victims analysis under the U.S.S.G., "there should be [some] showing that the evidence accepted by the jury was that Baslan committed an attempt against multiple victims," but that "no factual findings were made by the jury as to whether the attempt involved" one or more than one victim).

In any event, even assuming arguendo that the defendant's trial counsel "admitted" to "false evidence" regarding the number of John Doe victims involved in Counts Two and Three, there is no reasonable probability that the outcome of the proceedings would

_____

[5] U.S.S.G. § 3D1.4 instructs that where there are multiple counts of conviction, the "combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated" in a table under that section.  The table says that if there are 3.5 to 5 Units in total, the offense level for the most serious group is increased by four levels.  The PSR assigned 5.0 total Units to defendant's counts of conviction.  PSR ¶ 112.  Thus, in defendant's case, the Adjusted Offense Level of 42 was to be increased by four levels, resulting in a Combined Adjusted Offense Level of 46.

8

have been different.  Even without an additional group for John Doe 2 (Counts 2B and 3B), the greatest Adjusted Offense Level would have remained 42 (for Counts Two and Three), and there would have been 4.0 Units in total.  In that scenario, the defendant's Total Adjusted Offense Level would still have been 46.  See U.S.S.G. § 3D1.4 (highest offense level to be increased by four levels if there are between 3.5 and 5 Units in total).  Accordingly, even if a separate group for Counts 2B and 3B was included in error, the defendant suffered no prejudice.  Indeed, the defendant concedes this point.  See 2255 Motion, Addendum B at ¶ 16 (admitting that the "Combined Adjusted Offense Level [was] not directly affected" by the inclusion of three victims instead of two for Counts Two and Three).[6]

### 3.   The Defendant Mischaracterizes the Basis for the Court's Restitution Order

The defendant's third ineffective assistance claim relates to the Court's order of restitution to "Jenny" and "Angela," who were awarded $25,000 and $16,000 in restitution, respectively.  The defendant argues that his trial counsel was ineffective for failing to object to restitution being based on the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015 (the "CPVRIA") and for not presenting to the Court the argument that he "may have not view[ed] image[s] of Jenny and Angela."  2255 Motion, Addendum C.  The defendant states that had his trial counsel objected on such grounds, "there is a reasonable probability that the court would not have assigned restitution in this case."  Id. at ¶ 12.  Neither argument has merit.

In its restitution order, the Court cited several factors in its analysis, including the Supreme Court case Paroline v. United States, 134 S. Ct. 1710 (2014).  See Restitution Memo at 5.  The Court explained that the Paroline decision grappled with the factors courts should consider in assessing whether a defendant's criminal conduct proximately caused a victim's actual losses under the mandatory restitution statute for child pornography, 18 U.S.C. § 2259.  The Court's restitution analysis, guided by Paroline, shows that the defendant's argument as to proximate cause is baseless.  The defendant complains that the "government did not present any evidence that [the defendant] actually viewed any of the Jenny or Angela images" and that his trial counsel "never held the government to its burden to prove by a preponderance that [the defendant] had actually viewed" such images."  2255 Motion, Addendum C at ¶¶ 9, 12.  But this misses the point.  It is not necessary to show that a particular defendant actually viewed images to establish that his conduct (mere possession) proximately caused a victim's injuries.  The Paroline court specifically defined proximate cause in the child pornography context as showing "both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in

---

[6] The defendant argues that even though the Combined Adjusted Offense Level was not affected, it was nevertheless "prejudicial to have the Court consider . . . 3 victims when [Counts Two and Three] only involved two."  2255 Motion, Addendum B at ¶ 16.  This is pure speculation and does not show a reasonable probability of a different outcome in sentencing.

those images." 134 S. Ct. at 1727 (emphases added). Here, the Court concluded that the defendant "possessed the images of Jenny and Angela" and that both victims had large losses "caused by the continued trafficking in those images." Restitution Memo at 9-10. In other words, both prongs of the proximate cause requirement were met. Trial counsel recognized this. See Exh. A at ¶ 8 ("[T]he unassailable fact is that, as he had no choice in admitting in his guilty plea, a huge zip-drive of child porn was found in the files of his personal computer, including photos of the victim[s] to whom he was ordered to pay restitution. That possession is sufficient legal basis for the restitution order he contends that I should have opposed."). Thus, the argument defendant raises is meritless, and his trial counsel's decision not to object on those grounds was not ineffective assistance.

