UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

BEBARS BASLAN,

                Petitioner

                vs.

                                  Case No.      19-CV-4713 (RJD)
                                                    13-Cr-220 (RJD)

UNITED STATES OF AMERICA

                Defendant.
_____

**MEMORANDUM OF LAW IN SUPPORT OF BEBAR BASLAN'S PETITION
PURSUANT TO 28 U.S.C. § 2255**

FLORIAN MIEDEL, ESQ.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004
Tel: (212) 616-3042

*Attorney for Bebars Baslan*

**Introduction**

On August 12, 2019, Bebars Baslan, who is serving a 36 year sentence following his conviction after trial in this Court, filed a Petition pursuant to 28 U.S.C. § 2255. The government responded on December 20, 2019, and Mr. Baslan submitted a reply on April 27, 2020. On September 23, 2020, the Court granted undersigned counsel's application to file a supplemental brief in support of Mr. Baslan's § 2255 Petition. In his Petition, Mr. Baslan raised four primary challenges to his conviction: (1) that his trial counsel was legally ineffective because he failed to move to dismiss Count 1 for lack of venue; (2) that counsel was ineffective for failing to object to false evidence that was used by the Probation Department to enhance Mr. Baslan's sentencing guidelines offense level; (3) that counsel was ineffective for failing to object to the Court's restitution order; and (4) that counsel was ineffective for failing to present an entrapment defense at trial. *See* Baslan § 2255 Petition, ECF Doc. No. 265, at 14, 18, 22, 25. This supplemental memorandum concerns only Mr. Baslan's first claim of error – counsel's failure to move to dismiss count 1 for lack of venue. The undersigned rests on Mr. Baslan's prior submissions for challenges 2-4.

As explained in detail below, the Court should first vacate Mr. Baslan's conviction of Count 1, (violation of 18 U.S.C. § 2241(1)) because Mr. Baslan's trial counsel was legally ineffective for failing to move to dismiss that count for lack of venue. Venue for Count 1 did not lie in the Eastern District of New York. Second, the Court should conduct a *de novo* sentencing for Mr. Baslan on Counts 2-5. Such resentencing is required in conviction error cases, and is also appropriate given Bebars Baslan's substantial rehabilitative efforts over the last 6 years.

## Factual Background

Bebars Baslan and his co-defendant, Kristen Henry, were arrested on March 19, 2013, as they were entering a hotel room in Jersey City, New Jersey, with the intention of sexually abusing three children under the age of 12. An FBI confidential source had persuaded Baslan and Henry that he would bring these children (to whom he claimed to be related) to the hotel and Baslan could photograph and videotape Henry engaging in sexual acts with the children, and perhaps to participate himself. *See* Presentence Report (PSR) at ¶ 11, Exhibit A (sealed)

Baslan and Henry lived in Brooklyn, New York, and had been discussing this plan with the confidential source for several days. *Id*. at ¶¶ 8-9. They also planned to give the children sedatives so that they would not be aware of what was happening. *Id*. at ¶ 11. Earlier on the evening of March 19, 2013, the source visited Baslan and Henry at their residence in Brooklyn, where Baslan gave him Benadryl and orange juice to provide to the children. *Id*. at ¶ 12. Baslan, Henry, and the source agreed that the source would call with a pre-arranged signal when he was at the hotel in New Jersey with the children, and Baslan and Henry would then meet him there. *Id*. at ¶ 11. The FBI arranged for the plan to include the crossing of state lines to trigger the provisions of 18 U.S.C. § 2241(c), which carries a mandatory minimum sentence of 30 years.

When the source called Baslan with the pre-arranged code word and hotel information, Baslan and Henry got in their car and drove to Jersey City. *Id*. at ¶ 13. Leaving their apartment at 1153 Ocean Parkway, they traveled on the Belt Parkway to the Brooklyn-Battery Tunnel, entered Manhattan, drove on the West-Side Highway, and then took the Holland Tunnel to New Jersey. *See* Exhibit B, Declaration by Bebars Baslan.[1] Once in New Jersey, the

---

[1] In his declaration to the Court, Mr. Baslan mistakenly wrote "Lincoln" tunnel, instead of "Holland." Counsel has confirmed telephonically with Mr. Baslan that this was in fact a mistake, and that he

couple proceeded to the hotel in Jersey City, where they were arrested.