       With respect to the defendant's argument that his trial counsel should have objected to the Court's restitution order being based on the CPVRIA, that argument relies on a false premise. The defendant complains that the restitution order was "based on an Act that was not law." 2255 Motion, Addendum C at ¶ 12. But the Court did not suggest the CPVRIA was legally binding. Instead, the Court first considered the factors under 18 U.S.C. § 2259, which makes restitution mandatory, as well as the factors under Paroline, which helped to guide the calculation of the awards. See Restitution Memo at 9-10. The Court merely referenced the pending CPVRIA as a way to confirm the reasonableness of the restitution awards. See id. at 10-11 ("Given all of the above, and given that the requests of both victims are at or around the bare minimum restitution which may be required if the [CPVRIA] is passed, the Court finds that restitution to Jenny in the amount of $25,000.00 and restitution to Angela in the amount of $16,000.00 is reasonable.") (emphases added). There is no reasonable probability that the Court would have awarded different restitution amounts had trial counsel objected to reference to the CPVRIA, much less that the Court would have declined to award restitution whatsoever.

       4.  An Entrapment Defense Would Have Been Meritless

       Finally, the defendant argues that his trial counsel was ineffective for failing to present an entrapment defense. A valid entrapment defense has two elements. If a defendant can show by a preponderance of the evidence that the government induced him to commit the crime, then the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime – i.e., "ready and willing without persuasion and . . . awaiting any propitious opportunity to commit the offence." United States v. Brand, 467 F.3d 179, 189 (2d Cir. 2006). For the reasons explained below, any entrapment defense presented by the defendant would have been meritless.

       Predisposition to commit a crime may be shown by evidence of, among other things, "an existing course of criminal conduct similar to the crime for which the defendant is charged" and "a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." Brand, 467 F.3d at 191 (citation omitted). The possession of child pornography is evidence of predisposition to commit sexual offenses against children. See id. at 200-01. In addition, a defendant's "prompt response" to inducements offered by a government agent is strong evidence of predisposition. For

10

example, in <u>Brand</u>, the Second Circuit found that even if an oblique reference to "sex stuff" made by an undercover agent posing as a minor were considered inducement, the defendant's "unhesitating response" and "jump[ing] at the opportunity" to discuss the sexual activity they could engage in could support a jury finding of predisposition beyond a reasonable doubt. <u>Id.</u> at 195.

The defendant admits that he intended to sexually abuse children. 2255 Motion, Addendum D at ¶ 6 ("Baslan told Savitt that the scope of the crime had always been the same (the crime was to involve children that were in the same neighborhood as Baslan)[.]"). However, the defendant asserts that the FBI confidential informant both (1) entrapped the defendant into crossing state lines by "suggest[ing] at the behest of the FBI" that the defendant sexually abuse the children at the hotel in New Jersey, and (2) introduced the idea that the defendant "could engage in sexual acts with [Jane Doe 1], but required the [photos of Kristen Henry sexually abusing a minor child] to be taken first." <u>Id.</u> at ¶ 15. The defendant contends that he informed his trial counsel of these facts and urged him to present an entrapment defense, but was rebuffed in favor of a trial defense theory that the defendant "was attempting to create a documentary." <u>Id.</u> An entrapment defense, the defendant argues, may have resulted in a not guilty verdict. <u>Id.</u> at ¶ 16.

The defendant's trial counsel cannot be faulted for declining to present an entrapment defense. The defendant appears to argue that his trial counsel should have argued entrapment as to both the substantive charges of sexual exploitation and the narrow jurisdictional issue of crossing state lines. On the latter, the defendant is essentially raising a "manufactured jurisdiction" argument. <u>See, e.g.</u>, <u>United States v. Wallace</u>, 85 F.3d 1063, 1065-66 (2d Cir. 1996). In <u>Wallace</u>, the Second Circuit explained that the "manufactured jurisdiction" idea

> is properly understood not as an independent defense, but as a subset of three possible defense theories: (i) the defendant was entrapped into committing a federal crime, since he was not predisposed to commit the crime in the way necessary for the crime to qualify as a federal offense; (ii) the defendant's due process rights were violated because the government's actions in inducing the defendant to commit the federal crime were outrageous; or (iii) an element of the federal statute has not been proved, so federal courts have no jurisdiction over the crime.