Bebars Baslan was ultimately indicted on five counts, which included the Travel Act violation, 18 U.S.C. § 2241(c), along with conspiracy to sexually exploit a child, 18 U.S.C. § 2251(e), attempted sexual exploitation of a child, 18 U.S.C. § 2251(a) (e), and attempted coercion and enticement of a minor, 18 U.S.C. § 2422(b).  He was also charged with possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), for material he had on his home computer.  As noted, Mr. Baslan faced statutory sentencing ranges of 30 years to life on count 1, 15 to 30 years on counts 2 and 3, 10 years to life on count 4, and 0-20 years on count 5.  *See* PSR at p. 3.

Throughout the period leading up to his trial, Mr. Baslan made clear through his attorney, Mr. Savitt, that he would be prepared to plead guilty to the charges in the indictment, including those with 15 year mandatory minimums, if the government were to dismiss the Travel Act charge, Count 1. *See* Ephraim Savitt Affirmation, attached to Govt. Opposition, ECF No. 271, at 16 ("…the government rejected my repeated offers that he was prepared to accept a plea deal on the condition that the government agreed to the dismissal of the top count.").  Because the government never agreed to do so, Mr. Baslan proceeded to trial.  Prior to trial, multiple co-defendant meetings took place between Baslan and Henry, and their attorneys, at which joint defenses and pretrial motions were discussed.  As affirmed by counsel for Kristen Henry, those discussions included the filing of motions to dismiss Count 1 for lack of venue.  *See* Declaration from Ying Stafford, Exhibit 3 to Bebars Baslan §2255 Petition, ECF No. 265 at 36.

Right before trial, Mr. Baslan pled guilty to Count 5 – possession of child pornography

---

intended to write Holland tunnel.  It is doubtful that this point is in dispute, but if the Court requires an additional affidavit, it can be provided.  *See also* Sentence Submission, 12/14/14, ECF No. 163, at 14 (noting that Baslan and Henry took the Holland tunnel);  Baslan *pro se* brief, Second Circuit Case No. 15-512, ECF Doc. 106 (4/18/16) at 35, attached as Exhibit C (referencing that he and Henry crossed into New Jersey through the Holland Tunnel.

– and continued to trial on the remaining four counts. After the conclusion of the government's case, Mr. Balsan's counsel made a motion pursuant to Fed. R. Crim. Proc. 29 to dismiss the case for legal insufficiency. He did not, however, include in his Rule 29 arguments that the government had failed to establish venue for Count 1. On July 24, 2014, a jury convicted Mr. Baslan of all four counts.

The Court sentenced Mr. Baslan on February 27, 2015. In its remarks, the Court acknowledged that the relevant sentence range fell between the 30 year mandatory minimum term required by Count 1, and the 45 year recommendation by the Department of Probation and the government. *See* Sentence Transcript, ECF No. 213, at 11. The Court observed that in its judgment, "you're one of the few folks that I've come cross, with due respect, Mr. Baslan -- and I hope it changes -- that has to be put away. And in my way of thinking, there are not that many who do, certainly not for this length of time. But we have to protect others from folks like you." *Id.* at 23. As a result, the Court imposed a 36-year sentence on Count 1. The sentences on the other counts followed suit – 36 years on Count 4 to match the sentence on Count 1, and the statutory maximum terms of 30 years on Counts 2 and 3, and 20 years on Count 5. *Id.* at 27.

Because the Court had previously severed co-defendant Kristen Henry's case from Mr. Baslan's, Henry was scheduled to start trial in April 2015. On March 18, 2015, Henry's counsel filed a letter motion seeking to dismiss Count 1 on venue grounds. *See* Exhibit 1 to Bebars Baslan §2255 Petition, ECF No. 265 at 30-32. The next morning, the government filed a one paragraph letter consenting to the dismissal of Count 1, without prejudice "to re-file an Indictment on that charge *in another district* if it chooses." Exhibit 2 to Bebars Baslan §2255 Petition, ECF No. 265 at 34 (emphasis added). The Court granted Henry's motion. *See* ECF No. 208. That same day, Kristen Henry pled guilty to Count 4 of the indictment. *See* ECF No.

209. Henry was subsequently sentenced to 10 years' incarceration, the statutory mandatory minimum sentence on Count 4.

On March 28, 2017, the Second Circuit Court of Appeals summarily affirmed Mr. Baslan's conviction. Mr. Baslan's timely Petition pursuant to 28 U.S.C. § 2255 followed.[2]

## **Argument**

### I.    **Bebars Baslan's Trial Counsel Provided Ineffective Assistance of Counsel For Failing to Move to Dismiss Count I For Lack of Venue**

It is well settled that claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, "[f]irst, the [petitioner] must show that counsel's performance was deficient." *Id.* at 687. "Second, the[petitioner] must show that the deficient performance prejudiced the defense." *Id.* To satisfy the second prong, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Mr. Baslan has met both *Strickland* prongs in this case.