85 F.3d at 1065-66 (internal citations omitted).

Neither entrapment argument holds any sway because the government easily could have proven predisposition beyond a reasonable doubt. The defendant himself admits that he wanted to sexually abuse children and merely quibbles about <u>where</u> he wanted to do so. <u>See</u> 2255 Motion, Addendum D at ¶ 6 ("the crime was to involve children that were in the same neighborhood as Baslan"). And at the time of trial, the defendant's own recorded statements, the large volume of child pornography found on his devices and the testimony of

a victim stating that he had raped her when she was a teenager would have been enough to defeat any entrapment defense. See Brand, 467 F.3d at 191 (an existing course of conduct similar to the charged crime is evidence of predisposition), 200-01 (possession of child pornography is evidence of predisposition to commit sexual offenses against children). Finally, while the defendant says that the confidential informant introduced the idea of sexually abusing the children and "required" the taking of photographs involving Henry first, the defendant's unhesitating and enthusiastic agreement with such plans, as shown in the recordings, would have established the defendant's predisposition at trial. See id. at 195 ("prompt response" to government inducement is strong evidence of predisposition).

On the jurisdictional issue, whether seen as entrapment or failure to prove an element of a federal statute, see Wallace, 85 F.3d at 1065-66, the defendant's argument again fails. Here, the Court need only look to its own earlier decision on a motion brought by the defendant's co-conspirator, Kristen Henry, regarding a jurisdictional defense. See United States v. Henry, No. 13 CR 220 (RJD), 2015 WL 1258173 (E.D.N.Y. Mar. 18, 2015). Henry filed a motion to dismiss Count One of the indictment and raised a similar jurisdictional argument there as defendant raises here. See id. at *2 ("Defendant Henry contends that the FBI manufactured jurisdiction when their CI suggested the New Jersey hotel meeting and that . . . count one of the indictment must therefore be dismissed."). The Court rejected this argument:

> In so arguing, Henry asserts that any and all purported meetings had been planned to take place at her and defendant Baslan's Brooklyn apartment, and it was only at the direction of the FBI that interstate travel came into play. Such a version of events, however, takes great care to gloss over the fact, as alleged, that Henry and defendant Baslan, of their own volition, chose to get in their vehicle, on the evening of March 19, 2013, and drive to Jersey City, New Jersey, allegedly for the sole purpose of undertaking their planned sexual abuse of the victims. Certainly, this "voluntary, affirmative act of the defendant," is more than sufficient to find that "federal jurisdiction has not been improperly 'manufactured' . . .

Id. at *3 (quoting Wallace, 85 F.3d at 1066).

While Henry had argued that her travel to New Jersey at the direction of the FBI was insufficient to establish jurisdiction, the Court's reasoning above applies with equal force to a traditional entrapment defense. The defendant does not argue that his decision to get into a car and drive to New Jersey after the confidential informant asked him to do so was anything other than voluntary and affirmative. Indeed, the defendant and Henry arrived at the New Jersey hotel just 90 minutes after the confidential informant called using a pre-planned code word signaling the children were at the hotel, demonstrating the defendant's "prompt response." In other words, whether framed as failure to prove an element of a federal statute or entrapment, neither offense would have been successful at trial.

The defendant's trial counsel saw the flaws in any proposed entrapment defense clearly.  See Exh. A at ¶ 9 ("And as to the crime itself, entrapment couldn't have worked because, in his many rambling recorded conversations, his predisposition came across multiple times and in multiple ways.").  Even if such a defense had any chance of working, the reasonableness of trial counsel's performance "is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman, 577 U.S. at 381.  Because there "are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, the lack of success of a chosen strategy should not cause a court to second-guess an attorney's judgments, Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986).

E.  Conclusion

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:      /s/ Andrew Wang
Andrew Wang
Assistant U.S. Attorney
(718) 254-6311

cc:     Bebars Baslan, pro se petitioner (by U.S. mail)

13

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK__x**

**UNITED STATES OF AMERICA,**                              **ATTORNEY AFFIRMATION**

                                                          **Docket No. 1:13-cr-00220-RJD**

          -against-

**BEBARS BASLAN,    Defendant-Petitioner**
_____**x**

STATE OF NEW YORK)  ss.:
COUNTY OF NEW YORK)

    **Ephraim Savitt**, an attorney admitted to practice in this Court, affirms, to the best of his

knowledge, recollection and belief, and under the penalty of perjury, as follows:

1. I was the trial counsel for Defendant Bebars Baslan. I am addressing the 4

   accusations that Mr. Baslan made against me in his habeas petition to support his

   claim of ineffective assistance.  None of his accusations have merit and instead rely

   on a revisionist description of the record and false factual assertions of matters

   outside the record. In opening the door to rebuttal of his untrue claims, Mr. Baslan

   has waived his attorney-client privilege as to the subject matter of his claims.