The issue here is straightforward. If, as the government argues, venue existed in the Eastern District of New York for Count 1, then it was not ineffective for Mr. Baslan's counsel to fail to move to dismiss. *See* Govt. Opposition, ECF No 271 at 5-7. On the other hand, if venue did not lie in the Eastern District, then it would have been ineffective for Mr. Baslan's counsel not to move to dismiss Count 1. Count 1 carried a mandatory minimum sentence of 30

---

[2] "Due to a failure by the defendant's counsel to timely notify him of the Second Circuit's ruling, the government agreed to waive any argument that a motion by defendant pursuant to 28 U.S.C. § 2255 would be barred for failure to timely file, as long as the defendant filed any such motion by September 18, 2019." Govt. Opposition to §2255 Petition, ECF No. 271, at 3.

years.  Moreover, Mr. Baslan had made clear on numerous occasions that he would agree to plead guilty to the remaining counts if Count 1 were dismissed.  Accordingly, he would have reaped the benefits of acceptance of responsibility reductions, he would not have been assessed an obstruction enhancement, and his total guideline level would have been lower.  *See* PSR at ¶¶ 70, 78, 86, 93, 100, 110.  Count 1 was the driver of the trial, and without it this would have been a very different case. For the reasons set forth below, venue did not exist in the Eastern District for Count 1, and Baslan's counsel was therefore legally ineffective for not moving to dismiss that count.

A.  *Venue Did Not Exist In the Eastern District of New York for Count 1*

The Constitution requires that a criminal trial must be held in the state and district where the crimes were committed.  *See* U.S. Const. Art. III, § 2, cl. 3; U.S. Const. Amend. VI; *see also* Fed. R. Crim. Proc. 18 ("prosecution shall be had in a district in which the offense was committed").  The Supreme Court teaches that the "*locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it. In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279 (1999) (internal citations and quotation marks omitted).  Venue is proper only where crimes' "essential conduct elements" took place.  *Id.* at 280.  Furthermore, venue provisions must be narrowly construed.  *See United States v. Brennan*, 183 F.3d 139, 146 (2d Cir. 1999) ("*Johnson* articulated a rule favoring restrictive construction of venue provisions") (citing *United States v. Johnson*, 323 U.S. 273 (1944)).

The "essential conduct elements" test for venue sets substantive offenses apart from conspiracy crimes.  In conspiracies, "venue is proper in any district in which an overt act in

7

furtherance of the conspiracy was committed," and an overt act in furtherance of a conspiracy need not be criminal. *United States v. Tzolov*, 642 F.3d 314, 319–20 (2d Cir. 2011) (internal citation and quotation marks omitted). Thus in a conspiracy "venue may lie in any district in which the conspiracy was formed or in any district in which a conspirator committed an overt act in furtherance of the criminal scheme." *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007).

The Second Circuit has also made clear that while intent is usually an essential element of a crime, it is not an essential *conduct* element. *See United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005) ("While a scheme to defraud is certainly one of three essential elements of mail fraud, it is not an essential *conduct* element.") (emphasis in original). Venue lies only in districts where essential "conduct" elements of the crime occurred. *See also United States v. Perlitz*, 728 F. Supp. 2d 46, 54 (D. Conn. 2010) ("This argument—that a defendant's formation of intent can be an "essential conduct element" for venue purposes—is foreclosed by *Ramirez*, which holds that formation of intent is not physical conduct.").

Finally, in determining "essential conduct," the law is clear that "an act that was merely preparatory to the offense was not part of the offense." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989). Moreover, "[t]he principle that preparatory acts alone are insufficient to support venue applies also to continuing offenses. Though § 3237 traces an offense from inception to completion, its thrust is entirely forward-looking; it contains no retrospective provision establishing venue in a district in which the defendant performed only acts that preceded the inception of the offense." *Id. See also United States v. Lange*, 834 F.3d 58, 69 (2d Cir. 2016) ("To be 'in furtherance of the charged offense,' acts or transactions must *constitute* the securities fraud violation—mere preparatory acts are insufficient." (emphasis in original).