2. Mr. Baslan asserts in his 1st claim that I was ineffective in failing to move for

   dismissal of count one, the transportation charge carrying a statutory 30-year

   mandatory minimum sentence (18 USC § 2241(c)), on the grounds that the venue for

   trial on that charge was restricted to the District of New Jersey, the situs of the

   objective of his offense, and not in the EDNY, where the offense originated. His

   novel interpretation of the applicable law is a completely at odds with the case law

1

precedents that make plain that venue for that offense would be proper in the either district of either terminal.

3. His reliance on the government's consent, long after his trial, for dismissal of the same count for his co-defendant Kristen Henry has no merit. As I was advised, the government always considered Ms. Henry to have been manipulated by Mr. Baslan into joining his scheme, and ultimately agreed to consent to the dismissal of the 30-year count against her as part of her plea disposition because the prosecutor agreed that her culpability was far less than Mr. Baslan's. The government's consent was not premised on any legal flaw in that charge.

4. In fact, Mr. Baslan so much as concedes in his petition that the government rejected my repeated offers that he was prepared to accept a plea deal on the condition that the government agreed to the dismissal of the top count. And as he is aware, the government flatly refused to agree to dismissal of the 30-year count.

5. The 2nd claim that Mr. Baslan makes is that I was ineffective in challenging the Guidelines sentencing upward adjustment for his having victimized 2 children when his plan only called for one child victim. The fundamental problem with his reasoning is that, in the course of his verbose conversations with the CI, he explicitly described his desire that both children be in the "photo shoot," and flip-flopped as to the role that each would be subjected to in the sexuality-explicit photos that he planned to take of Ms. Henry posing in sexually explicit ways with both children.

6. His claim that I conceded during the sentencing proceedings that "snippets" of the trial record supported any one of 3 theories as to who and how many child victims were the object of Mr. Baslan's scheme is taken completely out of context. As he

2

acknowledges in his petition, I argued strenuously against a finding that the sentencing formula should be based on more than one victim, and my "snippets" comment was in response to the government's argument that the record supported the existence of 2 child victims. It was not a concession at all, but an observation that the record was insufficient to support the government's argument in that regard. Concededly, my arguments failed to carry the day, but it certainly was not for my lack of trying.

7. His 3rd claim is that I should have objected to the restitution formula pertaining to the possession count to which he had entered a guilty plea prior to trial. He argues that I had failed to challenge the restitution formula because there was no proof that he had actually seen the photos of the victim for whom restitution was ordered.

8. Putting aside the reality that he will never pay a penny of the $25,000 restitution that he was ordered to make, the unassailable fact is that, as he had no choice in admitting in his guilty plea, a huge zip-drive of child porn was found in the files of his personal computer, including photos of the victim to whom he was ordered to pay restitution. That possession is sufficient legal basis for the restitution order he contends that I should have opposed.

9. His 4th and final claim is that I failed to raise an entrapment defense to the transportation charge because he had planned to commit his offenses in Brooklyn without crossing state lines. Putting aside the absurdity of such a contention because he would have had to take the stand and admit to his deviant and unlawful plans – which he plainly did not want to do – the entrapment defense would not have applied to the transportation across state lines, which is the jurisdictional element, but only to

3

his intent to commit the crime itself. And as to the crime itself, entrapment couldn't have worked because, in his many rambling recorded conversations, his predisposition came across multiple times and in multiple ways.

10. Finally, in his criticism of my trial strategy to rely on the "photo shoot" defense, he gives me far too much credit for origination. He was the one who came up with that approach, not I, but frankly, it was the only one of his many proposals that had any trial appeal.


Dated: New York, New York
       November 18, 2019


                                        Respectfully submitted,

                                        *Ephraim Savitt, Esq.*
                                        Ephraim Savitt, Esq.

4