In this case, it is undisputed that Bebars Baslan formed the intent to commit the Travel Act violation charged in Count 1 while in Brooklyn. Several conversations took place between the confidential source and Baslan in Brooklyn, in which the plan to travel to New Jersey in order to sexually abuse children took shape. It is also clear that Baslan and Henry left their apartment in Brooklyn and crossed state lines from New York to New Jersey from Manhattan, by way of the Holland Tunnel. *See* Baslan Declaration, Exhibit B. Venue therefore indisputably existed in the Southern District of New York and the District of New Jersey, the districts from which and to which Mr. Baslan crossed state lines. The question here is whether venue also existed in the Eastern District. It did not.

The inquiry starts by defining the essential conduct elements of the crime, 18 U.S.C. § 2241(c). This Court, in its denial of co-defendant Henry's pretrial motions, identified the essential conduct elements as follows: "this Court finds that there are two main conduct elements in an offense under Section 2241(c): (1) the crossing of a state line (2) with the intent to commit a sexual act with a person under the age of twelve." *United States v. Henry*, 2015 WL 1258173, at *7 (E.D.N.Y. Mar. 18, 2015). Others have included a third essential conduct element – engaging or attempting to engage in a sexual act with a child. *See United States v. Lukashov*, 694 F.3d 1107, 1121 (9th Cir.2012) (the essential conduct elements of Section 2241(c) "are (1) crossing a state line, (2) with intent to engage in a sexual act with a child, and (3) engaging in or attempting to engage in a sexual act with a child." *See also* Govt. Opposition, ECF No. 271, at 5-6.

The traditional "verb test" for determining venue (*Rodriguez-Moreno*, 526 U.S. at 279) suggests that the "crossing" and "engaging or attempting to engage" language defines the location of the conduct. Here, the crossing took place between the Southern District of New York and the District of New Jersey. The engaging or attempting to engage in a sexual act

with a child took place at the hotel in Jersey City, in the District of New Jersey.  The Supreme Court counseled, however, that verbs are not "the sole consideration in identifying the conduct that constitutes an offense. While the 'verb test' certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language." *Rodriguez-Moreno*, 526 U.S. at 280.  The primary question for the Court, therefore, is whether the second element, the *mens rea* "with intent to engage," in fact constitutes an essential *conduct* element for venue purposes.

The conclusion that *mens rea*, the intent necessary to commit a crime, is a conduct element, is foreclosed by the Second Circuit's holding in *United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005). Among other crimes, the defendant in *Ramirez* was convicted of mail fraud related to fraudulent visa applications submitted to the government.  The I-129 Petitions at issue were signed by defendant Vitug in New Jersey and filed with an INS branch office in Vermont.  *Id.* at 140.  For purposes of the mail fraud count, the "scheme to defraud" was devised by Vitug at defendant Ramirez's office in Manhattan.  *See id.* at 144.  The government urged the Second Circuit to conclude that "scheme to defraud" was an essential conduct element and that venue therefore existed in the Southern District. *See id.*

The Court agreed that "scheme to defraud" was an essential element of mail fraud, but disagreed that it was an essential *conduct* element:

> [t]he [scheme to defraud] element focuses on the *intent* to harm through fraud. It is the *mens rea* element of mail fraud. By contrast, it is the third element—misuse of the mails—that encompasses the overt *act* of putting a letter into the postoffice. Indeed, the plain meaning of the word "devise," which is defined as "to work out or create (something) by thinking; contrive; plan; invent," connotes contemplation, not action. Webster's Third Unabridged Dictionary (2002); *see also* Jed S. Rakoff, *The Federal Mail Fraud Statute (Part I)*, 18 Duq. L.Rev. 771, 775 (1980) ("The first element of federal mail fraud—devising a scheme to defraud—is not itself conduct at all (although it may be made manifest by conduct), but is simply a plan, intention or state of mind, insufficient in itself to

10

give rise to any kind of criminal sanctions."). One might easily devise a scheme
to defraud entirely in one's head and not engage in any *act* proscribed by the
statute until "plac [ing]" an item into the mail. . . . For these reasons, we
conclude that "having devised or intending to devise a scheme or artifice to
defraud," while an essential element, is not an essential *conduct* element for
purposes of establishing venue.

*Id.* at 144–45 (additional internal citations and quotation marks omitted).

In other words, the *Ramirez* court drew a stark line between elements concerning the

intent to commit a crime, and elements that actually constitute conduct. Only the latter

provides venue. Here, the second element of 18 U.S.C. §2241(c) is "with intent to commit a

sexual act with a child." It is inextricably linked to the first element, "crossing state lines." The

intent alone is not a crime; only in conjunction with the act of crossing state lines does it

become criminal. Similarly in *Ramirez*, devising a scheme to defraud is not mail fraud; it

becomes a crime only in conjunction with "placing" an item into the mail. *Ramirez* therefore

made clear that intent elements are not conduct elements and therefore do not bestow venue.

In this case, only the "crossing" and the "engaging" or "attempting to engage" elements could

create venue, and these actions only took place in the Southern District and the District of New

Jersey.[3] *See also United States v. Perlitz*, 728 F. Supp. 2d 46, 50 (D. Conn. 2010) ("venue is

appropriate only where the criminal 'physical *conduct*' occurred, not where the criminal intent

was formed.").

The government points not only to the formation of intent in Brooklyn, but also claims

that Baslan procured Benadryl and juice in Brooklyn, which he gave to the confidential source

in order to sedate the children. The government claims that this action was a "substantial step

in his plan." Govt. Opposition, ECF No. 271, at 6. However, buying Benadryl is, on its own,

---

[3] Counts 2-4 do not suffer from this defect, since those counts covered conduct between February 1 and
March 19, 2013, some of which took place in Brooklyn.

not directly connected to the act of crossing state lines with the intent to engage in sex acts with children, but is merely a "preparatory step" toward completion of the crime. Preparatory steps are not essential conduct elements. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d at 1190.

Buying Benadryl did not constitute a part of the crime, and it took place before the crime began. For both those reasons it was merely preparatory. In *Ramirez*, discussed above, the I-129 Petitions and its attachments were mailed for filing in Vermont. However, one of the attachments, the LCA form, had previously been mailed to the Department of Labor in Manhattan, where it was approved. The Court asked, "[w]as Vitug's act of mailing the LCA form into New York merely 'preparatory to the offense' of mailing the Form I–129 Petition and attachments, or was it part of the charged offense?" Ramirez, 420 F.3d at 143. The Court concluded that "the mailing of the LCA form occurred before the offense had 'begun,' and thus, merely in preparation for it." *Id*. at 144. In *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011), for example, the government contended that venue existed in the Eastern District of New York because the defendants, who were charged with securities fraud, flew out of JFK airport on their way to meet investors. As such, the government argued, "the flights were an important part of furthering the [fraudulent] scheme." The Second Circuit disagreed: "At most, catching flights from the Eastern District to meetings where Butler made fraudulent statements were preparatory acts. They were not acts 'constituting' the violation. We have cautioned that venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense. That is all we have here." *Id*. at 319 (internal citations and quotation marks omitted).

These cases teach that actions that are not part of the offense (even if they could be considered to be overt acts in a conspiracy case) do not constitute essential conduct. The

purchase of Benadryl was not part of violating 18 U.S.C. § 2241(c). It did not make the crime more or less likely. The crime could be committed without it. It was not related to any element of the crime – other than perhaps serving as another piece of evidence of the criminal *mens rea*, which is not an essential conduct element. If Baslan had sedated the children with Benadryl in Brooklyn, that might have been sufficient. But he merely purchased it in preparation; indeed the act was almost by definition preparatory.

The essential conduct elements of Count 1 were the crossing of state lines with the required *mens rea*, and the attempt to engage in a sexual act with a minor. Under the circumstances of this case, venue existed in the Southern District and in New Jersey. It did not lie in the Eastern District where Mr. Baslan was prosecuted. Accordingly, either upon a pretrial motion[4] or upon a Rule 29 motion, the Court should have dismissed that count.

---

[4] Kristen Henry, Mr. Baslan's co-defendant, moved to dismiss Count 1 on venue grounds several weeks before her trial. The government consented and the Court dismissed the count. The government states in its opposition that the decision to consent was not premised on any agreement with Henry's legal claim, but instead came about as a result of the government's belief that Henry was far less culpable than Baslan. *See* Govt. Opposition, ECF Doc. 271, at 6. It is true that the government had, at different times during the pendency of the case, offered Henry a plea to count 4, which carried a sentence of 10 years to life, and indeed had once again offered that plea the same day it consented to Ms. Henry's motion. However, it remains curious that rather than simply offer the plea, the government would agree to dismiss the top count *before* any plea was even taken. Although the government only agreed to the dismissal without prejudice, it did so without prejudice to refile the charges "in another district if it chooses," not in the Eastern District. *See* Baslan § 2255 Petition, Exhibit 2, ECF No. 265, at 34. Similarly, the Court's view appeared to be that the government's agreement to dismiss did not carry much meaning because, "as the context shows, the government's consent to the dismissal appears to have been part of the winding down of matters in contemplation of the plea later that day. Plainly, if the plea fell through, the government would have promptly re-indicted Petitioner on that same charge *in the District of New Jersey*.") Court's Denial of Kristen Henry's §2255 Petition, ECF Doc. No. 263, at 29 (emphasis added). Notably, neither the government nor the Court seemed believe that the count should be re-charged in the Eastern District.

**B.** _Because Venue Did Not Exist For Count 1, Counsel Was Ineffective For Not Seeking to Dismiss It_

Since venue did not lie in the Eastern District of New York for Count 1, Mr. Baslan's counsel should have moved to dismiss that count, and his failure to do so was ineffective assistance of counsel under _Strickland_. The presence of Count 1 prejudiced the defense because it dictated Mr. Baslan's approach to the case, his decision to proceed to trial, and his decision not to plead guilty.  Without Count 1, the probability is high that Mr. Baslan's sentence would have been different.  _See e.g. Lafler v. Cooper_, 566 U.S. 156, 165 (2012) ("Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel [regarding sentencing] hearing can result in _Strickland_ prejudice because any amount of additional jail time has Sixth Amendment significance.") (internal citation and quotation marks omitted).

Under the first _Strickland_ prong, Mr. Baslan's counsel failure to move to dismiss Count 1 clearly fell below an objective standard of reasonableness.  Counsel was aware that Baslan and Henry had traveled from Brooklyn to the Southern District of New York before crossing state lines into New Jersey.  _See_ Sentence Submission, 12/14/14, ECF No. 163, at 14 (noting that Baslan took the Holland Tunnel to cross over to New Jersey).  Moreover, as Henry's attorney affirmed, she was present at multiple co-defendant meetings with Mr. Baslan's attorney, at which pretrial motions were discussed, including motions to dismiss for lack of venue.  _See_ Exhibit 3 to Bebars Baslan §2255 Petition, ECF No. 265 at 36.  Accordingly, counsel had the information to appreciate that venue did not, in fact, lie in the Eastern District for Count 1, and should have moved to dismiss that count.  Failure to do so was ineffective.  _See Cornell v. Kirkpatrick_, 665 F.3d 369, 383 (2d Cir. 2011) (granting habeas petition based on ineffective assistance of trial counsel where counsel failed to object to improper venue under New York law).

Under the second *Strickland* prong, had Count 1 been dismissed, there is a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If counsel had moved to dismiss Count 1 for lack of venue before trial, as co-defendant Henry did – and the Court had granted that motion – it is clear that Mr. Baslan would have pled guilty to the remaining counts. As his counsel confirmed in his affirmation attached to the government's Opposition, Mr. Baslan repeatedly instructed his attorney to try to persuade the government to dismiss Count 1, in which case he would plead guilty to the remaining charges. *See* Govt. Opposition, ECF No. 271, at 16. If he had pled guilty before trial, he would have reaped the benefit of an acceptance of responsibility reduction and avoided an obstruction enhancement (due to his trial testimony), a 4–5 point swing in the guidelines.[5] Moreover, if Mr. Baslan had come before the Court for sentencing after pleading guilty and having accepted responsibility, rather than having forced the government and its witnesses to participate in a trial, his ultimate sentence might very well have been quite different. The Court, in its remarks at sentencing, focused on the trial evidence, and on Mr. Baslan's role in that trial: "It's about the trial record. It's about those tape recordings. It's about the demonstrated lies that you can derive from those recordings, and this absurd defense that you presented that the jury readily rejected." Sentencing Transcript, ECF No 213, at 22. Sentencing after a trial is fundamentally different than sentencing after a guilty plea. Here, Mr. Baslan wanted to plead guilty – he was ready to accept a harsh sentence between 15 years and life. But the prospect of facing a mandatory *minimum* sentence of 30 years, with no plea offer to mitigate that exposure even a little bit, propelled Mr. Baslan to chart a different course. As the Court well knows, many

---

[5] If Mr. Baslan had not been assessed obstruction enhancements, and had been granted a three-point acceptance of responsibility reduction, and even if grouping of counts had remained the same, Mr. Baslan would likely have had a final offense level of 41, with a corresponding guideline range of 324–405 months.

times people in this Courthouse proceed to trial simply because they feel as if they have no choice. Pleading guilty to a charge with a mandatory minimum sentence of 30 years is no choice.

Without the mandatory minimum sentence of 30 years, without the evidence as it was unveiled at trial, without Mr. Baslan's testimony and "absurd defense," without his post-trial motions in which he continued to maintain his innocence knowing an appeal was forthcoming – without all these factors there is a reasonable probability that his sentence would have been lower, perhaps significantly so.

The same is true if the Court had dismissed Count 1 during trial in response to a defense Rule 29 motion to dismiss for lack of venue. Mr. Baslan might very well have agreed to plead guilty at that point, avoiding at the very least the obstruction enhancements, and perhaps still earning an acceptance of responsibility reduction. Even without it, the Court would have seen Mr. Baslan in a different light, which presumably would have been reflected in its sentence.

The Court's concurrent sentences on counts 2-5 provide no guide as to what would have happened if Count 1 had been dismissed. It is true that the Court imposed a concurrent sentence of 36 years on Count 4 to match the sentence for Count 1, and statutory maximum sentences of 30 years on counts 2 and 3, and 20 years on Count 5. However, there can be no question that these sentences were driven by the Court's decision to impose 36 years on Count 1.[6] It seems that the Court decided that 36 years was the appropriate sentence for Mr. Baslan's conduct, which was demonstrated so painfully at the trial, as well as for his lack of remorse and

---

[6] Perhaps most illustrative of this was the Court's 20 year sentence on count 5, possession of child pornography, to which Mr. Baslan had pled guilty before trial. It is unthinkable that this Court would have imposed a statutory maximum 20 year sentence for possession of child pornography following a guilty plea under different circumstances.

lack of acceptance of responsibility.  The terms of imprisonment on the other counts merely followed.

Perhaps the Court would have imposed the same 36 year sentence on Count 4 even if it had dismissed Count 1 but Mr. Baslan had continued on to the conclusion of the trial with the same baseless defense.  However, in light of Mr. Baslan's repeated insistence that he would not have proceeded to trial if Count 1 had been dropped, it is reasonable to believe that the *gestalt* of the case would have been different.  Certainly the Court would still have imposed a very heavy sentence – but it is unlikely it would have been 36 years, practically a lifetime, in a sting operation where no one was killed and no one was hurt.[7]

Mr. Baslan's counsel's representation fell below an objective standard of reasonableness when he failed to move to dismiss Count 1 for lack of venue.  But for that error, there is a reasonable probability that the outcome of Mr. Baslan's proceeding would have been different.  Because both prongs of *Strickland's* test for constitutional ineffective assistance of counsel are met here, the Court should grant Mr. Baslan's Petition and vacate his conviction on Count 1.

## II.    The Court Should Conduct a *De Novo* Resentencing for Mr. Baslan

If the Court agrees that Mr. Baslan has prevailed on his claim that he received ineffective assistance of counsel and that Count 1 should be vacated and dismissed, the Court should resentence Mr. Baslan on the remaining counts.  18 U.S.C. § 2255(b) dictates that where a court finds "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the court "shall discharge the prisoner or

---

[7] Understanding, of course, that the children depicted in child pornography are very much hurt and damaged for the rest of their lives.  But the child pornography charge was not the driver of the Court's sentence.

resentence him or grant a new trial or correct the sentence as may appear appropriate." "[T]he 'default rule' to remedy a so-called 'conviction error' . . . is *de novo* resentencing." *United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016) (citation omitted). *See also United States v. Natal*, 849 F.3d 530, 538 (2d Cir. 2017) ("[W]hen a count of conviction is overturned due to a 'conviction error,' the proper remedy is *de novo* resentencing."); *United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009) ("[W]here a count of a conviction is overturned – as opposed to an aspect of a sentence – resentencing must be *de novo*.").

In any event, re-sentencing is appropriate here because circumstances have significantly changed in the nearly six years since Mr. Baslan's sentencing. As the Court probably recalls, Bebars Baslan came across as repugnant and remorseless during his trial and leading up to his sentencing. The Court even stated that Mr. Baslan was one of the few defendants it had come across who just "has to be put away." Sentencing Transcript, ECF No. 213, at 23. Still, the Court qualified that statement with "I hope it changes." *Id.* Mr. Baslan undoubtedly has a long way to go, but since his sentencing he has begun the process of validating the Court's hope.

Much of Mr. Baslan's conduct that led to his conviction was, if not fueled, certainly accompanied by, a tremendous amount of drug abuse. He and Kristen Henry were essentially mind-altered in some way or another most of the time. Once he was arrested, that usage slowed down, but he did not become completely clean until after sentencing. He has now been drug-free for approximately six years, and the clarity he has achieved as a result has been transformative.

Although devastated by his sentence, Mr. Baslan fairly quickly decided that he would do what he could in prison to become a better person, to leave the man who had committed these reprehensible crimes behind. In 2016, he volunteered for, and was accepted into, the prison's Challenge Program, a Bureau of Prisons treatment program available to high security inmates

18

with substance abuse and/or mental health problems.  According to the BOP website, "[p]rogramming is delivered within a modified therapeutic community environment; inmates participate in interactive groups and attend community meetings. In addition to treating substance use disorders and mental illnesses, the program addresses criminality, via cognitive-behavioral challenges to criminal thinking errors."[8]  Mr. Baslan not only graduated from this residential program successfully, he was chosen to remain as a mentor for other inmates.

In addition to the Challenge Program, Mr. Baslan also participated in a six month program called Threshold, a spirituality-based non residential therapeutic program.  As one Threshold graduate describes the program, "the best thing about Threshold is that it teaches the spiritual principles of change and that change is possible."[9]  Once again, Mr. Baslan not only successfully completed the program, he was selected to remain as a mentor.  Mr. Baslan has also completed what he terms "adjunct" sex offender treatment, and remains on the waiting list to enter the facility's primary sex offender program.   In addition to participating in these programs, Mr. Baslan has also taken advantage of a variety of classes and learning opportunities in the prison.[10]  His ultimate goal is to attend college.

Further, Mr. Baslan has served as a suicide watch companion and painted murals in the prison yard. For some years now, he has worked in the chapel, earning $20 per month.  Under the new COVID restrictions, all chapel workers were given the choice of residing together or

---

[8] *See* https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf, at 11.

[9] *See* https://www.bop.gov/resources/news/20160523_inmates_embrace_threshold.jsp

[10] Support for Mr. Baslan's prison activities will be available in the near future, and certainly in anticipation of a re-sentencing.  The near constant lockdowns Mr. Baslan has been experiencing over the last several months has made communication and the transfer of certificates and documentation more difficult.

leaving the job to remain in their unit. Since Mr. Baslan believed it would be more useful to remain with his mentees in the Challenge Program, he decided to forego his chapel job for now. Perhaps most remarkably, especially for a sex offender in a maximum security prison who is subject to constant abuse and harassment, he has never incurred a single disciplinary infraction.

No one, least of all Bebars Baslan, is arguing that his rehabilitation is complete. No one, including him, is arguing that he should be released anytime soon. But the person that this Court, in 2015, believed was likely beyond redemption, in fact appears to have begun the painful and lengthy process of clawing his way back. The years, and in particular his participation in these therapeutic programs, have allowed Mr. Baslan to think, to examine himself, to consider how he could have perpetrated such reprehensible crimes. Words of remorse often ring hollow, and a journey toward redemption is a long one, but Mr. Baslan appears to be putting in the work, the therapy, analysis, self-evaluation that is required to come to grips with his crimes, and to try to live a decent and productive life.

Most of the time sentencing courts determine the likelihood of rehabilitation and redemption only prospectively, with the hope that it will occur. Here, and as can further be substantiated in a sentencing memorandum, the Court can see for itself the dramatic shift Mr. Baslan has undertaken, and the commitment he has demonstrated for the last six years to live a good and meaningful life, despite the circumstances he finds himself in.

Even if the Court grants this petition, Mr. Baslan faces mandatory 15 year minimum sentences on Counts 2 and 3. He is not seeking to be released. He is urging the Court to use the avenue provided by § 2255(b) to reconsider his sentences in light of the progress he has made over the last 6 years. For the reasons above, Mr. Baslan's circumstances warrant a *de novo* sentencing, at which the Court can determine a reasonable, fair, and just sentence that

comports with the directives of 18 U.S.C. § 3553(a).

## Conclusion

Accordingly, the Court should vacate Mr. Baslan's conviction on Count 1, and hold a *de novo* sentencing for all remaining counts.

Dated: New York, New York
      November 16, 2020

Respectfully Submitted

By:

_/s/ Florian Miedel_
Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004

*Counsel for Bebars Baslan*